1  MARC J. WINTHROP -- State Bar No. 63218
      mwithrop@winthropcouchot.com
2  GARRICK A. HOLLANDER – State Bar No. 166316
      ghollander@winthropcouchot.com
3  PAYAM KHODADADI – State Bar No. 239906
      pkhodadadi@winthropcouchot.com
4  **WINTHROP COUCHOT**
   **PROFESSIONAL CORPORATION**
5  660 Newport Center Drive, Ste 400
   Newport Beach, CA 92660
6
   Telephone:  (949) 720-4100
7  Facsimile:   (949) 720-4111
8  [Proposed] General Insolvency Counsel for
   Debtor and Debtor-in-Possession
9

10            **UNITED STATES BANKRUPTCY COURT**

11            **SOUTHERN DISTRICT OF CALIFORNIA**

12

13  In re:                                      Case No. 10-14198-11MM

14  ISE CORPORATION,                            Chapter 11 Proceeding

15                                              **DEBTOR'S FIRST DAY EMERGENCY**
                                                **MOTION FOR ORDER AUTHORIZING**
16            Debtor and                        **(1) PAYMENT OF PRE-PETITION WAGES**
              Debtor in Possession.            **AND EMPLOYEE EXPENSE**
17                                              **REIMBURSEMENT CLAIMS; AND**
                                                **(2) HONORING OF PRE-PETITION**
18                                              **EMPLOYEE BENEFITS; MEMORANDUM**
                                                **OF POINTS AND AUTHORITIES AND**
19                                              **DECLARATION OF DAVID L. MORASH IN**
                                                **SUPPORT THEREOF**
20
21                                              DATE:      [To Be Set]
22                                              TIME:      [To Be Set]
                                                PLACE:     [To Be Set]
23

24

25

26

27

28  DEBTOR'S FIRST DAY EMERGENCY MOTION FOR ORDER AUTHORIZING (1) PAYMENT OF PRE-PETITION WAGES
    AND EMPLOYEE EXPENSE REIMBURSEMENT CLAIMS; AND (2) HONORING OF PRE-PETITION EMPLOYEE BENEFITS;
    MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF DAVID L. MORASH IN SUPPORT THEREOF
                                                -1-

1

2       ISE Corporation, a California corporation, the debtor and debtor-in-possession in the

3    above-entitled Chapter 11 case (the "Debtor"), hereby moves the Court, on an emergency basis,

4    for an order granting to the Debtor the following relief:

5              A.      Authorizing payment of prepetition employee wage and salary obligations

6         owed by the Debtor up to the priority limit in Section 507(a) of the United States

7         Bankruptcy Code;

8              B.      Authorizing the Debtor to pay: (1) the reimbursement of ordinary course

9         prepetition employment business expenses in accordance with company policy, and (2) the

10        payment of benefit obligations including 401(k) plan employer contributions, worker's

11        compensation, medical, dental, life insurance, disability insurance, and miscellaneous

12        other benefits incurred and payable in the ordinary course;

13             C.      Authorizing the Debtor to honor all prepetition vacation pay, sick leave,

14        holiday pay, jury duty pay, and other paid leave claims in the ordinary course;

15             D.      Authorizing the Debtor to take all actions reasonable and necessary to

16        comply with its obligations to its existing payroll service company;

17             E.      The entry of an order (i) directing all banks to honor the Debtor's

18        prepetition checks for payment of any of the foregoing, and (ii) prohibiting all banks from

19        placing any holds on, or attempting to reverse, any automatic transfers on account of the

20        foregoing; and

21             F.      Such additional relief as the Court deems just and proper.

22        This Motion is made and based upon the foregoing allegations and representations, the

23    declaration of David L. Morash (the "Morash Declaration"), and the Memorandum of Points and

24    Authorities attached hereto, and upon such other evidence, both oral and documentary, as the Court

25    may consider prior to or at the hearing on this Motion.

26    ///

27    ///

28
      **DEBTOR'S FIRST DAY EMERGENCY MOTION FOR ORDER AUTHORIZING (1) PAYMENT OF PRE-PETITION WAGES
      AND EMPLOYEE EXPENSE REIMBURSEMENT CLAIMS; AND (2) HONORING OF PRE-PETITION EMPLOYEE BENEFITS;
      MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF DAVID L. MORASH IN SUPPORT THEREOF**
      -2-
      MAINDOCS-#149854-v3-ISE_Corp_Wage_Motion.DOC

1       **WHEREFORE,** the Debtor prays that the Court enter an order granting the relief requested

2   above, and such additional relief as the Court deems just and proper.

3   DATED:  August 10, 2010                      **WINTHROP COUCHOT**

4                                                **PROFESSIONAL CORPORATION**

5

6                                                By:

7                                                      Marc J. Winthrop
                                                       Payam Khodadadi
8                                                [Proposed] General Insolvency Counsel for
                                                 Debtor and Debtor-in-Possession
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### I.

3

### THE NEED FOR EMERGENCY RELIEF

4      The Debtor currently employs 76 people.  In order to preserve and maintain its ongoing

5  business operations, and to meet the needs of its customers, the Debtor must retain the support of

6  its employees.  To retain this support, the Debtor must timely pay all pre-petition payroll and wage

7  related obligations owed to this constituency.

8      The next payroll is due and payable on August 13, 2010 for employee services rendered for

9  the period July 24, 2010 through August 6, 2010, approximately 14 days of which represents pre-

10 petition claims.  In addition, payroll is due and payable on August 27, 2010 for employee services

11 rendered for the period August 7, 2010 through August 20, 2010, approximately 4 days of which

12 represents pre-petition claims.  To meet these obligations, payroll needs to be funded as soon as

13 possible.  As a result, the need for judicial relief is immediate.  The Debtor believes that

14 employees will leave if they are not paid, which will cause immediate and irreparable damage to

15 the Debtor's business.  In contrast, if the Debtor can promptly obtain the relief sought herein, its

16 business value will be preserved for the benefit of all creditors.

17     The Debtor will not pay any amount on account of unpaid pre-petition wages, salary, and

18 benefits above the cap for such claims under section 507(a)(4) and (a)(5), respectively, and will

19 refrain from paying any compensation to officers until such time as the Debtor has complied with

20 insider compensation procedures.  Accordingly, the Debtor requests that the Court grant the

21 Motion.

22

### II.

23

### STATEMENT OF FACTS

24     **A.     The Debtor.**

25     The Debtor is a California corporation with its corporate office located in Poway,

26 California.  The Debtor is wholly owned by ISE Limited ("ISE Limited"), a company incorporated

27 under the laws of the Cayman Islands.  ISE Limited is also the parent company of ISE Cleantech,

28

DEBTOR'S FIRST DAY EMERGENCY MOTION FOR ORDER AUTHORIZING (1) PAYMENT OF PRE-PETITION WAGES
AND EMPLOYEE EXPENSE REIMBURSEMENT CLAIMS; AND (2) HONORING OF PRE-PETITION EMPLOYEE BENEFITS;
MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF DAVID L. MORASH IN SUPPORT THEREOF
-4-

MAINDOCS-#149854-v3-ISE_Corp_Wage_Motion.DOC

1  Inc., a Delaware corporation. The Debtor's chief executive officer is Richard J. Sander and the

2  Debtor's chief financial officer is David L. Morash.

3  **B.    The Debtor's Business**.

4  The Debtor was incorporated in January 1995. The Debtor is a developer, manufacturer

5  and distributor of heavy duty hybrid-electric drive systems based on the Debtor's core proprietary

6  technology, which is focused on three critical subsystems: energy storage, controls software and

7  power electronics. These core technologies and subsystems are critical for hybrid or all-electric

8  vehicles to achieve the most efficient management of energy.

9  The Debtor specializes in complete hybrid-electric drive systems designed for use in heavy

10 duty commercial vehicles, which include the Debtor's proprietary subsystems as well as other

11 third party components ("Hybrid Systems"). The Debtor's Hybrid Systems are based on a "series"

12 configuration, where the engine is completely decoupled from the driveline and used only to

13 generate electrical power, thereby providing the option of battery-dominant, plug-in compatible

14 and all-electric heavy duty commercial vehicles.

15 The Debtor has also developed advanced ultracapacitor and lithium-ion based energy

16 storage systems specifically designed for high duty cycle, heavy duty vehicle applications,

17 incorporating the Debtor's proprietary electronics and battery management technology in a

18 modular, scalable and ruggedized design. Over the course of the past 15 years, the Debtor has

19 developed significant expertise designing robust, high power systems capable of operating in

20 extreme environments that require unique design approaches and intellectual property.

21 **C.    The Debtor's Operating Results and Assets and Liabilities**.

22 The Debtor operates on a fiscal year ending December 31. For the six month period ended

23 June 30, 2010, the Debtor generated approximately $14,363,000 in net sales and incurred a net

24 loss of approximately $8,683,000. In fiscal year 2009 (ended December 31, 2009), the Debtor

25 generated approximately $44,419,000 in net sales and incurred a net loss of approximately

26 $17,801,000.

27

28

1    The Debtor currently has assets of approximately $16.1 million which consists primarily of
2    cash, short-term investments, accounts receivables, inventory and equipment. The Debtor
3    currently has liabilities of approximately $23.0 million which consists primarily of accounts
4    payable and warranty and retrofit obligations.

5    **D.    Events Precipitating This Chapter 11 Filing.**

6    The Debtor's financial problems and the consequent need to file this bankruptcy
7    proceeding were primarily caused by the following problems:

8    •    The Debtor, an emerging cleantech company, has required ongoing funding to meet
9    the development cycle of both its integration business and its energy storage
10    engineering. The Debtor has made substantial improvement in its gross margin but
11    has not achieved positive margins in part because of its need to achieve greater
12    volume. Its energy storage business is early-stage and needs ongoing development
13    funding.

14    •    To meet the operational and development costs the Debtor decided in late 2009 to
15    pursue an IPO on the Toronto Stock Exchange.

16    •    The Debtor filed its preliminary prospectus in December 2009 for an equity
17    offering and was told by its underwriters Raymond James Ltd., and Royal Bank of
18    Canada that market conditions were favorable for the Debtor to execute the offering
19    early in 2010. Royal Bank is the largest underwriter on the Toronto Exchange.

20    •    Due to substantially deteriorating conditions in the financial markets, the Debtor
21    only able to raise $12 million in net proceeds.

22    •    The Debtor realized that it would need additional financing after the IPO given the
23    shortfall and has been working on raising additional funds since the IPO from both
24    existing investors and new investors.

25    •    As the developer of new clean hybrid drive systems, the Debtor has encountered
26    significant warranty problems particularly with the first systems. The cost of

27

28

1  servicing these issues has been a substantial drag on the Debtor's ability to achieve

2  profitability.

3  •  Given the lack of positive cash flow in major part from these historical warranty

4  obligations and lack of sufficient volume, the Debtor has encountered difficulty in

5  raising the necessary funding particularly over the last 6 to 9 months as the public

6  equity markets have experienced such disruption.

7  •  In an attempt to avoid bankruptcy and lengthen the potential runway to obtain the

8  necessary financing the company took the serious step of reducing staff from 119

9  employees to 76 a reduction of approximately 36%.

10  •  In spite of these actions, the Debtor continues to operate at a negative cash flow and

11  has been unsuccessful at raising the required funds, thus leading to the need to file

12  this bankruptcy proceeding.

13  **E.**    **The General Outline of Turnaround Plan.**

14  The Debtor's turnaround effort, which is already underway, will focus on cutting its costs,

15  reorganizing its debts, and selling its business, as a going concern, to a third party purchaser.

16  **F.**    **Relief Sought in this Motion.**

17  The Debtor seeks court authority to pay its pre-petition wage related obligations and honor

18  its employee related pre-petition benefits.  These obligations include pre-petition payroll, wages,

19  salaries, federal, state and local payroll taxes, deductions and withholdings, payroll deductions

20  relating to various benefits, reimbursement of business expenses, 401(k) plan employer

21  contributions; and miscellaneous other claims asserted by current employees (including, without

22  limitation, worker's compensation, medical, dental, life insurance, and disability insurance).

23  These benefits include vacation pay, sick leave, holiday pay, jury duty pay, and other paid leave.

24  The payroll for the employees is paid in arrears on a bi-weekly basis.  The next payroll is

25  due and payable on August 13, 2010 for employee services rendered for the period July 24, 2010

26  through August 6, 2010, approximately 14 days of which represents pre-petition claims.  In

27  addition, payroll is due and payable on August 27, 2010 for employee services rendered for the

28

1   period August 7, 2010 through August 20, 2010, approximately 4 days of which represents pre-

2   petition claims. Attached to the Morash Declaration as Exhibit "1" is a summary of the payroll

3   obligations to be paid by the Debtor in the subject payroll periods.

4         The pre-petition wages component of the pre-petition compensation that is payable on

5   August 13, 2010 will be approximately $274,075. The pre-petition wages component of the pre-

6   petition compensation that is payable on August 27, 2010 will be approximately $62,127. These

7   pre-petition compensation amounts include compensation to the insiders in this case, but no

8   payments will be made to the insiders until such time as the Debtor's post-petition compensation is

9   authorized to be paid pursuant to the U.S. Trustee Guidelines. Furthermore, the payroll checks

10   paid pursuant to this motion will not exceed the $11,725.00 wage priority limit provided for in

11   Section 507 of the Bankruptcy Code.

## III.

## EMERGENCY RELIEF IS AUTHORIZED UNDER THESE CIRCUMSTANCES

Procedural authorization for an emergency hearing on this emergency motion is found in Rule 9006[1] of the Federal Rules of Bankruptcy Procedure, and in Local Bankruptcy Rule 9014-5. The need for the Debtor to pay pre-petition claims of its employees is essential because the Debtor's business is dependent upon its labor. If these employees are not paid, they will cease working and seek employment elsewhere. Any such disruption would have a devastating effect upon the Debtor's business and the Debtor's creditors. If the Debtor obtains the relief sought herein, its business operation will continue in the ordinary course, customer needs will be met, and the overall value of the Debtor's business enterprise will be preserved for the Debtor's creditors. Accordingly, the Debtor submits that emergency relief is both necessary and appropriate.

## IV.

## THIS COURT IS AUTHORIZED TO ALLOW THE DEBTOR TO PAY
## THE EMPLOYEE COMPENSATION AND EXPENSE
## REIMBURSEMENT CLAIMS AND TO HONOR THE BENEFITS

**A.    The Court May Authorize Payment of Prepetition Payroll and Honoring of Benefits.**

Bankruptcy Code section 507(a)(4) gives priority status to allowed unsecured claims for wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual within 180 days of the petition date, up to $11,725 per individual. Specifically, section 507(a)(4) and (5) provides in pertinent part:

> (a) The following expenses and claims have priority in the following order: ...
> (4) Fourth, allowed unsecured claims, but only to the extent of $[11,725] for each individual or corporation, as the case may be, earned within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first, for--

---

[1] Bankruptcy Rule 9006(c) provides, in pertinent part:
"when an act is required or allowed to be done at or within a specified time by these rules or be a notice given thereunder or by order of the court, the court for cause shown may in its discretion with or without motion or notice *order the period reduced.*"

DEBTOR'S <u>FIRST DAY EMERGENCY MOTION</u> FOR ORDER AUTHORIZING (1) PAYMENT OF PRE-PETITION WAGES AND EMPLOYEE EXPENSE REIMBURSEMENT CLAIMS; AND (2) HONORING OF PRE-PETITION EMPLOYEE BENEFITS; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF DAVID L. MORASH IN SUPPORT THEREOF

MAINDOCS-#149854-v3-ISB_Corp_Wage_Motion.DOC

(A) wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual;

...

(5) Fifth, allowed unsecured claims for contributions to an employee benefit plan—

(A) arising from services rendered within 180 days before the date of the filing of the petition for the date of the cessation of the debtor's business, whichever occurs first, but only

(B) for each such plan, to the extent of—

(i) the number of employees covered by each such plan multiplied by $[11,725]; less

(ii) the aggregate amount paid to such employees under paragraph (4) of this subsection, plus the aggregate amount paid by the estate on behalf of such employees to any other employee benefit plan.

...

11 U.S.C. § 507(a)(4) and (5).

Courts have consistently authorized the payment of prepetition priority wages and other debt in the absence of a plan of reorganization, where such payments create "the greatest likelihood of payment of creditors in full or at least proportionately." See Matter of Columbia Gas, 171 B.R. 189, 191-92 (Bankr. D. Del. 1994); In re Lehigh & New England Ry. Co., 657 F. 2d 570, 581 (3d Cir. 1981); Ionosphere Club, 98 B.R. 174, 178-179 (Bankr. S.D.N.Y. 1989); In re Structurlite Plastics Corp., (Structurlite I) 86 Bankr. 922, 932 (Bankr. S.D. Ohio 1988), citing In re Chateaugay Corp., 80 Bankr. 279, 287 (S.D.N.Y.,1987).

As stated by the Ninth Circuit in In re Adams Apple, Inc., 829 F.2d 1484 (9th Cir. 1987):

> [A]nother "fundamental tenet"--rehabilitation of debtors, which may supersede the policy of equal treatment. Cases have permitted unequal treatment of prepetition debts when necessary for rehabilitation, in such contexts as (i) prepetition wages to key employees; (ii) hospital malpractice premiums incurred prior to filing; (iii) debts to providers of unique and irreplaceable supplies; and (iv) peripheral benefits under labor contracts. ... [I]t illustrates a Congressional willingness to subordinate the interests of prepetition creditors to the goal of rehabilitation.

Id. at 1490 (internal citations omitted).

Courts have also authorized Chapter 11 debtors to honor prepetition employee benefits. See Matter of Canton Casting, Inc., 103 B.R. 874, 875-876 (Bankr. N.D. Ohio 1989) (authorizing payment of prepetition vacation benefits); In re Busy Beaver Bldg. Centers, Inc., 19 F.3d 833, 853

DEBTOR'S **FIRST DAY EMERGENCY MOTION** FOR ORDER AUTHORIZING (1) PAYMENT OF PRE-PETITION WAGES AND EMPLOYEE EXPENSE REIMBURSEMENT CLAIMS; AND (2) HONORING OF PRE-PETITION EMPLOYEE BENEFITS; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF DAVID L. MORASH IN SUPPORT THEREOF

-10-

MAINDOCS-#149854-v3-ISE_Corp_Wage_Motion.DOC

1    (3d Cir. 1994) ("the bankruptcy court entered numerous interim orders …authorizing … the

2    payment of pre-petition wages *and employee benefits*…"); In re Chateaugay Corp., 80 B.R. at 281

3    ("Judge Lifland, upon application of LTV, issued an order authorizing and empowering LTV to

4    continue payment of pre-petition wages and salaries, *employee reimbursement expenses, and*

5    *benefits*.").

6        As set forth above, Section 507(a)(4) affords priority status to unsecured claims for wages,

7    salaries or commissions, including vacation, severance, and sick leave pay earned by an individual

8    within 180 days before the filing of a bankruptcy petition to the extent of $11,725 for each such

9    individual. For a number of reasons, the Bankruptcy Code affords special treatment to certain

10    pre-petition claims of employees. Wages are priority claims, and thus must be paid in full in a

11    reorganization case. The ability to ensure that the employees receive their unpaid prepetition

12    salary and do not miss a paycheck is critical to obtaining the stability necessary for a successful

13    reorganization, which benefits all creditors. Compared with a typical claim in bankruptcy, wages

14    represent a large part of an employee's wealth. In addition, unlike an ordinary trade creditor, the

15    typical employee does not have other sources of income and, thus, cannot diversify the risk of the

16    employer's default. Therefore, this Court has authority to allow the Debtor to pay certain

17    prepetition claims.

18        In the within case, as more particularly set forth in the Morash Declaration, ample cause

19    exists justifying payment of the prepetition period wages. Specifically, the maximization of the

20    value of the Debtor is contingent upon the continued operation of the Debtor's business. Since

21    the loss of any employee at this critical juncture could materially damage the Debtor's business

22    operations, and consequently the value of their overall business enterprise, compelling grounds

23    exist for the entry of an order authorizing the Debtor to pay and/or honor the prepetition employee

24    wages and compensation in the amounts established by the Morash Declaration.

25        Consequently, it is critical that the Debtor continues, in the ordinary course, those personnel

26    policies that were in effect prior to the petition date. If the checks issued by a payroll service in

27    payment of any of the compensation or other employee obligations are dishonored, or if such

28

DEBTOR'S FIRST DAY EMERGENCY MOTION FOR ORDER AUTHORIZING (1) PAYMENT OF PRE-PETITION WAGES
AND EMPLOYEE EXPENSE REIMBURSEMENT CLAIMS; AND (2) HONORING OF PRE-PETITION EMPLOYEE BENEFITS;
MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF DAVID L. MORASH IN SUPPORT THEREOF
-11-

MAINDOCS-#149854-v3-ISE Corp Wage Motion.DOC

1  obligations are not timely paid postpetition, the employees may suffer extreme personal hardship
2  and may be unable to pay their daily living expenses. A loss of employee morale and goodwill at
3  this crucial juncture would undermine the Debtor's stability, and undoubtedly would have a
4  negative effect on the Debtor, its customers, the value of its assets and business, and its ability to
5  achieve its objectives in chapter 11. As noted by the court in In re Equalnet Communications
6  Corp., 258 B.R. 368 (Bankr. S.D. Tex. 2000), "the need to pay [pre-petition employee wage claims]
7  in an ordinary course of business time frame is simple common sense. Employees are more likely
8  to stay in place and to refrain from actions which could be detrimental to the case and/or the estate
9  if their pay and benefits remain intact and uninterrupted." Id. at 370.

10  Nothing in this Motion nor any payments made by the Debtor pursuant to this Motion,
11  shall be deemed an assumption or rejection of any employee benefit plan, employment agreement,
12  other program or contract, or otherwise affect the Debtor's rights under section 365 the
13  Bankruptcy Code to assume or reject any executory contract between the Debtor and any
14  employee or any payroll service.

15  Therefore, the Debtor believes that, unless the Court allows the payments requested herein
16  to its employees, the disruption to the Debtor's employees and business practices would
17  substantially jeopardize the Debtor's ability to reorganize its affairs.

18  **B.    All of the Cash Payments in Question Represent Payment of Priority Claims.**

19  All of the payments in question constitute priority claims pursuant to Sections 507(a)(4)
20  and (a)(5) of the Bankruptcy Code, and are therefore more likely to be paid in any event. The
21  Debtor is unable to determine whether all vacation, severance and sick leave pay was earned by
22  employees within 180 days of the petition date or whether contributions to employee benefit plans
23  arise from services rendered within 180 days of the petition date. However, none of the payroll
24  checks will exceed this limit.

25  Since all priority payments must be made eventually before general unsecured claims can
26  be paid, courts often permit payment of pre-petition wages so that the debtor-in-possession may
27  maintain an effective workforce, especially where the amount of the payment is relatively small

28
DEBTOR'S FIRST DAY EMERGENCY MOTION FOR ORDER AUTHORIZING (1) PAYMENT OF PRE-PETITION WAGES
AND EMPLOYEE EXPENSE REIMBURSEMENT CLAIMS; AND (2) HONORING OF PRE-PETITION EMPLOYEE BENEFITS;
MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF DAVID L. MORASH IN SUPPORT THEREOF
-12-

MAINDOCS-#149854-v3-ISE_Corp_Wage_Motion.DOC

1   and where it appears that the wages being paid would ultimately qualify as priority claims.  In re
2   Quality Interiors, 127 B.R. 391, 396 (Bankr. N.D. Ohio 1991), citing 11 U.S.C. §507.  The Debtor
3   believes that all of the subject prepetition wages, as well as claims for vacation and sick leave
4   benefits and other related benefits, constitute priority claims pursuant to the provisions of
5   Sections 507(a)(4) and (a)(5), which will be paid by the Debtor's estate in any event.
6   Consequently, there is ample authority and legal justification for authorizing the Debtor to honor
7   its wage and benefit commitments to current employees to the extent that they constitute
8   prepetition obligations, as they are relatively small amounts and likely within priority limits in any
9   event.

10                                              V.

11                      **NOTICE OF THE MOTION IS ADEQUATE**

12          Notice of this Motion will be provided, by telecopy, overnight courier or hand-delivery, to
13   the following parties-in-interest: (a) the Office of the United States Trustee, and (b) the twenty (20)
14   largest unsecured creditors of the Debtor.  In light of the limited nature of the relief requested
15   herein, the Debtor would submit that no further notice of the Motion should be required.  Under
16   the circumstances of this case this notice is fair and reasonable.

17                                              VI.

18                                        **CONCLUSION**

19          Based on the foregoing, the Debtor respectfully requests that the Court grant the relief
20   requested herein, and such other and further relief as the Court may deem just and proper.

21   DATED:  August 10, 2010                 **WINTHROP COUCHOT**
22                                           **PROFESSIONAL CORPORATION**

23                                           By:
24                                               Marc J. Winthrop
                                                 Payam Khodadadi
25                                           [Proposed] General Insolvency Counsel for
                                             Debtor and Debtor-in-Possession
26

27

28
DEBTOR'S FIRST DAY EMERGENCY MOTION FOR ORDER AUTHORIZING (I) PAYMENT OF PRE-PETITION WAGES
AND EMPLOYEE EXPENSE REIMBURSEMENT CLAIMS; AND (2) HONORING OF PRE-PETITION EMPLOYEE BENEFITS;
MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF DAVID L. MORASH IN SUPPORT THEREOF
-13-
MAINDOCS-#149854-v3-ISE_Corp_Wage_Motion.DOC

## DECLARATION OF DAVID L. MORASH

I, David L. Morash, hereby declare and state as follows:

1.      I am the Chief Financial Officer of ISE Corporation, a California corporation, the Debtor[1] and Debtor in Possession herein.  The facts stated herein are within my personal knowledge, whether acquired directly, or through my familiarity with the Debtor's books and records in my capacity as an officer.  The opinions expressed herein represent the opinions of the Debtor entity, of which I am an authorized agent, unless otherwise indicated.

**The Debtor.**

2.      The Debtor is a California corporation with its corporate office located in Poway, California.

3.      The Debtor is wholly owned by ISE Limited, a company incorporated under the laws of the Cayman Islands.

4.      ISE Limited is also the parent company of ISE Cleantech, Inc., a Delaware corporation.

5.      The Debtor's chief executive officer is Richard J. Sander and the Debtor's chief financial officer is David L. Morash.

**The Debtor's Business.**

6.      The Debtor was incorporated in January 1995.

7.      The Debtor is a developer, manufacturer and distributor of heavy duty hybrid-electric drive systems based on the Debtor's core proprietary technology, which is focused on three critical subsystems: energy storage, controls software and power electronics.

8.      These core technologies and subsystems are critical for hybrid or all-electric vehicles to achieve the most efficient management of energy.

---

[1] All capitalized terms used herein and not defined have the meanings provided in the *Debtor's First Day Emergency Motion for Order Authorizing (1) Payment of Pre-Petition Wages and Employee Expense Reimbursement Claims; and (2) Honoring Of Pre-Petition Employee Benefits.*

**DEBTOR'S FIRST DAY EMERGENCY MOTION FOR ORDER AUTHORIZING (1) PAYMENT OF PRE-PETITION WAGES AND EMPLOYEE EXPENSE REIMBURSEMENT CLAIMS; AND (2) HONORING OF PRE-PETITION EMPLOYEE BENEFITS: MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF DAVID L. MORASH IN SUPPORT THEREOF**

-14-

9.      The Debtor specializes in complete hybrid-electric drive systems designed for use in heavy duty commercial vehicles, which include the Debtor's proprietary subsystems as well as other third party components ("Hybrid Systems").

10.     The Debtor's Hybrid Systems are based on a "series" configuration, where the engine is completely decoupled from the driveline and used only to generate electrical power, thereby providing the option of battery-dominant, plug-in compatible and all-electric heavy duty commercial vehicles.

11.     The Debtor has also developed advanced ultracapacitor and lithium-ion based energy storage systems specifically designed for high duty cycle, heavy duty vehicle applications, incorporating the Debtor's proprietary electronics and battery management technology in a modular, scalable and ruggedized design.

12.     Over the course of the past 15 years, the Debtor has developed significant expertise designing robust, high power systems capable of operating in extreme environments that require unique design approaches and intellectual property.

**The Debtor's Operating Results and Assets and Liabilities.**

13.     The Debtor operates on a fiscal year ending December 31. For the six month period ended June 30, 2010, the Debtor generated approximately $14,363,000 in net sales and incurred a net loss of approximately $8,683,000. In fiscal year 2009 (ended December 31, 2009), the Debtor generated approximately $44,419,000 in net sales and incurred a net loss of approximately $17,801,000.

14.     The Debtor currently has assets of approximately $16.1 million which consists primarily of cash, short-term investments, accounts receivables, inventory and equipment. The Debtor currently has liabilities of approximately $23.0 million which consists primarily of accounts payable and warranty and retrofit obligations.

**Events Precipitating This Chapter 11 Filing.**

15.     The Debtor's financial problems and the consequent need to file this bankruptcy proceeding were primarily caused by the following problems:

- The Debtor, an emerging cleantech company, has required ongoing funding to meet the development cycle of both its integration business and its energy storage engineering. The Debtor has made substantial improvement in its gross margin but has not achieved positive margins in part because of its need to achieve greater volume. Its energy storage business is early-stage and needs ongoing development funding.

- To meet the operational and development costs the Debtor decided in late 2009 to pursue an IPO on the Toronto Stock Exchange.

- The Debtor filed its preliminary prospectus in December 2009 for an equity offering and was told by its underwriters Raymond James Ltd., and Royal Bank of Canada that market conditions were favorable for the Debtor to execute the offering early in 2010. Royal Bank is the largest underwriter on the Toronto Exchange.

- Due to substantially deteriorating conditions in the financial markets, the Debtor only able to raise $12 million in net proceeds.

- The Debtor realized that it would need additional financing after the IPO given the shortfall and has been working on raising additional funds since the IPO from both existing investors and new investors.

- As the developer of new clean hybrid drive systems, the Debtor has encountered significant warranty problems particularly with the first systems. The cost of servicing these issues has been a substantial drag on the Debtor's ability to achieve profitability.

- Given the lack of positive cash flow in major part from these historical warranty obligations and lack of sufficient volume, the Debtor has encountered difficulty in raising the necessary funding particularly over the last 6 to 9 months as the public equity markets have experienced such disruption.

DEBTOR'S FIRST DAY EMERGENCY MOTION FOR ORDER AUTHORIZING (1) PAYMENT OF PRE-PETITION WAGES AND EMPLOYEE EXPENSE REIMBURSEMENT CLAIMS; AND (2) HONORING OF PRE-PETITION EMPLOYEE BENEFITS; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF DAVID L. MORASH IN SUPPORT THEREOF
-16-
MAINDOCS-#149854-v3-ISE_Corp_Wage_Motion.DOC

- In an attempt to avoid bankruptcy and lengthen the potential runway to obtain the necessary financing the company took the serious step of reducing staff from 119 employees to 76 a reduction of approximately 36%.

- In spite of these actions, the Debtor continues to operate at a negative cash flow and has been unsuccessful at raising the required funds, thus leading to the need to file this bankruptcy proceeding.

**The General Outline of Turnaround Plan.**

16.    The Debtor's turnaround effort, which is already underway, will focus on cutting its costs, reorganizing its debts, and selling its business, as a going concern, to a third party purchaser.

**Relief Sought in the Motion.**

17.    The Debtor currently employs 76 people.  In order to preserve and maintain its ongoing business operations, and to meet the needs of its customers, the Debtor must retain the support of its employees.  To retain this support, the Debtor must timely pay all pre-petition payroll and wage related obligations owed to this constituency.

18.    The Debtor seeks court authority to pay its pre-petition wage related obligations and honor its employee related pre-petition benefits.

19.    These obligations include pre-petition payroll, wages, salaries, federal, state and local payroll taxes, deductions and withholdings, payroll deductions relating to various benefits, reimbursement of business expenses, 401(k) plan employer contributions; and miscellaneous other claims asserted by current employees (including, without limitation, worker's compensation, medical, dental, life insurance, and disability insurance).

20.    These benefits include vacation pay, sick leave, holiday pay, jury duty pay, and other paid leave.

21.    The payroll for the employees is paid in arrears on a bi-weekly basis.  The next payroll is due and payable on August 13, 2010 for employee services rendered for the period July 24, 2010 through August 6, 2010, approximately 14 days of which represents pre-petition claims.  In addition, payroll is due and payable on August 27, 2010 for employee services rendered for the

DEBTOR'S FIRST DAY EMERGENCY MOTION FOR ORDER AUTHORIZING (1) PAYMENT OF PRE-PETITION WAGES AND EMPLOYEE EXPENSE REIMBURSEMENT CLAIMS; AND (2) HONORING OF PRE-PETITION EMPLOYEE BENEFITS; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF DAVID L. MORASH IN SUPPORT THEREOF
-17-

MAINDOCS-#149854-v3-ISE_Corp_Wage_Motion.DOC

1 period August 7, 2010 through August 20, 2010, approximately 4 days of which represents pre-

2 petition claims. Attached hereto as Exhibit "1" is a summary of the payroll obligations to be paid

3 by the Debtor in the subject payroll period. To meet the payroll obligation, payroll needs to be

4 funded as soon as possible. As a result, the need for judicial relief is immediate.

5     22.    I believe that employees will leave if they are not paid, which will cause immediate

6 and irreparable damage to the Debtor's business. In contrast, if the Debtor can promptly obtain

7 the relief sought herein, its business value will be preserved for the benefit of all creditors.

8     23.    The pre-petition wages component of the pre-petition compensation that is payable

9 on August 13, 2010 will be approximately $274,075. The pre-petition wages component of the

10 pre-petition compensation that is payable on August 27, 2010 will be approximately $62,127.

11     24.    These pre-petition compensation amounts include compensation to the insiders in

12 this case, but no payments will be made to the insiders until such time as the Debtor's post-

13 petition compensation is authorized to be paid pursuant to the U.S. Trustee Guidelines.

14 Furthermore, the payroll checks paid pursuant to the motion will not exceed the $11,725.00 wage

15 priority limit provided for in Section 507 of the Bankruptcy Code.

16 **<u>Emergency Relief Is Authorized Under These Circumstances.</u>**

17     25.    The need for the Debtor to pay pre-petition claims of its employees is essential

18 because the Debtor's business is dependent upon its labor. If these employees are not paid, they

19 will cease working and seek employment elsewhere. Any such disruption would have a

20 devastating effect upon the Debtor's business and the Debtor's creditors.

21     26.    If the Debtor obtains the relief sought herein, its business operation will continue in

22 the ordinary course, customer needs will be met, and the overall value of the Debtor's business

23 enterprise will be preserved for the Debtor's creditors.

24     27.    The ability to ensure that the employees receive their unpaid prepetition salary and

25 do not miss a paycheck is critical to obtaining the stability necessary for a successful

26 reorganization, which benefits all creditors.

27

28

28.     As set forth herein, ample cause exists justifying payment of the prepetition period wages. Specifically, the maximization of the value of the Debtor is contingent upon the continued operation of the Debtor's business. Since the loss of any employee at this critical juncture could materially damage the Debtor's business operations, and consequently the value of their overall business enterprise, compelling grounds exist for the entry of an order authorizing the Debtor to pay and/or honor the prepetition employee wages and compensation in the amounts set forth herein.

29.     Consequently, it is critical that the Debtor continues, in the ordinary course, those personnel policies that were in effect prior to the petition date. If the checks issued by a payroll service in payment of any of the compensation or other employee obligations are dishonored, or if such obligations are not timely paid postpetition, the employees may suffer extreme personal hardship and may be unable to pay their daily living expenses.

30.     A loss of employee morale and goodwill at this crucial juncture would undermine the Debtor's stability, and undoubtedly would have a negative effect on the Debtor, its customers, the value of its assets and business, and its ability to achieve its objectives in chapter 11.

31.     Nothing in the Motion nor any payments made by the Debtor pursuant to the Motion, shall be deemed an assumption or rejection of any employee benefit plan, employment agreement, other program or contract, or otherwise affect the Debtor's rights under section 365 the Bankruptcy Code to assume or reject any executory contract between the Debtor and any employee or any payroll service.

32.     I believe that, unless the Court allows the payments requested herein to its employees, the disruption to the Debtor's employees and business practices would substantially jeopardize the Debtor's ability to reorganize its affairs.

**All of the Cash Payments in Question Represent Payment of Priority Claims**.

33.     I am unable to determine whether all vacation, severance and sick leave pay was earned by employees within 180 days of the petition date or whether contributions to employee

1  benefit plans arise from services rendered within 180 days of the petition date. However, none of

2  the payroll checks will exceed this limit.

3      34.    I believe that all of the subject prepetition wages, as well as claims for vacation and

4  sick leave benefits and other related benefits, constitute priority claims pursuant to the provisions

5  of Sections 507(a)(4) and (a)(5), which will be paid by the Debtor's estate in any event.

6      35.    There is ample authority and legal justification for authorizing the Debtor to honor

7  its wage and benefit commitments to current employees to the extent that they constitute

8  prepetition obligations, as they are relatively small amounts and likely within priority limits in any

9  event.

10  **Notice of the Motion.**

11      36.    Notice of the Motion will be provided, by telecopy, overnight courier or hand-

12  delivery, to the following parties-in-interest: (a) the Office of the United States Trustee, and (b) the

13  twenty (20) largest unsecured creditors of the Debtor. In light of the limited nature of the relief

14  requested herein, I submit that no further notice of the Motion should be required. Under the

15  circumstances of this case this notice is fair and reasonable.

16      I declare that the foregoing is true and correct under the penalty of perjury.

17      Executed this 10th day of August 2010 at Poway, California.

18

19                                    _____
                                      David L. Morash
20

21

22

23

24

25

26

27

28

# EXHIBIT "1"

| | Payroll to be paid 8/13/10 | | | Payroll to be paid 8/27/10 | | | Totals as of 8/10/10 | | |
|---|---|---|---|---|---|---|---|---|---|
| Name | Pre-Petition | Post-Petition | Total | Pre-Petition | Post-Petition | Total | Pre-Petition | Post-Petition | Total |
| Abarca, Christopher | 5,309 | - | 5,309 | 1,062 | 4,247 | 5,309 | 6,371 | 4,247 | 10,618 |
| Bernasconi, Alexander | 1,939 | - | 1,939 | 1,939 | 7,756 | 9,695 | 3,878 | 7,756 | 11,634 |
| Blackburn, Shauna | 1,962 | - | 1,962 | 392 | 1,570 | 1,962 | 2,354 | 1,570 | 3,924 |
| Boley, Brian | 3,185 | - | 3,185 | 637 | 2,548 | 3,185 | 3,822 | 2,548 | 6,370 |
| Bourdon, Nicholas | 3,001 | - | 3,001 | 600 | 2,401 | 3,001 | 3,601 | 2,401 | 6,002 |
| Brackeen, Billy | 2,017 | - | 2,017 | 403 | 1,614 | 2,017 | 2,420 | 1,614 | 4,034 |
| Briggs, Douglas | 3,924 | - | 3,924 | 785 | 3,139 | 3,924 | 4,709 | 3,139 | 7,848 |
| Brownell, Donna | 4,155 | - | 4,155 | 831 | 3,324 | 4,155 | 4,986 | -3,324 | 8,310 |
| Brumley, Richard | 4,039 | - | 4,039 | 808 | 3,231 | 4,039 | 4,847 | 3,231 | 8,078 |
| Bubna, Piyush | 1,440 | - | 1,440 | 288 | 1,152 | 1,440 | 1,728 | 1,152 | 2,880 |
| Craig, Perry | 2,689 | - | 2,689 | 538 | 2,151 | 2,689 | 3,227 | 2,151 | 5,378 |
| Del Core, Robert | 5,771 | - | 5,771 | 1,154 | 4,617 | 5,771 | 6,925 | 4,617 | 11,542 |
| Delashmutt, Timothy | 3,265 | - | 3,265 | 653 | 2,612 | 3,265 | 3,918 | 2,612 | 6,530 |
| Delay, Linda | 3,139 | - | 3,139 | 628 | 2,511 | 3,139 | 3,767 | 2,511 | 6,278 |
| Dennis, Judy | 3,693 | - | 3,693 | 739 | 2,954 | 3,693 | 4,432 | 2,954 | 7,386 |
| Ellis, Douglas | 2,401 | - | 2,401 | 480 | 1,921 | 2,401 | 2,881 | 1,921 | 4,802 |
| Flett, Frederick | 9,233 | - | 9,233 | 1,847 | 7,386 | 9,233 | 11,080 | 7,386 | 18,466 |
| Gutierrez, David | 4,099 | - | 4,099 | 820 | 3,279 | 4,099 | 4,919 | 3,279 | 8,198 |
| Heinstrom, Carolyn | 3,620 | - | 3,620 | 724 | 2,896 | 3,620 | 4,344 | 2,896 | 7,240 |
| Hicks, Kenneth | 2,451 | - | 2,451 | 490 | 1,961 | 2,451 | 2,941 | 1,961 | 4,902 |
| James, Christopher | 4,460 | - | 4,460 | 892 | 3,568 | 4,460 | 5,352 | 3,568 | 8,920 |
| Jiang, David | 2,770 | - | 2,770 | 554 | 2,216 | 2,770 | 3,324 | 2,216 | 5,540 |
| Kirchhofer, Katie | 2,308 | - | 2,308 | 462 | 1,846 | 2,308 | 2,770 | 1,846 | 4,616 |
| Kirlin, David | 2,509 | - | 2,509 | 502 | 2,007 | 2,509 | 3,011 | 2,007 | 5,018 |
| Klahn, Dennis | 8,031 | - | 8,031 | 1,606 | 6,425 | 8,031 | 9,637 | 6,425 | 16,062 |
| Lafreniere, Normand | 1,920 | - | 1,920 | 384 | 1,536 | 1,920 | 2,304 | 1,536 | 3,840 |
| Le, Nhan | 2,497 | - | 2,497 | 499 | 1,998 | 2,497 | 2,996 | 1,998 | 4,994 |
| Lindback, Magnus | 3,924 | - | 3,924 | 785 | 3,139 | 3,924 | 4,709 | 3,139 | 7,848 |
| Macdellan, Chad | 2,785 | - | 2,785 | 557 | 2,228 | 2,785 | 3,342 | 2,228 | 5,570 |
| Magers, Mark | 6,786 | - | 6,786 | 1,357 | 5,429 | 6,786 | 8,143 | 5,429 | 13,572 |
| Manzano, Allen | 3,066 | - | 3,066 | 613 | 2,453 | 3,066 | 3,679 | 2,453 | 6,132 |
| Matthews, Phillip | 2,862 | - | 2,862 | 572 | 2,290 | 2,862 | 3,434 | 2,290 | 5,724 |
| Mayer, Frank | 3,473 | - | 3,473 | 695 | 2,778 | 3,473 | 4,168 | 2,778 | 6,946 |
| Mccann, Julia | 6,002 | - | 6,002 | 1,200 | 4,802 | 6,002 | 7,202 | 4,802 | 12,004 |
| Medina, Alfonso | 3,232 | - | 3,232 | 646 | 2,586 | 3,232 | 3,878 | 2,586 | 6,464 |
| Meeks, Angela | 5,754 | - | 5,754 | 1,151 | 4,603 | 5,754 | 6,905 | 4,603 | 11,508 |
| Meyer, Harold | 4,450 | - | 4,450 | 890 | 3,560 | 4,450 | 5,340 | 3,560 | 8,900 |
| Monteagudo, Enrique | 4,158 | - | 4,158 | 832 | 3,326 | 4,158 | 4,990 | 3,326 | 8,316 |
| Morash, David | 2,031 | - | 2,031 | 2,031 | 8,125 | 10,156 | 4,062 | 8,125 | 12,187 |
| Nguyen, David | 1,728 | - | 1,728 | 346 | 1,382 | 1,728 | 2,074 | 1,382 | 3,456 |
| Nguyen, Hai | 2,207 | - | 2,207 | 441 | 1,766 | 2,207 | 2,648 | 1,766 | 4,414 |
| Pack, James | 5,771 | - | 5,771 | 1,154 | 4,617 | 5,771 | 6,925 | 4,617 | 11,542 |
| Page, Kelli | 2,539 | - | 2,539 | 508 | 2,031 | 2,539 | 3,047 | 2,031 | 5,078 |
| Paris, Peter | 6,819 | - | 6,819 | 1,364 | 5,455 | 6,819 | 8,183 | 5,455 | 13,638 |
| Patel, Parthiv | 8,033 | - | 8,033 | 1,607 | 6,426 | 8,033 | 9,640 | 6,426 | 16,066 |
| Perez, Frank | 2,587 | - | 2,587 | 517 | 2,070 | 2,587 | 3,104 | 2,070 | 5,174 |
| Preston, Jared | 2,955 | - | 2,955 | 591 | 2,364 | 2,955 | 3,546 | 2,364 | 5,910 |
| Prokop, John | 2,881 | - | 2,881 | 576 | 2,305 | 2,881 | 3,457 | 2,305 | 5,762 |
| Quintana, Adrian | 3,232 | - | 3,232 | 646 | 2,586 | 3,232 | 3,878 | 2,586 | 6,464 |
| Reyes, Grace | 2,770 | - | 2,770 | 554 | 2,216 | 2,770 | 3,324 | 2,216 | 5,540 |
| Riley, John | 2,689 | - | 2,689 | 538 | 2,151 | 2,689 | 3,227 | 2,151 | 5,378 |
| Rodriguez, Milton (Sam) | 2,185 | - | 2,185 | 437 | 1,748 | 2,185 | 2,622 | 1,748 | 4,370 |
| Salamat, Melody | 2,678 | - | 2,678 | 536 | 2,142 | 2,678 | 3,214 | 2,142 | 5,356 |
| Salinas, Daniel | 3,231 | - | 3,231 | 646 | 2,585 | 3,231 | 3,877 | 2,585 | 6,462 |
| Sanchez, Hector | 1,584 | - | 1,584 | 317 | 1,267 | 1,584 | 1,901 | 1,267 | 3,168 |
| Sander, Richard | 3,000 | - | 3,000 | 3,000 | 12,002 | 15,002 | 6,001 | 12,002 | 18,002 |
| Santos, Michael | 3,370 | - | 3,370 | 674 | 2,696 | 3,370 | 4,044 | 2,696 | 6,740 |
| Scott, Paul | 6,745 | - | 6,745 | 1,349 | 5,396 | 6,745 | 8,094 | 5,396 | 13,490 |
| Shaver, Jason | 4,386 | - | 4,386 | 877 | 3,509 | 4,386 | 5,263 | 3,509 | 8,772 |
| Spragg, Justin | 2,170 | - | 2,170 | 2,170 | 8,679 | 10,849 | 4,340 | 8,679 | 13,019 |
| Stone, Kevin | 6,694 | - | 6,694 | 1,339 | 5,355 | 6,694 | 8,033 | 5,355 | 13,388 |
| Sy, Steven | 1,786 | - | 1,786 | 357 | 1,429 | 1,786 | 2,143 | 1,429 | 3,572 |
| Taylor, Devon | 1,896 | - | 1,896 | 379 | 1,517 | 1,896 | 2,275 | 1,517 | 3,792 |
| Thanasith, Ava | 2,539 | - | 2,539 | 508 | 2,031 | 2,539 | 3,047 | 2,031 | 5,078 |
| Thaviboune, Eth | 1,584 | - | 1,584 | 317 | 1,267 | 1,584 | 1,901 | 1,267 | 3,168 |
| Theriault, Jackie | 2,593 | - | 2,593 | 519 | 2,074 | 2,593 | 3,112 | 2,074 | 5,186 |
| Thurber, Anthony | 2,017 | - | 2,017 | 403 | 1,614 | 2,017 | 2,420 | 1,614 | 4,034 |
| Ticonchuk, David | 2,199 | - | 2,199 | 440 | 1,759 | 2,199 | 2,639 | 1,759 | 4,398 |
| Tyler, Tavin | 6,038 | - | 6,038 | 1,208 | 4,830 | 6,038 | 7,246 | 4,830 | 12,076 |
| Vargas, Hector | 1,923 | - | 1,923 | 385 | 1,538 | 1,923 | 2,308 | 1,538 | 3,846 |
| Weyde, Markus | 5,070 | - | 5,070 | 1,014 | 4,056 | 5,070 | 6,084 | 4,056 | 10,140 |
| White, Brandon | 2,113 | - | 2,113 | 423 | 1,690 | 2,113 | 2,536 | 1,690 | 4,226 |
| Worley, Andrew | 7,940 | - | 7,940 | 1,588 | 6,352 | 7,940 | 9,528 | 6,352 | 15,880 |
| Ye, Changqing | 5,771 | - | 5,771 | 1,154 | 4,617 | 5,771 | 6,925 | 4,617 | 11,542 |
| Yohrer, Jenna | 6,002 | - | 6,002 | 1,200 | 4,802 | 6,002 | 7,202 | 4,802 | 12,004 |
| Totals | $ 274,075 | $ - | $ 274,075 | $ 62,127 | $ 248,510 | $ 310,637 | $ 336,203 | $ 248,510 | $ 584,712 |

1

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

2

### PROOF OF SERVICE OF DOCUMENT

3

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 660 Newport Center Drive, 4th Fl., Newport Beach. CA 92660.

4

5

6

7

A true and correct copy of the foregoing document described as: **DEBTOR'S FIRST DAY EMERGENCY MOTION FOR ORDER AUTHORIZING (1) PAYMENT OF PRE-PETITION WAGES AND EMPLOYEE EXPENSE REIMBURSEMENT CLAIMS; AND (2) HONORING OF PRE-PETITION EMPLOYEE BENEFITS; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF DAVID L. MORASH IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

8

9

10

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On _____, 2010, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

11

12

☐ Service information continued on attached page

13

14

15

16

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:** On August 10, 2010  I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

17

18

☒ Service information continued on attached page

19

20

21

22

III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served)**:** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on_____, 2010 I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

23

jspragg@isecorp.com

24

☐ Service information continued on attached page

25

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

26

| August 10, 2010 | Viann Corbin | |
| --- | --- | --- |
| Date | Type Name | Signature |

27

28

DEBTOR'S FIRST DAY EMERGENCY MOTION FOR ORDER AUTHORIZING (1) PAYMENT OF PRE-PETITION WAGES AND EMPLOYEE EXPENSE REIMBURSEMENT CLAIMS; AND (2) HONORING OF PRE-PETITION EMPLOYEE BENEFITS; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF DAVID L. MORASH IN SUPPORT THEREOF

-21-

MAINDOCS-#149854-v3-ISE_Corp_Wage Motion.DOC

1

2          **SERVICE VIA OVERNIGHT DELIVERY**

| | | |
|---|---|---|
| Suntron Corporation<br>Attn: Jose Baca<br>2401 W. Grandview Road<br>Phoenix, AZ 85023 | Target CW<br>Attn: Samer Khouli II<br>2650 Hancock St.<br>San Diego, CA 92110 | Seico<br>Attn: A. Hermann<br>Postbox 10 11 07<br>Langenhagen, D-30832 DE |
| Ballard Power Systems Inc.<br>Attn: Daljit Bawa<br>4343 North Fraser Way<br>Burnaby V5J 5J9 BC Canada | Cobasys<br>Attn: Gerard Russell<br>3740 Lapeer Road S.<br>Orion, MI 48359 | Blum & Clark Accountancy Group<br>Attn: Robert Blum<br>5675 Ruffin Road, #300<br>San Diego, CA 92123 |
| KPMG, LLP<br>Attn: Denise Thompson<br>4747 Executive Dr., #600<br>San Diego, CA 92121 | DMR Electronics, Inc.<br>Attn: Daniel G. Niebeling<br>1111 East Seventh Ave.<br>Hibbing, MN 55746 | Wrightbus Ltd.<br>Attn: Managing Partner<br>Galgorm Ind Estate<br>Fenaghy Road, Galgorm<br>Ballymena BT42 IPY GB |
| Siemens Industry, Inc.<br>Attn: Christopher Brittons<br>90 Kent Ave.<br>Elk Grove, IL 60007 | Millbrook Proving Ground Ltd<br>Attn: Darren Carter<br>Bedford MK45 2JQ<br>Millbrook MK45 2JQ GB | Second Star Inc.<br>Attn: Jennifer Rey<br>1556 Alkaid Dr.<br>San Diego, CA 92126 |
| Goodwin Procter LLP<br>Attn: Managing Partner<br>53 State Street<br>Boston, MA 02109 | Ernst & Young LLP<br>Attn: Kris Shirley<br>1101 New York Ave.<br>Washington, DC 20005 | Fasken Martineau Dumoulin LLP<br>Attn: Amanda Fullerton<br>66 Wellington St. W., #4200<br>Toronto Dominion Bank Tower<br>Box 20 Toronto-Dominion Centre<br>Toronto M5K 1N6 Canada |
| R.R. Donnelley Receivables Inc.<br>Attn: Mason Matthies<br>P.O. Box 100112<br>Pasedena, CA 91189-0001 | Foley & Lardner LLP<br>Attn: Managing Partner<br>555South Flower St.<br>Los Angeles, CA 90071-2411 | Proskauer Rose LLP<br>Attn: Managing Partner<br>1585 Broadway<br>New York, NY 10036-8299 |
| Blue Shield of California<br>Attn: Corporate Officer<br>PO Box 629014<br>El Dorado Hills, CA 95762-9014 | Concer: Groups Logistics<br>Attn: Jean Gonin<br>5052 Reliable Parkway<br>Chicago, IL 60686-0050 | U.S. Trustee's Office<br>402 W. Broadway, Suite 600<br>San Diego, CA 92101-8511 |
| RSN8/10/10<br>New Flyer<br>c/o Minitz Levin, etc<br>Jeffrey A. Davis<br>3580 Carmel Mountain Rd., #300<br>San Diego, CA 92130 | RSN8/10/10<br>New Flyer<br>c/o Troys LLP<br>William F. Gray, Jr.<br>237 Park Avenue]<br>New York, NY 10017-3142 | |

**DEBTOR'S** <u>FIRST DAY EMERGENCY MOTION</u> **FOR ORDER AUTHORIZING (1) PAYMENT OF PRE-PETITION WAGES AND EMPLOYEE EXPENSE REIMBURSEMENT CLAIMS; AND (2) HONORING OF PRE-PETITION EMPLOYEE BENEFITS; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF DAVID L. MORASH IN SUPPORT THEREOF**

-22-