MARC J. WINTHROP -- State Bar No. 63218
mwithrop@winthropcouchot.com
GARRICK A. HOLLANDER -- State Bar No. 166316
ghollander@winthropcouchot.com
PAYAM KHODADADI -- State Bar No. 239906
pkhodadadi@winthropcouchot.com
**WINTHROP COUCHOT**
**PROFESSIONAL CORPORATION**
660 Newport Center Drive, Ste 400
Newport Beach, CA 92660
Telephone: (949) 720-4100
Facsimile: (949) 720-4111

[Proposed] General Insolvency Counsel for
Debtor and Debtor-in-Possession

# UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF CALIFORNIA

In re:

ISE CORPORATION,

Debtor and
Debtor in Possession.

Case No. 10-14198-MM11

Chapter 11 Proceeding

**DEBTOR'S OPPOSITION TO MOTION OF NEW FLYER FOR AN ORDER COMPELLING COMPLIANCE WITH §365(N)(4); DECLARATION OF DAVID L.MORASH IN SUPPORT THEREOF**

1    ISE Corporation, the debtor and debtor-in-possession in the above entitled Chapter 11

2  proceeding (the "Debtor"), hereby files this Opposition to the Motion of New Flyer for an Order

3  Compelling Compliance with Section 365(n)(4) ("Motion").

4                                              **I.**

5  **NEW FLYER IS IN BREACH OF THE AGREEMENT, AND THEREFORE CAN NOT**

6  **COMPEL THE TURNOVER OF THE DEBTOR'S INTELLECTUAL PROPERTY.**

7    New Flyer has moved to enforce Bankruptcy Code Section 365(n)(4), which provides as

8  follows:

9       (4) Unless and until the trustee rejects such contract, on the written request of
         the licensee the trustee shall--
10         (A) **to the extent provided in such contract** or any agreement supplementary
         to such contract--
11            (i) perform such contract; or
12            (ii) **provide to the licensee such intellectual property** (including any
         embodiment of such intellectual property to the extent protected by applicable
13         non-bankruptcy law) held by the trustee....

14  11 U.S.C. § 365(n)(4) (emphasis added).

15    On its face, the Debtor has the option to either (i) perform the contract, or (ii) provide to

16  the licensee such intellectual property. However, both of these options are qualified by the

17  language in Section 365(n)(4)(A) "to the extent provided in such contract." That is, New Flyer's

18  right to the intellectual property is qualified in that it is only entitled to such intellectual property to

19  the extent it has such right under the applicable agreement. See In re Storm Technology, Inc., 260

20  B.R. 152, 157 (Bankr. N.D.Cal. 2001) ("As of the petition date, Logitech had no rights in the

21  debtor's intellectual property but merely a contingent right to a license upon a default on the

22  debtor's payment obligation. ... Logitech had no enforceable license in the patents as of the

23  petition date.").

24    It is a well established principle of contract that a dependent or concurrent promise cannot

25  be enforced by a party that is itself in breach of the contract.

26       Where mutual promises, which constitute consideration for each other, are
         concurrent or dependent, the failure of one party to perform may be treated as a
27       breach by the other party. Such failure of one party will discharge the other, and
         one cannot claim or obtain the benefits of the contract, or maintain an action
28

1
2
3
4

against the other, without showing performance, or a tender of performance, on his or her part, unless such performance has been excused. Generally, a person who has himself or herself broken a contract cannot enforce it or recover on it, and one who abandons a contract may not enforce it against the other party. This rule is particularly applicable in a situation where his or her breach is substantial, willful or intentional, or where the other party has demanded performance.

CJS Contracts § 503 (2010). See also Id. at § 361 ("Where a contract requires successive acts to be performed by the parties, covenants which relate to that contract are dependent and a plaintiff cannot maintain an action for breach of contract until it has proved that it is free from fault with respect to performance of its part of the agreement.").

The law in British Columbia recognizes the concept of dependent obligations. The Court of Appeal in Gross v. Cottier, 71 B.C.L.R. (2d) 1 (C.A.) provides as follows:

Where covenants are mutually dependent and are expected to be carried out contemporaneously, neither party need actually perform its obligations unless the other side shows its ability or willingness to perform its part of the bargain. See Burtini v. Sovili, (1975), 61 D.L.R. (3d) 505.

More generally, a party may be relieved of the obligation to perform where the other party has fundamentally breached the contract and the innocent party has elected to treat the contract as at an end. Agrifoods International Corp. v. Beatrice Foods Inc. [1997] B.C.J. No. 393 (S.C.).

New Flyer must first proceed against the Debtor for breach of contract, claiming specific performance (requiring the Debtor to deliver up the source code) or damages (resulting from the failure to provide the source code). However, specific performance is an equitable remedy. Relief may be refused where the plaintiff has failed to satisfy its obligations under the contract. In Strata Plan NW1837 v. Strata Plan NW2794 (2003), 12 R.P.R. (4th) 97 (B.C.S.C.), the British Columbia Supreme Court put the issue as follows:

The doctrine of "clean hands" provides that a party should not obtain equitable relief to enforce compliance with a legal obligation to which it is itself bound where it has reciprocally failed to comply.

A plaintiff who claims specific performance must generally show that he has performed his obligations under the contract, so far as he has been able to, and is willing and able to perform his own outstanding obligations under it if an order for specific performance is made.

In this case, New Flyer needs to perform its obligations due under the Agreement[1] before it can seek an order compelling specific performance. Stated simply, New Flyer cannot materially breach the Agreement, and thereafter seek to compel the Debtor's performance of the same Agreement. Here, New Flyer's Motion fails to disclose that it filed a pre-petition action against the Debtor in the Supreme Court of British Columbia, Case No. S105300, Vancouver Registry. The Debtor submitted an affidavit of David Morash, its Chief Financial Officer (the "Morash Affidavit"), who among other things testified that New Flyer was in default and owed the Debtor almost $ 4 million under the Agreement.

*Amounts due by New Flyer to ISE*

14. The total amount remaining to be paid by New Flyer to ISE under the New Flyer Agreement is USD $3,939,721. This amount breaks down as follows:

(a) USD $1,064,000 in cash is currently due to ISE under the terms of the New Flyer Agreement. New Flyer is withholding these funds without ISE's consent.

(b) USD $1,610,832 should have been placed by New Flyer into a Warranty Escrow Account. New Flyer has failed or refused to place these funds into escrow, as required by the terms of the New Flyer Agreement.

(c)    USD $1,264,889 is remaining outstanding, a portion of which ISE has not yet earned. These funds are related to the 15-day performance milestone for each of the 20 BC Transit buses. As I understand it, New Flyer has halted performance testing based upon a dispute between BC Transit and New Flyer, which raises concerns regarding these payments.

15. ISE disputes the assertion by New Flyer that all funds have been properly held back.

16. Rather, ISE takes the position that the failure by New Flyer to pay amounts due to ISE by the terms of the New Flyer Agreement represents a continuing breach by New Flyer of the New Flyer Agreement.

A true and correct copy of the Morash Affidavit is attached as Exhibit "1" to the request for judicial notice filed concurrently herewith and incorporated herein by this reference.

In this case, New Flyer failed to pay the Debtor $1,064,000 that is currently due and payable under the Agreement and previously invoiced by the Debtor. New Flyer is withholding these funds without the Debtor's consent.

---

[1] Capitalized terms not defined herein shall have the same meaning as set forth in the Motion.

1      In addition, New Flyer failed to pay the Debtor $16,579 (and failed to place $107,386 into

2 a warranty escrow) in connection with two buses that have passed BC Transit's "15 Day Test," as

3 required under Milestone #4 of the Agreement. In addition, pursuant to the terms of the

4 Agreement, New Flyer is obligated to pay an additional $1,194,618 due under Milestone #4.

5      New Flyer has also failed to comply with the Agreement's requirement (pursuant to

6 Milestone #2 and #3) of placing $1,557,139 into warrant escrow accounts for the benefit of the

7 Debtor and Ballard Power Systems (the Debtor's supplier).

8      Moreover, New Flyer continues to falsely claim that the Debtor's hybrid systems do not

9 meet the fuel range requirements of the Agreement. The Debtor's original hybrid system design

10 called for eight hydrogen tanks to satisfy range requirements. At New Flyer's request, the Debtor

11 removed two hydrogen tanks to help New Flyer reduce overall bus weight to enable the buses to

12 hold more passengers (a requirement under New Flyer's prime contract with BC Transit, not a

13 requirement of the Agreement). The Agreement does not provide a weight limitation for the

14 Debtor's hybrid system, but the Debtor removed the two hydrogen tanks in good faith to assist

15 New Flyer in meeting New Flyer's requirements under the prime contract. It is clear that the buses

16 will meet the range requirement with eight hydrogen tanks and New Flyer assumed the risk when

17 it requested the Debtor to remove two of these hydrogen tanks.

18      Furthermore, with respect to the Technology Escrow, July 12, 20120 was the first time

19 New Flyer has ever raised the issue of the Technology Escrow since the signing of the Agreement

20 in 2007. August 10, 2010 was the first time that New Flyer has ever submitted a Technology

21 Escrow Agreement to the Debtor for signature, and the form of Technology Escrow Agreement

22 that New Flyer submitted to the Debtor does not comply with the requirements of the Agreement

23 (see Exhibit "O" of the Agreement).

24      Here, since New Flyer is in material and substantial breach of the Agreement in the amount

25 of almost $4 million, New Flyer does not have the contractual right to enforce the Debtor's

26 performance. Since New Flyer's rights under Section 365(n)(4) to compel the Debtor's

27 performance is expressly limited "to the extent provided in such contract," it is clear that the

28

1  Debtor's performance is not required while New Flyer is in material breach of the same

2  Agreement.

3      Any order compelling the Debtor's performance under Section 365(n)(4) must itself be

4  conditioned upon New Flyer's performance under the Agreement and the payment to the Debtor of

5  approximately $ 4 million under the Agreement (consisting cash payments to Debtor and cash

6  deposits into the escrow accounts identified in the Agreement).

7  **II.**

8  **THE DEBTOR INTENDS TO REJECT THE AGREEMENT, WHICH WILL REQUIRE**

9  **NEW FLYER TO MAKE ALL ROYALTY PAYMENTS TO THE DEBTOR IF NEW**

10  **FLYER WISHES TO COMPEL TURNOVER OF THE INTELLECTUAL PROPERTY**

11      The Debtor will be filing shortly a motion to reject the Agreement. As a result of the

12  rejection, New Flyer will have the right to make the statutory election, under Section 365(n)(1)(B)

13  to "retain its rights" under the Agreement "to such intellectual property … as such rights existed

14  immediately before the case commenced".

15      However, if the licensee elects to retain its rights to the intellectual property under Section

16  365(n)(1)(B), the Section 365(n)(2) requires the licensee to make all royalty payments and waive

17  any right to setoff:

18         • "the licensee shall make all royalty payments due under such contract for the
   duration of such contract and for any period described in paragraph (1)(B) of this

19          subsection for which the licensee extends such contract" 11 U.S.C. §
   365(n)(2)(B).[2]

20         • "the licensee shall be deemed to waive-- (i) any right of setoff it may have with

21          respect to such contract under this title or applicable non-bankruptcy law; and (ii)
   any claim allowable under section 503(b) of this title arising from the performance

22          of such contract." 11 U.S.C. § 365(n)(2)(C).

23      Moreover, similar to Section 365(n)(4)(A), New Flyer's right to the intellectual property

24  post-rejection is similarly limited "to the extent provided in such contract":

25

26  _____

27  [2] See In re Prize Frize, Inc., 150 B.R. 456, 460 (9th Cir.BAP 1993) affirmed 32 F.3d 426 (9th Cir. 1994) ("The
   legislative history reflects that this term ["royalty payments"] encompasses any payment for use of intellectual

28  property, no matter how that payment is named in the agreement. Under such a definition, the fact that the payments
   are called license fees or the fact that the payments are based upon a flat fee rather that a percentage of sales will not
   preclude their treatment of royalty payments for purposes of section 365(n)(2).")

1             (3) If the licensee elects to retain its rights, as described in paragraph (1)(B) of this subsection, then on the written request of the licensee the trustee shall--

2               (A) to the extent provided in such contract, or any agreement supplementary to such contract, provide to the licensee any intellectual property (including

3      such embodiment) held by the trustee;

4  11 U.S.C. § 365(n)(3)(A).

5      Accordingly, the statutory scheme is abundantly clear.  Once the Agreement is rejected,

6  New Flyer's right to the intellectual property is conditioned upon (i) its payment of "all royalty

7  payments due under such contract for the duration of such contract," and (ii) its performance of all

8  material obligations under the Agreement.

9      Thus, any order compelling the Debtor's performance under Section 365(n)(3) must itself

10  be conditioned upon New Flyer's payment of approximately $ 4 million under the Agreement.

11                          **III.**

12  **ANY DELIVERY OF THE INTELLECTUAL PROPERTY TO NEW FLYER MUST BE**

13       **SUBJECT TO THE RESTRICTIONS SET FORTH IN THE AGREEMENT**.

14      The Debtor is the owner of the intellectual property at issue.  See Agreement, Section 38.1.

15  New Flyer merely holds a non-exclusive license to use the intellectual property in connection with

16  the propulsion systems sold to New Flyer.  See Agreement, Section 33.  As a result, the Agreement

17  contains explicit restrictions of New Flyers use of the intellectual property.  Paragraphs 34.3

18  and 34.4 of the Agreement provide as follows:

19       34.3    In the event Deposit Materials are released to New Flyer under the

20              Technology Escrow Agreement, then New Flyer shall (i) solely use such Deposit Materials as provided in Section 34.4, and (ii) protect such Deposit

21              Materials as Confidential Information under Section 39.

     34.4    In the event Deposit Materials are released to New Flyer under the

22              Technology Escrow Agreement, New Flyer shall have a nonexclusive,

23              nontransferable, non-sublicensable (except to New Flyer's subcontractors), royalty-free, worldwide license under Contractor's interest in the Intellectual

24              Property applicable to the Work solely for the purposes of (i) completing the Work under this Agreement, and (ii) performing Contractor's warranty

25              obligations for the Work under this Agreement; provided, however, New

26              Flyer shall not sublicense or distribute any Intellectual Property under this Clause 34.4 to any subcontractor of New Flyer unless such subcontractor (x)

27              is subject to a written confidentiality agreement that is reasonably acceptable to Contractor and (y) is not a competitor of Contractor.

28

1    New Flyer's rights to the intellectual property under Section 365(n) are no greater

2    than the rights conferred under the Agreement.

3        **(n)(1)** If the trustee rejects an executory contract under which the debtor is a
4    licensor of a right to intellectual property, the licensee under such contract may
    elect--
5            ***

6        **(B) to retain its rights** (including a right to enforce any exclusivity provision of
such contract, but excluding any other right under applicable non-bankruptcy law
7    to specific performance of such contract) **under such contract** and under any
agreement supplementary to such contract, **to such intellectual property**
8    (including any embodiment of such intellectual property to the extent protected
by applicable non-bankruptcy law), as such rights existed immediately before the
9    case commenced, for--
10       **(i)** the duration of such contract; and
    **(ii)** any period for which such contract may be extended by the licensee as of
11   right under applicable non-bankruptcy law.

12   11 U.S.C. § 365 (n)(1)(B).

13       Here, any right of New Flyer to utilize the intellectual property is expressly limited by

14   Sections 34.3 and 34.4 of the Agreement. To the extent that the Debtor is ordered to provide New

15   Flyer with the intellectual property, such order should specifically recite and acknowledge the New

16   Flyer's access and use of the intellectual property is restricted by the applicable terms of the

17   Agreement including without limitation Sections 34.3 and 34.4 thereof.

18       The Agreement expressly limits New Flyer's use of the intellectual property provided

19   under the Agreement because the Debtor is a technology company and the Debtor's core value is

20   derived from its proprietary intellectual property. Since the Debtor's incorporation in 1995, the

21   Debtor has received equity investments totaling more than $80 Million. A significant portion of

22   these funds were used to develop intellectual property, including the intellectual property licensed

23   in the Agreement. The Debtor's business will be seriously crippled, or destroyed, if the Debtor is

24   unable to enforce the intellectual property protections set forth in the Agreement.

25       Specifically, source code, a particular type of software-based intellectual property, was

26   developed using these investor funds and is a form of proprietary intellectual property that is

27   licensed under the Agreement. It is extremely important that New Flyer's use of the source code is

28   limited to the license provisions of Sections 34.3 and 34.4 of the Agreement because this source

1  code was developed over many years and embodies the "intelligence" of the Debtor's hybrid drive

2  systems. It is absolutely critical to the long term success of the Debtor's business to maintain the

3  confidential and proprietary nature of this source code.

**IV.**

**A LICENSEE'S STATUTORY RIGHT IS LIMITED TO THE INTELLECTUAL**

**PROPERTY AS IT EXISTED ON THE PETITION DATE.**

7  A licensee's statutory right to use intellectual property under Section 365(n) is only the

8  extent or state of such intellectual property as its existed on the petition date:

> Section 365(n)(1)(B) provides that the licensee may retain its rights under the
> contract as they existed immediately before the case commenced. In other words,
> by retaining its rights, [the licensee] became "entitled to [continue to] use the
> underlying intellectual property [but only] in the state that it existed on the day of
> the bankruptcy filing." S.Rep. No. 100-505, 100th Cong., 2nd Sess.1988, 1988
> U.S.C.C.A.N. 3200.

13  Szombathy v. Controlled Shredders, Inc., 1997 WL 189314, *1 (N.D.Ill. 1997). See also In

14  re Quad Systems Corp., 2001 WL 1843379, at *14 (E.D.Pa. 2001) ("the licensee will have

15  the right to use the technology only in the form that existed as of the filing date").

16  Here, New Flyer's proposed form of order purports to require the Debtor to deliver the

17  "most recent form of the source code." The Debtor objects to this form of order. At most, New

18  Flyer is limited to the form of the source code as it existed on the petition date.

**V.**

**CONCLUSION**

21  Based upon the foregoing, the Debtor respectfully requests that (i) the Motion be denied in

22  its entirety, until and unless New Flyer fully performs its objections under the Agreement, (ii) to

23  the extent the Debtor is required to provide New Flyer with the intellectual property pursuant to

24  Section 365(n)(3) or (4), such order should specifically recite and acknowledge the New Flyer's

25  access and use of the intellectual property is restricted by the applicable terms of the Agreement

26  including without limitation Sections 34.3 and 34.4 thereof, and (iii) any obligation of the Debtor

27

28

1  to provide the intellectual property is limited to the form of such intellectual property as it existed

2  on the petition date.

3  DATED:  August 30, 2010           **WINTHROP COUCHOT**
                                     **PROFESSIONAL CORPORATION**
4

5                                    By:    */s/ Garrick A. Hollander*
                                           Marc J. Winthrop
6                                          Garrick A. Hollander
                                           Payam Khodadadi
7                                    [Proposed] General Insolvency Counsel for
                                     Debtor and Debtor-in-Possession
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF DAVID L. MORASH

I, David L. Morash, hereby declare and state as follows:

1.     I am the Chief Financial Officer of ISE Corporation, a California corporation, the Debtor and Debtor in Possession herein (the "Debtor"). The facts stated herein are within my personal knowledge, whether acquired directly, or through my familiarity with the Debtor's books and records in my capacity as an officer. The opinions expressed herein represent the opinions of the Debtor entity, of which I am an authorized agent, unless otherwise indicated.

2.     New Flyer's Motion fails to disclose that it filed a pre-petition action against the Debtor in the Supreme Court of British Columbia, Case No. S105300, Vancouver Registry. The Debtor submitted my affidavit, which, among other things, attested that New Flyer was in default and owed the Debtor almost $ 4 million under the Agreement.

*Amounts due by New Flyer to ISE*

14. The total amount remaining to be paid by New Flyer to ISE under the New Flyer Agreement is USD $3,939,721. This amount breaks down as follows:

(d) USD $1,064,000 in cash is currently due to ISE under the terms of the New Flyer Agreement. New Flyer is withholding these funds without ISE's consent.

(e) USD $1,610,832 should have been placed by New Flyer into a Warranty Escrow Account. New Flyer has failed or refused to place these funds into escrow, as required by the terms of the New Flyer Agreement.

(f)     USD $1,264,889 is remaining outstanding, a portion of which ISE has not yet earned. These funds are related to the 15-day performance milestone for each of the 20 BC Transit buses. As I understand it, New Flyer has halted performance testing based upon a dispute between BC Transit and New Flyer, which raises concerns regarding these payments.

15. ISE disputes the assertion by New Flyer that all funds have been properly held back.

16. Rather, ISE takes the position that the failure by New Flyer to pay amounts due to ISE by the terms of the New Flyer Agreement represents a continuing breach by New Flyer of the New Flyer Agreement.

A true and correct copy of my affidavit is attached as Exhibit "1" to the request for judicial notice filed concurrently herewith as Exhibit "1" and incorporated herein by this reference.

3.     In this case, New Flyer failed to pay the Debtor $1,064,000 that is currently due and payable under the Agreement and previously invoiced by the Debtor. New Flyer is withholding these funds without the Debtor's consent.

4.    In addition, New Flyer failed to pay the Debtor $16,579 (and failed to place $107,386 into a warranty escrow) in connection with two buses that have passed BC Transit's "15 Day Test," as required under Milestone #4 of the Agreement.  In addition, pursuant to the terms of the Agreement, New Flyer is obligated to pay an additional $1,194,6178 due under Milestone #4.

5.    New Flyer has also failed to comply with the Agreement's requirement (pursuant to Milestone #2 and #3) of placing $1,557,139 into warrant escrow accounts for the benefit of the Debtor and Ballard Power Systems (the Debtor's supplier).

6.    Moreover, New Flyer continues to falsely claim that the Debtor's hybrid systems do not meet the fuel range requirements of the Agreement.  The Debtor's original hybrid system design called for eight hydrogen tanks to satisfy range requirements.  At New Flyer's request, the Debtor removed two hydrogen tanks to help New Flyer reduce overall bus weight to enable the buses to hold more passengers (a requirement under New Flyer's prime contract with BC Transit, not a requirement of the Agreement).  The Agreement does not provide a weight limitation for the Debtor's hybrid system, but the Debtor removed the two hydrogen tanks in good faith to assist New Flyer in meeting New Flyer's requirements under the Prime contract.  It is clear that the buses will meet the range requirement with eight hydrogen tanks and New Flyer assumed the risk when it requested the Debtor to remove two of these hydrogen tanks.

7.    Furthermore, with respect to the Technology Escrow, July 12, 20120 was the first time New Flyer has ever raised the issue of the Technology Escrow since the signing of the Agreement in 2007.  August 10, 2010 was the first time that New Flyer has ever submitted a Technology Escrow Agreement to the Debtor for signature, and the form of Technology Escrow Agreement that New Flyer submitted to the Debtor does not comply with the requirements of the Agreement (see Exhibit "O" of the Agreement).

I declare that the foregoing is true and correct under the penalty of perjury.

Executed this 30th day of August 2010 at _____.

  /s/ David L. Morash_____
David L. Morash

1

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

2

# PROOF OF SERVICE OF DOCUMENT

3

4

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 660 Newport Center Drive, 4th Fl., Newport Beach, CA 92660.

5

6

A true and correct copy of the foregoing document described as: **DEBTOR'S OPPOSITION TO MOTION OF NEW FLYER FOR AN ORDER COMPELLING COMPLIANCE WITH §365(N)(4); DECLARATION OF DAVID L.MORASH IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

7

8

9

I.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On August 30, 2010, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

10

☒ Service information continued on attached page

11

12

13

14

15

16

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):
On _____, 2010  I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

17

18

19

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on August 30, 2010 I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

20

21

Debtor:  Justin Spragg, Esq. - jspragg@isecorp.com

22

☐ Service information continued on attached page

23

24

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

25

| | | |
|---|---|---|
| August 30, 2010 | Viann Corbin | |
| *Date* | *Type Name* | *Signature* |

26

27

28

**<u>NEF SERVICE LIST</u>**

1

2
- Jeffry A. Davis    jadavis@mintz.com,
  dsjohnson@mintz.com;jrdunn@mintz.com;aobrient@mintz.com **-Counsel for New Flyer**

3

4
- Garrick A. Hollander    ghollander@winthropcouchot.com,
  pj@winthropcouchot.com;sconnor@winthropcouchot.com

5
- Abigail Obrient    aobrient@mintz.com, dsjohnson@mintz.com – **Counsel for New Flyer**

6
- Lisa Torres    lisa.torres@fennelllaw.com,

7
  luralene.schultz@fennelllaw.com;tracy.schimelfenig@fennelllaw.com;william.fennell@fe
  nnelllaw.com;stefanie.becerra@fennelllaw.com

8
- Victor A. Vilaplana    vavilaplana@foley.com

9
- Marc J. Winthrop    pj@winthropcouchot.com

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28