Jeffry A. Davis (SBN 103299)
Joseph R. Dunn (SBN 238069)
Abigail V. O'Brient (SBN 265704)
**MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO, P.C.**
3580 Carmel Mountain Road, Suite 300
San Diego, CA 92130
Tel:    858-314-1500
Fax:   858-314-1501

William F. Gray, Jr. (*Pro Hac Vice*)
Alison D. Bauer (*Pro Hac Vice*)
**TORYS LLP**
237 Park Avenue
New York, NY 10017-3142
Tel:    212-880-6000
Fax:   212-682-0200

Attorneys for New Flyer Industries Canada ULC and
New Flyer of America Inc.

UNITED STATES BANKRUPTCY COURT

Southern District of California

| | |
|---|---|
| In re<br><br>ISE Corporation,<br><br>Debtor. | Case No. 10-14198-MM11<br><br>Chapter 11<br><br>**REPLY TO OPPOSITION TO MOTION OF NEW FLYER FOR AN ORDER COMPELLING COMPLIANCE WITH § 365(n)(4)**<br><br>Date:   September 23, 2010<br>Time:  10:00 a.m.<br>Dept:   1<br>Judge: Margaret M. Mann |

New Flyer Industries Canada ULC and New Flyer of America Inc. (together, "New Flyer"), by and through their undersigned counsel, respectfully submit this reply (the "Reply") to the Opposition (the "Opposition") filed by ISE Corporation ("ISE" or the "Debtor") to the motion of New Flyer (the "Motion") for entry of an order compelling ISE to comply with the provisions of section 365(n)(4) of title 11 of the United States Code (the "Bankruptcy Code").

///

///

1

5021153v.3

# I.

# PRELIMINARY STATEMENT

There is no dispute that the Bankruptcy Code provides a licensee with continuing rights to intellectual property provided for under an executory contract, including the delivery or turnover of existing items specified by the contract, and prohibits the debtor-licensor from interfering with the licensee's contractual rights to use the intellectual property. ISE has failed to deliver the source code into escrow as required by the Agreement, or deliver the source code directly to New Flyer. Contrary to ISE's assertions, New Flyer is not in breach of the Agreement.[1] The Agreement is an executory contract which has not been rejected by the Debtor. Therefore, the source code and other Deposit Materials should be delivered to New Flyer in accordance with section 365(n)(4) of the Bankruptcy Code.

# II.

## NEW FLYER HAS FULLY PERFORMED ITS OBLIGATIONS UNDER THE AGREEMENT AND THUS ISE IS BOUND TO PROVIDE THE DEPOSIT MATERIALS

**A.    New Flyer's Payments under the Agreement are Contingent on BC Transit's Payments to New Flyer.**

In the Opposition, ISE asserts, in part, that New Flyer is itself in breach of the Agreement, and therefore ISE is excused from fulfilling its obligations under the Agreement. Specifically, ISE alleges that New Flyer has failed to pay a total of US$3,939,721 that is purportedly due to ISE under the terms of the Agreement. (Opp. at p. 4.) The allegations in the Opposition and accompanying Declaration of David L. Morash ("Morash Declaration") regarding amounts owed by New Flyer to ISE are without merit. New Flyer does not currently owe any amounts to ISE. New Flyer's obligations to make the refuted payments to ISE are contractually conditioned upon receipt of corresponding payments by New Flyer from BC Transit. The Agreement is a "flow through" arrangement. ISE is only entitled to payment if and after New Flyer has been paid by BC Transit. ISE has incorrectly alleged that New Flyer is in breach by not paying ISE.

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion or the Agreement as applicable.

2

5021153v.3

Bottom line: ISE has not been paid because of problems arising from its component parts and because it has failed to turn over the source code. If the Deposit Materials, including the source code, were turned over to New Flyer as required in the Agreement, the problems in the Buses could be addressed by New Flyer, which would result in payment by BC Transit to New Flyer and New Flyer's flow-through of funds to ISE, subject to the terms of the Agreement.

Specifically, pursuant to Section 4.3 of the Agreement (as amended by the First Amending Agreement), New Flyer's obligations to make Contract Milestone payments to ISE as set forth in Schedule "E" (Parts 1 & 2) are subject at all times to receipt of corresponding Contract Milestone payments from BC Transit. (Peper Decl. in Support of Mot. at Exh. A.) Similarly, Section 4.2 of the Agreement (as amended by the First Amending Agreement) sets forth the manner of payment and notes that New Flyer is required to make payment after receipt of the corresponding payment from BC Transit. (Peper Decl. in Support of Mot. at Exh. A.) Thus, no amounts are due and owing to ISE.

**B.    New Flyer is not in Breach Because Certain Hold Backs are Contemplated by the Agreement.**

    1.    **BC Transit Withheld US$1,064,000 due to Fuel Range Problems.**

ISE falsely asserts that "US$1,064,000 in cash is currently due to ISE under the terms of the New Flyer Agreement. New Flyer is withholding these funds without ISE's consent." (Opp. at p. 4.) Rather, BC Transit informed ISE, New Flyer and Ballard Power Systems that amounts would be withheld by BC Transit until certain fuel economy problems with the Buses are fixed.[2] (Declaration of Glenn Asham, hereinafter referred to as the "Asham Declaration" at ¶ 8.) As these amounts have not been paid by BC Transit, no such amounts are in the possession of New Flyer, or due and owing to ISE.

---

2 –

**REDACTED**

5021153v.3

1    BC Transit is withholding payment because the Buses that have been delivered to BC Transit
2    are not able to meet BC Transit's fuel range requirements. This is a significant problem because
3    refueling these Buses in the middle of lengthy transit routes is often logistically impossible.

4    ISE incorrectly asserts that the removal of two of the eight hydrogen tanks contemplated by
5    ISE's original design at the request of New Flyer is the reason for the failure of the Buses to meet
6    BC Transit's fuel range requirements. (Opp. at p. 5.) As set forth in the Declaration of Hans Peper
7    (the "Peper Declaration"),

**REDACTED**

2.    **New Flyer Has Never Refused to Place Warranty Holdback Amounts into Escrow.**

New Flyer is entitled to holdback payments due to ISE under various Warranty Holdback provisions in the Agreement. (Peper Decl. in Support of Mot. at Exh. A, §§ 4.4-4.5). Although ISE has not previously requested that the parties execute an escrow agreement or inquired as to the Warranty Holdback, New Flyer is prepared to place the required funds into the warranty escrow upon execution of an escrow agreement agreed to by the parties.

Section 4.4 of the Agreement (as amended by the Second Amending Agreement) provides in part that New Flyer is entitled to hold back from the Contract Milestone payment set forth in Schedule "E" (Part 3) certain amounts defined as the ISE Warranty Holdback. (Peper Decl. in Support of Mot. at Exh. A.) ISE agreed that payments made to it by New Flyer under subsection 4.7 of the Agreement would be net the ISE Warranty Holdback. The ISE Warranty Holdback was to be placed into escrow with an escrow agent agreeable to New Flyer and ISE pursuant to an agreement in substantially the form attached as Schedule "N" to the Agreement, within 180 days of the execution of the Agreement.

Similarly, Section 4.5 of the Agreement (as amended by the Second Amending Agreement) stipulates in part that the "Ballard Warranty Holdbacks shall be paid into escrow with the escrow

4

5021153v.3

agent (to be mutually agreed upon by Ballard, the Contractor and New Flyer) pursuant to an agreement (the "Ballard-ISE-NF Escrow Agreement") in substantially the form attached hereto as Schedule N." (Peper Decl. in Support of Mot. at Exh. A.)

No escrow agent was agreed upon by ISE and New Flyer with respect to the ISE Warranty Holdback or among Ballard, ISE, and New Flyer with respect to the Ballard Holdback, and no escrow agreement was signed by the parties. That is the sole reason that New Flyer has not placed any funds into escrow. New Flyer has always had cash available to fund any of Ballard's warranty obligations in the event that Ballard did not fulfill its obligations, which to date has never happened. (Asham Decl. at ¶ 13.)

Moreover, pursuant to Article 12 of the Agreement, ISE provided limited warranties and extended warranties wherein ISE was responsible for all repairs covered by such warranties. (Peper Decl. in Support of Mot. at Exh. A.) Since the Petition Date, and prior to any order approving the assumption or rejection of the Agreement, ISE has refused to perform under its warranty obligations and service the Buses, unless New Flyer pays additional funds for time and materials. (Asham Decl. at ¶ 15.) Accordingly, New Flyer is entitled to offset and recoup certain amounts from the ISE Warranty Holdback.

3.  **ISE Admits that it Has Not Earned US$1.2 million due to the Performance of the Buses.**

ISE asserts that New Flyer has failed to pay ISE certain amounts that are required to be paid when "Milestone 4" of the Agreement is met. As set out in Schedule "E" of the Second Amending Agreement, "Milestone 4" is met when each of the Buses is able to operate for 15 days without interruption by a service problem. (Peper Decl. in Support of Mot. at Exh. A.) To date, no more than two of the Buses delivered to BC Transit have been able to meet this requirement. As a result, BC Transit has not paid New Flyer any of the funds that it is required to pay after "Milestone 4" is met. ISE was made aware by BC Transit of the reason why ISE has not been paid any "Milestone 4" funds. (Asham Decl. at ¶ 21.) Because New Flyer has not received any of these funds from BC Transit, New Flyer has not flowed through any of these funds to ISE.

5

## III.

### ISE HAS NOT MADE A MOTION TO REJECT THE AGREEMENT

The Debtor argues in the Opposition that it will seek rejection of the Agreement and that New Flyer must make royalty payments before the Debtor's performance is compelled. (Opp. at pp. 6-7.) The terms of Section 365(n)(1)(B) and (2) are inapplicable until such time as the Agreement is rejected. The Debtors incorrectly convolute the statutory subsections of section 365(n) of the Bankruptcy Code. First, the Debtors have not filed a motion to reject the Agreement and therefore no rejection order has been ordered by the Court. So the Debtor's arguments are not ripe. Until the Debtor rejects the contract, subsection 365(n)(4) is the proper protection for the licensee and the Debtor is required to perform the contract.

Second, aside from the fact that New Flyer has not breached the Agreement, there is no requirement under section 365(n)(4) that no breach has occurred for performance under section 365(n)(4). All that is required is that there is an executory contract and that the licensee makes a written request for the intellectual property. As set forth in the Motion and Memorandum of Points and Authorities in Support of the Motion, those provisions have been met.

Third, in any event, there are no "royalty payments" as referenced in section 365(n)(2) owing under the Agreement. The payments are for completion of the Work and not for royalties.

## IV.

### NEW FLYER IS PREPARED TO ABIDE BY THE AGREEMENT'S RESTRICTIONS ON THE USE OF THE SOURCE CODE

As stated in the Motion, Section 34 of the Agreement provides that New Flyer will use the Deposit Materials and will have a nonexclusive, nonsublicenseable right and license to use ISE's Intellectual Property applicable to the Work. (Mot. at p. 6.) New Flyer is not seeking any greater rights than what is set forth in the Agreement and will abide by the confidentiality and license requirements therein.

5021153v.3

## V.

## NEW FLYER IS ENTITLED TO THE CURRENT VERSION OF THE SOURCE CODE

New Flyer is entitled as a matter of equity to the current version of the source code. If New Flyer does not have access to the Deposit Materials, New Flyer will not be able to complete the Buses to the standard required by BC Transit. A failure to provide BC Transit with Buses operating at the standard required by BC Transit would cause a breach of New Flyer's contractual obligations with BC Transit. As well, if any new and unforeseen failures arise within the existing system it would be extremely difficult for New Flyer to diagnose and resolve without the Deposit Materials. That failure would also be a breach of New Flyer's obligations to BC Transit. The Debtor's continued denial of access to the Deposit Materials, including the source code, impedes the ability of the Debtor, New Flyer and Ballard to be paid.

New Flyer relies on its long-standing reputation in the industry to gain new clients and new business from existing clients. Any damage to New Flyer's reputation for quality, innovation and reliability would be extremely damaging to New Flyer's future business prospects. (Peper Decl. at ¶ 9.) The breaches described above would cause severe and irrevocable damage to New Flyer's reputation for providing quality products and aftermarket support, in addition to the financial penalties that would arise. Intangible injuries, such as damage to business goodwill and ongoing business development efforts, are not easily remedied by money damages and therefore support specific performance. *Rent-a-Center, Inc. v. Canyon Television and Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991) (granting preliminary injunction where injury to advertising efforts and goodwill of a business constituted irreparable harm).

Granting the requested relief will protect New Flyer from the irreparable harm that will occur if ISE continues in its refusal to deliver the Deposit Materials. On balance, ISE has no identifiable risk of harm or prejudice. The source code may be readily copied and delivered and the sublicense to New Flyer under the Agreement is non-exclusive and non-transferable. Thus no harm will come to ISE from providing the Deposit Materials.

Public policy is also in favor of granting relief in favor of New Flyer. New Flyer is the market share leader in its sector in the United States and Canada and sells Buses to nineteen of the

5021153v.3

top twenty-five transit agencies in the United States and Canada. (Peper Dec. at ¶ 8.) It is in the public interest for this Court to enable New Flyer to provide adequate service and support to its customer BC Transit for the good of the citizen end users that utilize the Buses for transportation.

In addition, if the relief is not granted and New Flyer is not able to adequately support the zero emission technology provided in concert with ISE, New Flyer's ability to promote zero emission technologies in the future will be diminished. Given New Flyer's market position and influential relationship with transit agencies, public policy weighs in favor of granting the injunctive relief and encouraging environmentally conscious and innovative fuel systems. *See Union Oil Co. of California v. Greka Energy Corp.*, 165 Cal. App. 4th 129, 134 (Cal. Ct. App. 2008) (California courts will use equitable decrees to protect the environment).

The Court should compel delivery of the Deposit Materials and production of the current version of the source code because the balancing of the equities and public policy clearly tip in favor of the issuance of the requested relief.

## VI.

## CONCLUSION

Based on the foregoing the Debtor is required to comply with section 365(n)(4) and perform the Agreement, but has failed to do so following the written request of New Flyer. Therefore, New Flyer is entitled to an order of the Court compelling the Debtor to comply with section 365(n)(4) and directing the Debtor to deliver the Deposit Materials to New Flyer immediately.

Dated: September 14, 2010

/s/ Abigail V. O'Brient
Jeffry A. Davis
Joseph R. Dunn
Abigail V. O'Brient
**MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.**

and

William F. Gray, Jr.
Alison D. Bauer
**TORYS LLP**
237 Park Avenue
New York, New York 10017

Attorneys for New Flyer Industries Canada ULC and New Flyer of America Inc.

5021153v.3

## PROOF OF SERVICE

I am employed in the County of San Diego, State of California, over the age of eighteen years, and not a party to the within action. My business address is 3580 Carmel Mountain Road, Suite 300, San Diego, California 92130. On September 14, 2010, I served the within document:

**REPLY TO OPPOSITION TO MOTION OF NEW FLYER FOR AN ORDER COMPELLING COMPLIANCE WITH § 365(N)(4)**

- **X**   **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**: Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On September 14, 2010, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email addressed indicated below:

- **X**   **FIRST-CLASS MAIL:** By placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at San Diego, California, addressed as set forth below.

SEE ATTACHED SERVICE LIST

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 14, 2010, at San Diego, California.

                                          */s/ Abigail V. O'Brient*
                                          Abigail V. O'Brient

5021153v.3

*In re ISE Corporation*, Case No. 10-14198

**NEF & EMAIL**
<u>Attorneys for Debtor</u>
Marc J. Winthrop, Esq.
Winthrop Couchot
660 Newport Center Drive, 4th Floor
Newport Beach, CA 92660
pj@winthropcouchot.com

**NEF**
<u>Attorneys for OCC</u>
Jeffrey N. Pomerantz, Esq.
Shirley S. Cho, Esq.
Pachulski Stang Ziehl &Jones LLP
10100 Santa Monica Blvd., 11th Floor
Los Angeles, CA 90067-4100
jpomerantz@pszjlaw.com
scho@pszjlaw.com

**U.S. MAIL**
<u>U.S. Trustee</u>
Office of the U.S. Trustee
402 W. Broadway, Suite 600
San Diego, CA 92101
ustp.region15@usdoj.gov

## **SPECIAL NOTICE**

**U.S. MAIL**
<u>Iron Mountain Information Management, Inc.</u>
c/o Frank F. McGinn, Esq.
Bartlett Hackett Feinberg P.C.
155 Federal Street, 9th Floor
Boston, MA 02110
ffm@bostonbusinesslaw.com

**U.S. MAIL**
<u>NGP Energy Technology Partners, L.P.</u>
William R. Baldiga, Esq.
Brown Rudnick LLP
One Financial Center
Boston, MA 02111
wbaldiga@brownrudnick.com

**U.S. MAIL**
<u>Suntron Corporation</u>
c/o Paul R. Glassman
Greenberg Traurig, LLP
2450 Colorado Avenue, Suite 400E
Santa Monica, CA 90404
glassmanp@gtlaw.com

5021153v.3

| | |
|---|---|
| 1 | **NEF** |
| | El Dorado National-California |
| 2 | Michael D. Breslauer, Esq. |
| 3 | Yosina M. Lissebeck, Esq. |
| | Solomon Ward Seidenwurm & Smith |
| 4 | 401 B Street, Suite 1200 |
| | San Diego, CA 92101 |
| 5 | mbreslauer@swsslaw.com |
| | ylissebeck@swsslaw.com |
| 6 | **NEF** |
| 7 | K&L Gates LLP |
| | Sue J. Hodges, Esq. |
| 8 | 3580 Carmel Mountain Road, Suite 200 |
| | San Diego, CA 92130 |
| 9 | sue.hodges@klgates.com |
| 10 | **NEF** |
| | Pomerado Leasing No. 1 LP |
| 11 | Lisa Torres, Esq. |
| | Tracy L. Schimelfenig, Esq. |
| 12 | Law Office of William P. Fennell, APLC |
| | 1111 Sixth Avenue, Suite 404 |
| 13 | San Diego, CA 92101 |
| | lisa.torres@fennelllaw.com |
| 14 | **NEF** |
| 15 | Victor A. Vilaplana |
| | Foley & Lardner LLP |
| 16 | 402 West Broadway, Suite 2100 |
| | San Diego, CA 92101 |
| 17 | vavilaplana@foley.com. |

11

5021153v.3