Jeffrey N. Pomerantz (CA Bar No. 143717)
Ellen M. Bender (CA Bar No. 116987)
Shirley S. Cho (CA Bar No. 192616)
PACHULSKI STANG ZIEHL & JONES LLP
150 California Street, 15th Floor
San Francisco, California  94111-4500
Telephone: 415/263-7000
Facsimile:  415/263-7010
Email:  jpomerantz@pszjlaw.com
          ebender@pszjlaw.com
          scho@pszjlaw.com

[Proposed] Counsel for the Official Committee of
Unsecured Creditors

# UNITED STATES BANKRUPTCY COURT
## Southern District of California

| | |
|---|---|
| In re:<br><br>ISE CORPORATION,<br><br>              Debtor | Case No.: 10-14198 MM<br><br>Chapter 11<br><br>**EX PARTE APPLICATION FOR ORDER SHORTENING TIME FOR HEARING ON MOTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR AUTHORITY TO PURSUE LITIGATION REGARDING UPSTREAMED PAYMENT BY DEBTOR TO PARENT ON BEHALF OF DEBTOR**<br><br>[DECLARATION OF SHIRLEY S. CHO AND EXHIBITS FILED CONCURRENTLY HEREWITH]<br><br>[No Hearing Required] |

      The Official Committee of Unsecured Creditors (the "Committee") of ISE Corporation, the above-referenced debtor and debtor in possession (the "Debtor") hereby applies (the "Application") for entry of an order shortening the time for hearing on (and objections to) its *Motion of Official Committee of Unsecured Creditors for Authority to Pursue Litigation Regarding Upstreamed Payment by Debtor to Parent on Behalf of Debtor* (the "Motion") [Docket No. 97].

      Hearing this Motion on shortened time is critical because: (1) the Debtor desperately needs

42802-002\DOCS_LA:225354.2

1

the cash which the proposed Action[1] seeks to recover; (2) unless the Committee is given immediate standing to prosecution the Action and seek provisional relief to prevent dissipation of the cash by the Debtor's parent, the money may be spent before any hearing can be had or the parent may itself file for bankruptcy; (3) the Debtor has irrefutable claims for recovery of the cash transfers, totaling $600,000.00 (the "Upstreamed Transfers"), which were improperly and illegally made by the Debtor to its parent on the petition date; (4) this Court and creditors of this estate cannot evaluate any DIP financing request by the Debtor unless the Upstreamed Transfers are returned to the estate; (5) the Debtor, which is 100% owned, operated, and controlled by its parent, with identical Boards of Directors, has a clear conflict of interest in pursuing the Action; and (6) unless the Committee is immediately authorized to pursue the Action and seek a Temporary Restraining Order prohibiting the parent's actions in this regard, any effective relief may be lost.

The Committee therefore seeks to have its Motion heard as soon as possible, but no later than **October 4, 2010 at 11:00 a.m.**; with the Debtor's Opposition, if any, to be submitted by such date and time deemed appropriate by the Court.

The Committee has made several efforts to resolve this matter without seeking the intervention of the Court, but as of the time this Application is filed, such efforts have been unsuccessful. Despite what counsel for the Debtor argued at the Chapter 11 Status Conference before this Court on September 22, 2010, the Debtor/parent has never agreed to transfer the $600,000 to an attorney trust fund account. At most, the Debtor/parent has stated it may be willing to do so, but that it needed approval from its board and that the money could still be spent upon notice to the Committee. *See* Ex. D to Cho Decl.

Accordingly, the Committee has requested that the Debtor stipulate to its standing to pursue the Action, and further stipulate in writing that the parent would transfer the money to a client trust account and not to dispose of the money pending Court order. However the Debtor has delayed and stalled in responding to such requests citing a need of its parent, ISE Ltd., to hold its board meeting, thereby necessitating this Application. The Debtor first promised to respond by Wednesday, September 22, 2010 to the Committee's requests. Now, the Debtor states that it cannot respond until

---

[1] Terms not defined herein have the meaning ascribed to them in the Motion.

next Tuesday, September 29, 2010 after its *parent* holds a board meeting.

Responding to whether the Committee can have standing or not to pursue the Debtor's causes of action is not an issue for the parent board to decide and thus, the delay on that issue is wholly unwarranted and irresponsible by the Debtor, which owes a fiduciary duty to general unsecured creditors of the Debtor's estate as opposed to its parent. As of this date, despite the Committee's demand that is now 10 days old, the Committee still has no assurances in writing from the Debtor or the parent that the funds will not be spent or ever returned to this estate or that the Debtor will consent to standing.[2]

This Application is made pursuant to Local Bankruptcy Rule 9013-6(a)(1)(F) and Fed. R. Bankr. P. 9006, and is based upon the facts and argument set forth herein, the Declaration of Shirley S. Cho ("Cho Decl.") and exhibits filed concurrently herewith, as well as the Committee's Motion and evidence set forth therein. The Committee submits that this Application and the Motion are in the best interests of the estate and should be granted by the Court.

Copies of this Application and accompanying documents will be served contemporaneously, via facsimile, email, or overnight/Express Mail delivery, on (1) the Office of the United States Trustee; (2) counsel to the Debtor, (3) ISE Ltd.; and (4) all parties who have requested special notice in this case.

## **ARGUMENT**

This is a case where the Debtor is completely dominated and controlled by a shell parent corporation that stripped the Debtor of its cash assets immediately prior to the Debtor's bankruptcy filing and left the Debtor with insufficient resources to pay its creditors or effectuate a reorganization. The actions of the Debtor are driven by its parent, ISE Ltd, against whom the Committee seeks to institute legal proceedings to recover improper fraudulent transfers, preferences, and/or shareholder distributions. For the reasons set forth herein, and in the Motion, if the Court does not grant this ex parte relief to permit the Committee to immediately prosecute the Action

---

[2] Attached as Exhibit F to the Cho Declaration is email correspondence between counsel evidencing the Debtor's refusal to respond to the two questions of whether the Debtor will grant standing or whether the parent will agree to escrow the $600,000.

against ISE Ltd and seek appropriate provisional relief, the Debtor will run out of money before any relief can be obtained, or the parent may spend the $600,000 or file for bankruptcy itself.

The Debtor is 100% owned, operated, and controlled by ISE Ltd, the proposed defendant in the Action, which conducts virtually all of its business through the Debtor as its operating subsidiary. The Debtor's Board of Directors is identical to ISE Ltd's Board of Directors. ISE Ltd is or was a publicly traded corporation listed on the Toronto Stock Exchange ("TSX"), but recently announced via a press release that it has insufficient liquidity to comply with the necessary audits and reporting requirements to maintain its stock listing on the TSX . (Cho Decl., Ex. D).

At the recently convened 341(a) hearing conducted on September 14, 2010, the Debtor revealed that its cash circumstances are dire. The Debtor's principals testified that, at most, the Debtor has only *three weeks of cash* left to operate its business. The Debtor also confirmed immediately preceding the Petition Date, the Debtor channeled a substantial amount of its cash on hand to its parent, ISE Ltd, in the form of direct cash transfers made on the Petition Date, or to its principal insiders, in the forms of pay increases, wage advances, discretionary bonuses, and benefit enhancements. The result is that the Debtor has been left with insufficient capital to run its business absent a capital investment or financing that has yet to materialize.

The proposed Action for which the Committee requests standing to prosecute against the Debtor's Parent, ISE Ltd, seeks recovery of $600,000.00 in cash payments made to ISE Ltd on the Petition Date. The Upstreamed Transfers were first disclosed in the Debtor's Statement of Financial Affairs ("SOFA") filed on or about September 8, 2010 in the Bankruptcy Case. *See* SOFA, at p. 14 [Docket No. 56-2]. According to the Debtor's SOFA, two of the Upstreamed Transfers were made by wire transfer on the Petition Date, and one (in the amount of $100,000.00) was made by check dated as of the Petition Date. *Id.*

Although the Debtor contends that the Upstreamed Transfers were made on account of a loan owed to the Parent by the Debtor, it has failed to substantiate any such loan or otherwise account for the Upstreamed Transfers, despite demand by the Committee. The Upstreamed Transfers were also purportedly made to satisfy the parent board's fiduciary obligations to the parent, despite the fact

that the Debtor was clearly insolvent.[3] Regardless, as set forth in the Motion, the Upstreamed Transfers are clearly avoidable as either fraudulent transfers, under both the Bankruptcy Code and the California Uniform Fraudulent Transfer Act, or as preferences and/or unauthorized post-petition transfers under the Bankruptcy Code. Additionally, the Upstreamed Transfers are illegal distributions to ISE Ltd under the California Corporations Code.

ISE Ltd, by and through its principal executives and Board (the same Board that governs the Debtor) has asserted that the Upstreamed Transfers are necessary for ISE Ltd to pay for its reporting obligations required to maintain its stock listing on the TSX. Management's assertions made at the 341(a) hearing that the Upstream Transfers are necessary to maintain ISE Ltd's stock listing directly conflict with admissions in its press release issued on August 13, 2010 that it did not *intend* to comply with these filing requirements due to its liquidity problems. *See* Cho Decl., Ex. D. The statements are also inconsistent with representations made by Debtor's counsel that the bulk of the cash is being used to pay for D & O insurance. Cho Decl. ¶ 13. Either way, it is apparent that the Upstreamed Transfers will not be returned unless ISE Ltd is ordered to do so and before that time happens, the Debtor may run out of cash.

In addition to the Upstreamed Transfers paid to its parent on the Petition Date, the Debtor also advanced wages to its three principal insiders in the form of payout of accrued vacation totaling more than $100,000 for these three persons, although such payments were likely not due and payable and the payments appear to have been clearly aimed at avoiding the statutory cap in the Bankruptcy Code on wage claims that would other apply to such payments.[4] Additionally, in the six months preceding the Petition Date, the Debtor substantially increased the compensation packages of its chief executives notwithstanding that the Debtor was essentially insolvent. These included the payment of discretionary bonuses in March 2010 in excess of $190,000 to three senior executives;

---

[3] The Committee has concerns regarding the approval of the Upstreamed Transfers, the delay in any action to recover the Upstreamed Transfers, and who is purportedly acting on behalf of whom. The Committee reserves all of its rights against individual directors and officers in this regard, although the Motion does not seek to bring any action at this time against directors or officers.

[4] Under California Labor Code § 227.3, accrued but unpaid vacation is not due and payable to the employee until termination of employment, absent some contractual provision requiring the earlier payment of such wages. The payment of this vacation time on the Petition Date, probably to avoid the wage cap imposed by Bankruptcy Code § 507(a)(4), is likely a fraudulent transfer under Bankruptcy Code § 548(a)(1)(b)(ii)(IV), or a preferential transfer.

and salary increases exceeding 20% for those same individuals.[5] The net result of these actions is that the Debtor filed bankruptcy in August 2010 with barely enough to operate for a few weeks' time.

Return of the Upstreamed Payments of $600,000 will result in a significant increase to the amount of the Debtor's cash on hand of less than $900,000 currently. Under these circumstances, unless the Committee is immediately permitted to step in and prosecute this Action, the Debtor will run out of cash before any effective reorganization or liquidation can occur. The Debtor's current management is conflicted from performing its obligations to protect the Debtor's assets for the benefit of all its creditors. The Committee therefore respectfully requests that the Court grant this ex parte relief and allow its Motion to be heard on the earliest date possible.

Dated: September 24, 2010

PACHULSKI STANG ZIEHL & JONES LLP

By  */s/ Shirley S. Cho*
Shirley S. Cho
[Proposed] Counsel for the Official
Committee of Unsecured Creditors

---

[5] The pay increases and other payments to the Debtor's principals are currently the subject of a separately contested motion (*ie,* the Debtor's Motion for Approval of Compensation of Insiders). The Committee reserves the right to separately seek recovery of any and all amounts improperly paid to these insiders prior to the Petition Date.

42802-002\DOCS_LA:225354.2