Jeffry A. Davis (SBN 103299)
Joseph R. Dunn (SBN 238069)
Abigail V. O'Brient (SBN 265704)
**MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.**
3580 Carmel Mountain Road, Suite 300
San Diego, CA 92130
Telephone: (858) 314-1500
Facsimile: (858) 314-1501

William F. Gray, Jr. (*Pro Hac Vice*)
Alison D. Bauer (*Pro Hac Vice*)
**TORYS LLP**
237 Park Avenue
New York, NY 10017-3142
Telephone: (212) 880-6000
Facsimile: (212) 682-0200

Attorneys for New Flyer Industries Canada ULC
and New Flyer of America Inc.

## UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | Case No. 10-14198-MM11 |
| ISE Corporation, | Chapter 11 |
| Debtor. | **NOTICE OF LODGMENT OF ORDER ON MOTION OF NEW FLYER FOR ORDER COMPELLING COMPLIANCE WITH SECTION 365(N)(4)** |
| | Date: September 22, 2010 |
| | Time: 3:00 p.m. |
| | Dept.: 1 |
| | Judge: Hon. Margaret M. Mann |

PLEASE TAKE NOTICE THAT New Flyer Industries Canada ULC and New Flyer of America Inc. (collectively, "New Flyer") have lodged an Order (the "Order") on the Motion of New Flyer for an Order Compelling Compliance with Section 365(n)(4). A true and correct copy of the Order is attached hereto as **Exhibit A.** The Debtor, the Official Committee of Unsecured Creditors and Ballard Power Systems Inc. have approved the Order as to form.

5047262v.1

1     Any objections to the form or content of the Order must be filed with the Clerk of the United

2   States Bankruptcy Court, 325 West F Street, San Diego, California 92101, and served on the

3   undersigned, along with an alternate proposed order, within seven (7) days of the date of service of

4   this Notice of Lodgment.

5

6   Dated: October 14, 2010                    /s/ Abigail V. O'Brient
                                               Jeffry A. Davis
7                                              Joseph R. Dunn
                                               Abigail V. O'Brient
8                                              **MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.**

9                                              and

10                                             William F. Gray, Jr.
                                               Alison D. Bauer
11                                             **TORYS LLP**
                                               237 Park Avenue
12                                             New York, New York 10017

13                                             Attorneys for New Flyer Industries Canada ULC
                                               and New Flyer of America Inc.
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

1

**PROOF OF SERVICE**

2

  I, the undersigned, certify and declare that I am over the age of 18 years, employed in the

3

County of San Diego, State of California, and am not a party to the above-entitled action.

4

  A true and correct copy of the foregoing document(s) will be served or was served in the

5

manner indicated below.  Service information continued on attached page.

6

  **NOTICE OF LODGMENT**

7

  ☒  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING**

8

("**NEF**") – On **October 14, 2010**, pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the document(s) listed above will be served by the court via NEF and hyperlink to the document.  I checked the CM/ECF docket for this

9

bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email

10

address(es) indicated in the attached Service List.

11

  ☒  **U.S. MAIL** – On **October 14, 2010**, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary

12

proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid.  I am readily familiar with the firm's

13

practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on the same day with postage

14

thereon fully prepaid in the ordinary course of business.

15

16

  Executed on October 14, 2010, at San Diego, California.  I declare under penalty of perjury

17

under the laws of the United States of America that the foregoing is true and correct.

18

19

        /s/ Abigail V. O'Brient
        Jeffry A. Davis

20

        Joseph R. Dunn
        Abigail V. O'Brient

21

22

23

24

25

26

27

28

1
PROOF OF SERVICE

## SERVICE LIST

*In re ISE Corporation*
Case No. 10-14198-MM11

**Via NEF**

Michael D. Breslauer on behalf of Creditor EL Dorado National - California
mbreslauer@swsslaw.com, wyones@swsslaw.com

Shirley Cho on behalf of Creditor Committee Official Committee of Unsecured Creditors
scho@pszjlaw.com

Paul R. Glassman on behalf of Creditor Suntron Corporation
glassmanp@gtlaw.com

Sue J. Hodges on behalf of Creditor K&L Gates LLP
sue.hodges@klgates.com

Garrick A. Hollander on behalf of Debtor ISE Corporation
ghollander@winthropcouchot.com, pj@winthropcouchot.com;sconnor@winthropcouchot.com

Karen Morao on behalf of Creditor Ballard Power Systems Inc.
morao.karen@dorsey.com, foohey.pamela@dorsey.com;mikhailevich.jessica@dorsey.com

Jeffrey N. Pomerantz on behalf of Creditor Committee Official Committee of Unsecured Creditors
jpomerantz@pszjlaw.com, scho@pszjlaw.com

Lisa Torres on behalf of Interested Party Palomar Leasing No. 1 LP
lisa.torres@fennelllaw.com, luralene.schultz@fennelllaw.com;
tracy.schimelfenig@fennelllaw.com; william.fennell@fennelllaw.com;
stefanie.becerra@fennelllaw.com

United States Trustee
ustp.region15@usdoj.gov

Victor A. Vilaplana on behalf of Creditor Foley & Lardner LLP
vavilaplana@foley.com

Marc J. Winthrop on behalf of Debtor ISE Corporation
mwinthrop@winthropcouchot.com, pj@winthropcouchot.com

**Via U.S. Mail**

U.S. Trustee
Department of Justice
402 West Broadway
Suite 600
San Diego, CA 92101

Gregg Weisstein
Alexander O. Koles
BDO USA, LLP
3200 Bristol Street
Costa Mesa, CA 92626

5047262v.1

1   William R Baldiga
     Brown Rudnick LLP
2   One Financial Center
     Boston, MA 02111
3

     Iron Mountain Information Management, Inc.
4   c/o Frank F. McGinn, Esq.
     Bartlett Hackett Feinberg P.C.
5   155 Federal Street, 9th Floor
     Boston, MA 02110
6

     Suntron Corporation
7   c/o Paul R. Glassman
     Greenberg Traurig, LLP
8   2450 Colorado Avenue
     Suite 400E
9   Santa Monica, CA 90404

PROOF OF SERVICE

5047262v.1

# EXHIBIT A

**CSD 1001A** [11/15/04]
Name, Address, Telephone No. & I.D. No.

Jeffry A. Davis (SBN 103299)
Abigail V. O'Brient (SBN 265704)
Mintz Levin Cohn Ferris Glovsky and Popeo, P.C.
3580 Carmel Mountain Road, Suite 300
San Diego, CA 92130
Tel: (858) 314-1500
Fax: (858) 314-1501

### UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF CALIFORNIA
325 West "F" Street, San Diego, California 92101-6991

In Re.
ISE CORPORATION,

                                          Debtor.

BANKRUPTCY NO. **10-14198-MM11**

| | |
|---|---|
| Date of Hearing: | September 22, 2010 |
| Time of Hearing: | 3:00 p.m. |
| Name of Judge: | Hon. Margaret M. Mann |

## ORDER ON MOTION OF NEW FLYER FOR AN ORDER COMPELLING COMPLIANCE WITH SECTION 365(N)(4)

**IT IS ORDERED THAT** the relief sought as set forth on the continuation pages attached and numbered two (2)

through <u>three (3)</u> with exhibits, if any, for a total of <u>three (3)</u> pages, is granted. Motion/Application Docket Entry No. <u>11</u>

//

//

//

//

//

//

DATED:

_____
Judge, United States Bankruptcy Court

Signature by the attorney constitutes a certification under
Fed. R. of Bankr. P. 9011 that the relief in the order is the
relief granted by the court.

Submitted by:

Mintz Levin Cohn Ferris Glovsky and Popeo, P.C.
(Firm name)

By: /s/ Abigail O'Brient
    Attorney for ☒ Movant ☐ Respondent
    New Flyer Industries Canada ULC and New Flyer of America Inc.

American LegalNet, Inc.
www.USCourtForms.com

CSD 1001A

CSD 1001A [11/15/04] **(Page 2)**

ORDER ON MOTION OF NEW FLYER FOR AN ORDER COMPELLING COMPLIANCE WITH SECTION 365(N)(4)
DEBTOR:    ISE CORPORATION                                      CASE NO: 10-14198-MM11

---

The Motion of New Flyer Industries Canada ULC and New Flyer of America Inc. (collectively, "New Flyer") for an Order Compelling Compliance with §365(n)(4); Memorandum of Points and Authorities in Support of the Motion; and the Declaration of Hans Peper in support thereof (collectively, the "Motion") came on for hearing on September 22, 2010 at 3:00 p.m. before the Honorable Margaret M. Mann, and thereafter continued to October 4, 2010 and then again to October 6, 2010 for status conferences with respect to the status of the parties' efforts to negotiate and enter into certain escrow agreements based on the Court's ruling on the Motion on September 22, 2010. Jeffry Davis, Esq. of Mintz, Levin, Cohn, Ferris, Glovsky, and Popeo, P.C. and Alison D. Bauer, Esq. of Torys, LLP appeared on behalf of New Flyer; Marc J. Winthrop, Esq. and Garrick A. Hollander, Esq. of Winthrop Couchot Professional Corporation appeared on behalf of ISE Corporation ("ISE" or the "Debtor") at the hearings on the Motion and status conferences, respectively; Eric L. Schnabel, Esq. and Karen A. Morao, Esq. of Dorsey & Whitney, LLP appeared on behalf of Ballard Power Systems Inc ("Ballard"); and Jeff Pomerantz, Esq. and Shirley Cho, Esq. of Pachulski, Stang, Ziehl, & Jones, LLP appeared on behalf of the Official Committee of Creditors Holding Unsecured Claims (the "Committee") (collectively, the "Appearing Parties"). All other appearances were as reflected on the record. The Court having reviewed the Motion, the Debtor's Opposition to Motion of New Flyer for an Order Compelling Compliance with §365(n)(4), the Declaration of David L. Morash, New Flyer's Reply to the Debtor's Opposition and the Declarations of Hans Peper and Glenn Asham in support thereof, Ballard Power Systems Inc.'s Response to the Motion, and the Comments to the Motion filed by the Committee, having heard and considered arguments and representations of counsel at the hearing on the Motion and status conferences, and having heard those terms stipulated to by the parties as articulated on the record at the status conference held on October 6, 2010, and for the reasons set forth and findings made in the Court's tentative ruling (see Minute Order at docket no. 106) and articulated on the record and incorporated herein,

IT IS HEREBY ORDERED that:

1.    The Motion is granted, except as modified herein.

2.    The Debtor and New Flyer shall enter into a technology escrow agreement in substantially the form as Exhibit 1 attached hereto and immediately negotiate with Iron Mountain as the escrow agent for its approval of the technology escrow agreement. New Flyer and the Debtor will use best efforts to execute the technology escrow agreement by no later than 5:00 p.m. Eastern time on October 8, 2010. The Debtor shall deposit the Deposit Materials (as defined in the Agreement for the Design, Production and Supply of the Propulsion Equipment for Hybrid Fuel Cell Buses, as amended, between New Flyer and ISE (the "Agreement")) into the technology escrow no later than five (5) business days (business days on which banks are open in San Diego, California) from the date of execution of the technology escrow agreement. Any Deposit Materials that constitute Intellectual Property (as defined in the Agreement) shall be deposited in the form they existed as of the petition date.

3.    No Deposit Materials deposited into the technology escrow shall be released to New Flyer or the Debtor without the agreement of New Flyer and the Debtor, or further order of this Court upon prior notice to the Appearing Parties, including the Committee, the United States Trustee, and any party that has filed a request for special notice. All rights, interests and title asserted by New Flyer or the Debtor to the Deposit Materials are fully preserved.

4.    The Debtor and New Flyer shall establish a warranty escrow for the ISE Warranty Holdback, as defined in section 4.4 of the Agreement, pursuant to the warranty escrow agreement in substantially the form as Exhibit 2 attached hereto, by no later than 5:00 p.m. Eastern time on October 8, 2010. All rights, interests and title asserted by New Flyer and ISE, as debtor and debtor-in-possession, in and to any funds deposited into the ISE Warranty Holdback escrow, and rights of the parties as to whether, when and the extent to which the warranty escrow for the ISE Warranty Holdback should be funded, the amount required to be deposited, if any, and all claims and defenses related to obligations to deposit the ISE Warranty Holdback pursuant to the Agreement are fully preserved and any disputes related thereto may be resolved by this Court.

5.    Pending the resolution of the disputes amongst the parties with respect to rights and obligations of the parties under the Agreement, New Flyer shall deposit with the Clerk of the Bankruptcy Court US $1,557,139.00 (the "Deposit Funds") pursuant to Section 4.5 of the Agreement for the Ballard Warranty Holdback, as defined in section 4.5 of the Agreement. The Deposit Funds shall be paid to the Clerk within five (5) business days (business days on which banks are open in Winnipeg, Canada) from the entry of this Order, for the benefit of New

CSD 1001A

American LegalNet, Inc.
www.USCourtForms.com

CSD 1001A [11/15/04] (Page 3)

Flyer, Ballard, and ISE, as debtor and debtor-in-possession, pending further Bankruptcy Court order regarding disposition of the Deposit Funds. All rights, interests and title asserted by New Flyer, Ballard, and ISE in and to the Deposit Funds, whether the warranty escrow for the Ballard Warranty Holdback should be established, the amount required to be deposited, if any, and all claims and defenses related to obligations to deposit the Ballard Warranty Holdback are fully preserved.

      a.      The clerk is to deposit the Deposit Funds in an automatically renewable interest-bearing account in the name of the Clerk, United States Bankruptcy Court at Bank of America, said funds to remain invested pending further order of the Court.

      b.      The clerk is directed to deduct from the income earned on the investment a fee, not exceeding that authorized by the Judicial Conference of the United States and set by the Director of the Administrative Office, whenever such income becomes available for deduction in the investment so held and without further order of the Court.

      c.      Counsel for New Flyer shall personally serve a copy of this Order on the clerk or the chief deputy clerk prior to making the deposit. Absent the aforesaid personal service, the clerk is hereby relieved of any personal liability relative to compliance with this Order.

6.      No amounts deposited pursuant to paragraph 4 herein shall be released to New Flyer, the Debtor or any other person without the agreement of New Flyer and ISE or further order of this Court upon prior notice to the Appearing Parties, the United States Trustee, and any party that has filed a request for special notice. Prior to the Debtor agreeing to release any amounts deposited pursuant to paragraph 4, however, the Debtor shall notify the Committee and obtain the Committee's consent.

7.      With regards to any amounts purportedly due and owing by New Flyer under sections 4.4 or 4.5 of the Agreement or any other provisions of the Agreement, whether due or paid, all rights, interests, title and claims of New Flyer, Ballard, and ISE as to the nature of those funds and whether they are due and payable by New Flyer are fully preserved.

APPROVED AS TO FORM:


_____
Gary K. Hollander
Proposed Attorney for ISE Corporation



_____
Eric L. Schnabel
Attorney for Ballard Power Systems Inc.



_____
Shirley Cho
Attorney for Official Committee of Unsecured Creditors

American LegalNet, Inc.
www.USCourtForms.com

CSD 1001A

CSD 1001A [11/15/04] (Page 3)

Flyer, Ballard, and ISE, as debtor and debtor-in-possession, pending further Bankruptcy Court order regarding disposition of the Deposit Funds. All rights, interests and title asserted by New Flyer, Ballard, and ISE in and to the Deposit Funds, whether the warranty escrow for the Ballard Warranty Holdback should be established, the amount required to be deposited, if any, and all claims and defenses related to obligations to deposit the Ballard Warranty Holdback are fully preserved.

     a.     The clerk is to deposit the Deposit Funds in an automatically renewable interest-bearing account in the name of the Clerk, United States Bankruptcy Court at Bank of America, said funds to remain invested pending further order of the Court.

     b.     The clerk is directed to deduct from the income earned on the investment a fee, not exceeding that authorized by the Judicial Conference of the United States and set by the Director of the Administrative Office, whenever such income becomes available for deduction in the investment so held and without further order of the Court.

     c.     Counsel for New Flyer shall personally serve a copy of this Order on the clerk or the chief deputy clerk prior to making the deposit. Absent the aforesaid personal service, the clerk is hereby relieved of any personal liability relative to compliance with this Order.

6.     No amounts deposited pursuant to paragraph 4 herein shall be released to New Flyer, the Debtor or any other person without the agreement of New Flyer and ISE or further order of this Court upon prior notice to the Appearing Parties, the United States Trustee, and any party that has filed a request for special notice. Prior to the Debtor agreeing to release any amounts deposited pursuant to paragraph 4, however, the Debtor shall notify the Committee and obtain the Committee's consent.

7.     With regards to any amounts purportedly due and owing by New Flyer under sections 4.4 or 4.5 of the Agreement or any other provisions of the Agreement, whether due or paid, all rights, interests, title and claims of New Flyer, Ballard, and ISE as to the nature of those funds and whether they are due and payable by New Flyer are fully preserved.

APPROVED AS TO FORM:


_____
Garrick Hollander
Proposed Attorney for ISE Corporation


*Eric L. Schnabel* /by PF
_____
Eric L. Schnabel
Attorney for Ballard Power Systems Inc.



_____
Shirley Cho
Attorney for Official Committee of Unsecured Creditors

American LegalNet, Inc.
www.USCourtForms.com

Flyer, Ballard, and ISE, as debtor and debtor-in-possession, pending further Bankruptcy Court order regarding disposition of the Deposit Funds. All rights, interests and title asserted by New Flyer, Ballard, and ISE in and to the Deposit Funds, whether the warranty escrow for the Ballard Warranty Holdback should be established, the amount required to be deposited, if any, and all claims and defenses related to obligations to deposit the Ballard Warranty Holdback are fully preserved.

     a.     The clerk is to deposit the Deposit Funds in an automatically renewable interest-bearing account in the name of the Clerk, United States Bankruptcy Court at Bank of America, said funds to remain invested pending further order of the Court.

     b.     The clerk is directed to deduct from the income earned on the investment a fee, not exceeding that authorized by the Judicial Conference of the United States and set by the Director of the Administrative Office, whenever such income becomes available for deduction in the investment so held and without further order of the Court.

     c.     Counsel for New Flyer shall personally serve a copy of this Order on the clerk or the chief deputy clerk prior to making the deposit. Absent the aforesaid personal service, the clerk is hereby relieved of any personal liability relative to compliance with this Order.

6.     No amounts deposited pursuant to paragraph 4 herein shall be released to New Flyer, the Debtor or any other person without the agreement of New Flyer and ISE or further order of this Court upon prior notice to the Appearing Parties, the United States Trustee, and any party that has filed a request for special notice. Prior to the Debtor agreeing to release any amounts deposited pursuant to paragraph 4, however, the Debtor shall notify the Committee and obtain the Committee's consent.

7.     With regards to any amounts purportedly due and owing by New Flyer under sections 4.4 or 4.5 of the Agreement or any other provisions of the Agreement, whether due or paid, all rights, interests, title and claims of New Flyer, Ballard, and ISE as to the nature of those funds and whether they are due and payable by New Flyer are fully preserved.

APPROVED AS TO FORM:


_____
Garrick Hollander
Proposed Attorney for ISE Corporation


_____
Eric L. Schnabel
Attorney for Ballard Power Systems Inc.


_____
Shirley Cho
Attorney for Official Committee of Unsecured Creditors

American LegalNet, Inc.
www.USCourtForms.com

# EXHIBIT 1

## THREE-PARTY ESCROW SERVICE AGREEMENT

### Deposit Account Number: _____

1. **Introduction.**

   This Three Party Escrow Service Agreement (the "Agreement") is entered into by and between ISE Corporation (the "Depositor"), and by New Flyer Industries Canada ULC (the "Beneficiary"), and by Iron Mountain Intellectual Property Management, Inc. ("Iron Mountain") on this ___ day of October, _____ (the "Effective Date"). Depositor, Beneficiary, and Iron Mountain may be referred to individually as a "Party" or collectively as the "Parties" throughout this Agreement.

   The use of the term "Services" in this Agreement shall refer to Iron Mountain Services that facilitate the creation, management, and enforcement of software and/or other technology escrow accounts as described in Exhibit A attached hereto. A Party shall request Services under this Agreement (i) by submitting a work request associated for certain Iron Mountain Escrow Services via the online portal maintained at the Website located at www.ironmountainconnect.com or any other Websites or Web pages owned or controlled by Iron Mountain that are linked to that Website (collectively the "Iron Mountain Website"), or (ii) by submitting a written work request attached hereto as Exhibit A (each, individually, a "Work Request"). The Parties desire this Agreement to be supplementary to that certain Agreement for the Design, Production and Supply of the Propulsion Equipment for Hybrid Fuel Cell Buses, dated August 2, 2007, as amended (the "Purchase Agreement") and pursuant to Title 11 of the United States Code, Section 365(n).

2. **Depositor Responsibilities.**

   (a) Depositor shall provide all information designated as required to fulfill a Work Request ("Required Information") and may also provide other information ("Optional Information") at their discretion to assist Iron Mountain in the fulfillment of requested Services.

   (b) Depositor must authorize and designate one or more persons whose action(s) will legally bind the Depositor ("Authorized Person(s)" who shall be identified in the Authorized Person(s)/Notices Table of this Agreement) and who may manage the Iron Mountain escrow account through the Iron Mountain Website or via written Work Request. Authorized Person(s) will maintain the accuracy of their name and contact information provided to Iron Mountain during the Term of this Agreement (the "Depositor Information").

   (c) Depositor shall make an initial deposit that is complete and functional of all proprietary technology and other materials covered under this Agreement ("Deposit Material") to Iron Mountain within the earlier of the time set for the deposit of Deposit Materials pursuant to a court order or thirty (30) days of the Effective Date. Depositor may also update Deposit Material from time to time during the Term of this Agreement provided a minimum of one (1) complete and functional copy of Deposit Material is deposited with Iron Mountain at all times. At the time of each deposit or update, Depositor will provide an accurate and complete description of all Deposit Material sent to Iron Mountain via the Iron Mountain Website or using the form attached hereto as Exhibit B.

   (d) Depositor consents to Iron Mountain's performance of any level(s) of verification Services described in Exhibit A attached hereto, consents, upon receipt of notice from Iron Mountain that Beneficiary has submitted a Work Request for verification Services, to promptly completing and returning the Escrow Deposit Questionnaire attached as Exhibit Q to Iron Mountain. In addition, upon receipt of Depositor's prior written consent (such consent not to be unreasonably withheld), Iron Mountain may engage a subcontractor (who shall be bound by the same confidentiality obligations as Iron Mountain and who shall not be a direct competitor to either Depositor or Beneficiary) to provide such verification Services as needed.

   (e) Depositor represents that it lawfully possesses all Deposit Material provided to Iron Mountain under this Agreement free of any liens or encumbrances as of the date of their deposit. Any Deposit Material liens or encumbrances made after their deposit will not prohibit, limit, or alter the rights and obligations of Iron Mountain under this Agreement;

   (f) Depositor represents that all Deposit Material is readable and useable in its then current form; if any portion of such Deposit Material is encrypted the necessary decryption tools and keys to read such material are deposited contemporaneously;

   (g) Depositor represents that all Deposit Material is provided with all rights necessary for Iron Mountain to verify such proprietary technology and materials upon receipt of a Work Request for such Services; and

   (h) Depositor warrants that Iron Mountain's use of the Deposit Material or other materials supplied by Depositor to perform the verification Services described in Exhibit A is lawful and does not violate the rights of any third parties. Depositor agrees to use commercially reasonable efforts to provide Iron Mountain with any necessary use rights or permissions to use materials necessary to perform verification of the Deposit Material. Depositor agrees to reasonably cooperate with Iron Mountain by providing its facilities, computer software systems, and technical personnel for verification Services whenever reasonably necessary.

3. **Beneficiary Responsibilities.**

(a) Beneficiary shall provide all information designated as required to fulfill any Beneficiary Work Request ("Required Information") and may also provide other information ("Optional Information") at their discretion to assist Iron Mountain in the fulfillment of requested Services.

(b) Beneficiary must authorize and designate one or more persons whose action(s) will legally bind the Beneficiary ("Authorized Person(s)" who shall be identified in the Authorized Person(s)/Notices Table of this Agreement) who shall manage the Iron Mountain escrow account through the Iron Mountain Website or via written Work Request. Authorized Person(s) will maintain the accuracy of their name and contact information provided to Iron Mountain during the Term of this Agreement (the "Beneficiary Information").

(c) Beneficiary acknowledges that, as between Iron Mountain and Beneficiary, Iron Mountain's obligation is to maintain the Deposit Material as delivered by the Depositor and that, other than Iron Mountain's inspection of the Deposit Material (as described in Section 4) and the performance of any of the optional verification Services listed in Exhibit A, Iron Mountain has no other obligation regarding the completeness and/or functionality of all Deposit Material. Beneficiary may submit a verification Work Request to Iron Mountain for one or more of the Services defined in Exhibit A attached hereto and further consents to Iron Mountain's use of a subcontractor if needed to provide such Services.

(d) Beneficiary warrants that Iron Mountain's use of any materials supplied by Beneficiary to perform the verification Services described in Exhibit A is lawful and does not violate the rights of any third parties.

## 4. Iron Mountain Responsibilities.

(a) Iron Mountain agrees to use commercially reasonable efforts to provide the Services requested by authorized Depositor and Beneficiary representatives in a Work Request. Iron Mountain may reject a Work Request (in whole or in part) that does not contain all Required Information at any time upon notification to the Party originating the Work Request.

(b) Iron Mountain will conduct a deposit inspection upon receipt of any Deposit Material and associated Exhibit B. If Iron Mountain determines that the Deposit Material does not match the description provided by Depositor represented in Exhibit B attached hereto, Iron Mountain will provide Depositor with notice by electronic mail, telephone, or regular mail of such discrepancies.

(c) Iron Mountain will provide notice by electronic mail, telephone, or regular mail to the Beneficiary of all Deposit Material that is accepted and deposited into the escrow account under this Agreement.

(d) Iron Mountain will work with a Party who submits any verification Work Request for Deposit Material covered under this Agreement to either fulfill any standard verification Services Work Request or develop a custom Statement of Work ("SOW"). Iron Mountain and the requesting Party will mutually agree in writing to a SOW on the following terms and conditions that include but are not limited to: description of Deposit Material to be tested; description of Verification testing; requesting Party responsibilities; Iron Mountain responsibilities; Service Fees; invoice payment instructions; designation of the Paying Party; designation of authorized SOW representatives for both the requesting Party and Iron Mountain with name and contact information; and description of any final deliverables prior to the start of any fulfillment activity. After the start of fulfillment activity, each SOW may only be amended or modified in writing with the mutual agreement of both Parties, in accordance with the change control procedures set forth therein.

(e) Iron Mountain will hold and protect all Deposit Material in physical and/or electronic vaults that are either owned or under the direct control of Iron Mountain.

(f) Upon receipt of written instructions by both Depositor and Beneficiary, Iron Mountain will permit the replacement or removal of previously submitted Deposit Material. The Party making such request shall be responsible for getting the other Party to approve the joint instructions. Any Deposit Material that is removed from the deposit account will be either returned to Depositor or destroyed in accordance with Depositor's written instructions.

(g) Should transport of Deposit Material be necessary in order for Iron Mountain to perform Services requested by Depositor or Beneficiary under this Agreement, Iron Mountain will use a commercially recognized overnight carrier such as Federal Express or United Parcel Service. Iron Mountain will not be responsible for any loss or destruction of, or damage to, such Deposit Material while in the custody of the common carrier.

(h) Iron Mountain will strictly follow the procedures set forth in Exhibit C attached hereto to process any Beneficiary Work Request to release Deposit Material.

## 5. Payment.

The Paying Party shall pay to Iron Mountain all fees as set forth in the Work Request form attached hereto as Exhibit A ("Service Fees"). Except as set forth below, all Service Fees are due to Iron Mountain within thirty (30) calendar days from the date of invoice in U.S. currency and are non-refundable. Iron Mountain may update Service Fees with a ninety (90) calendar day written notice to the Paying Party during the Term of this Agreement. The Paying Party is liable for any taxes related to Services purchased under this Agreement or shall present to Iron Mountain an exemption certificate acceptable to the taxing authorities. Applicable taxes shall be billed as a separate item on the invoice, to the extent possible. Any Service Fees not collected by Iron Mountain when due shall bear interest until paid at a rate of 1.25% per month (15% per annum) or the maximum rate permitted by law, whichever is less. Delinquent accounts may be referred to a collection agency at the sole discretion of Iron Mountain. Notwithstanding, the non-performance of any obligations of Depositor to deliver Deposit Material under the Purchase Agreement or this Agreement, Iron

Mountain is entitled to be paid all Service Fees that accrue during the Term of this Agreement. All Service Fees will not be subject to offset except as specifically provided hereunder.

6. **Term and Termination.**

   (a) The initial "Term" of this Agreement is for a period of one (1) year from the Effective Date and will automatically renew for additional one (1) year Terms and continue in full force and effect until one of the following events occur: (i) Depositor and Beneficiary provide joint written instructions of their intent to cancel this Agreement within sixty (60) days to Iron Mountain; (ii) Beneficiary provides a sixty (60) day written notice regarding cancellation of this Agreement to both Depositor and Iron Mountain; or (iii) Iron Mountain provides a sixty (60) day written notice to the Depositor and Beneficiary Authorized Persons that it can no longer perform the Services under this Agreement. Notwithstanding the proceeding provisions, prior to the date of termination, Depositor and Beneficiary may provide Iron Mountain with joint written notice that dispute proceedings under Section 13(n) are in process, and that subject to continued payment of Service fees, Iron Mountain will delay the termination of this Agreement until such time as the Depositor and Beneficiary provide joint written notice that the dispute proceedings have concluded, except if a period of 90 days from the original termination date has elapsed in which case, Iron Mountain will return all Deposit Material to Depositor via commercial express mail carrier. If reasonable attempts to return the Deposit Material are unsuccessful, Iron Mountain shall destroy the Deposit Material.

   (b) Unless the express terms of this Agreement provide otherwise, upon termination of this Agreement, Iron Mountain shall return the Deposit Material to the Depositor. Unless otherwise directed by Depositor, Iron Mountain will use a commercially recognized overnight common carrier such as Federal Express or United Parcel Service to return the Deposit Material to the Depositor. Iron Mountain will not be responsible for any loss or destruction of, or damage to, such Deposit Material while in the custody of the common carrier. If reasonable attempts to return the Deposit Material to Depositor are unsuccessful, Iron Mountain shall destroy the Deposit Material.

   (c) In the event of the nonpayment of Service Fees owed to Iron Mountain, Iron Mountain shall provide all Parties to this Agreement with notice by electronic mail and/or regular mail. Any Party to this Agreement shall have the right to make the payment to Iron Mountain to cure the default. If the past due payment is not received in full by Iron Mountain within thirty (30) calendar days of the date of such notice, then Iron Mountain shall have the right to terminate this Agreement at any time thereafter by sending notice by electronic mail and/or regular mail of termination to all Parties. Iron Mountain shall have no obligation to take any action under this Agreement so long as any Iron Mountain invoice issued for Services rendered under this Agreement remains uncollected.

7. **Infringement Indemnification.**

   Anything in this Agreement to the contrary notwithstanding, Depositor at its own expense shall defend and hold Iron Mountain fully harmless against any claim or action asserted against Iron Mountain (specifically including costs and reasonable attorneys' fees associated with any such claim or action) to the extent such claim or action is based on an assertion that Iron Mountain's proper administration of this Agreement infringes any patent, copyright, license or other proprietary right of any third party. When Iron Mountain has notice of a claim or action, it shall promptly notify Depositor in writing. At its option, Depositor may elect to control the defense of such claim or action and may elect to enter into a settlement agreement, provided that no such settlement or defense shall include any admission or implication of wrongdoing on the part of Iron Mountain without Iron Mountain's prior written consent, which consent shall not be unreasonably delayed or withheld. Iron Mountain shall have the right to employ separate counsel and participate in the defense of any claim at its own expense.

8. **Warranties.**

   (a) IRON MOUNTAIN WARRANTS ANY AND ALL SERVICES PROVIDED HEREUNDER SHALL BE PERFORMED IN A WORKMANLIKE MANNER CONSISTENT WITH THE MEASURES IRON MOUNTAIN TAKES TO PROTECT ITS OWN INFORMATION OF A SIMILAR NATURE, BUT IN NO CASE LESS THAN A REASONABLE LEVEL OF CARE. EXCEPT AS SPECIFIED IN THIS SECTION, ALL CONDITIONS, REPRESENTATIONS, AND WARRANTIES INCLUDING, WITHOUT LIMITATION, ANY IMPLIED WARRANTIES OR CONDITIONS OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, SATISFACTORY QUALITY, OR ARISING FROM A COURSE OF DEALING, USAGE, OR TRADE PRACTICE, ARE HEREBY EXCLUDED TO THE EXTENT ALLOWED BY APPLICABLE LAW. AN AGGRIEVED PARTY MUST NOTIFY IRON MOUNTAIN PROMPTLY UPON LEARNING OF ANY CLAIMED BREACH OF ANY WARRANTY AND, TO THE EXTENT ALLOWED BY APPLICABLE LAW, SUCH PARTY'S REMEDY FOR BREACH OF THIS WARRANTY SHALL BE SUBJECT TO THE LIMITATION OF LIABILITY AND CONSEQUENTIAL DAMAGES WAIVER IN THIS AGREEMENT. THIS DISCLAIMER AND EXCLUSION SHALL APPLY EVEN IF THE EXPRESS WARRANTY AND LIMITED REMEDY SET FORTH ABOVE FAILS OF ITS ESSENTIAL PURPOSE.

   (b) Depositor. Depositor warrants that all Depositor Information provided hereunder is accurate and reliable and undertakes to promptly correct and update such Depositor Information during the Term of this Agreement.

(c) Beneficiary. Beneficiary warrants that all Beneficiary Information provided hereunder is accurate and reliable and undertakes to promptly correct and update such Beneficiary Information during the Term of this Agreement.

9. **Insurance.**

Iron Mountain shall, at its sole cost and expense, throughout the term of this Agreement, procure and maintain in full force and effect, the following insurance coverage, with an insurance carrier that is rated B+ or better by A.M. Best.

| TYPE OF INSURANCE | COVERAGE AMOUNT | TYPE OF INSURANCE | COVERAGE AMOUNT |
|---|---|---|---|
| General Liability | $2,000,000 General Aggregate | Crime Insurance | $2,000,000 Each Occurrence |
| General Liability | $1,000,000 Each Occurrence | Umbrella Coverage | $5,000,000 General Aggregate |
| Professional Liability | | $1,000,000 Each Occurrence | |

All certificates of insurance shall name the Parties as additional beneficiaries with respect to General Liability coverage. All certificates of insurance shall require that the Parties be provided with advance written notice of cancellation of the stated coverage, and Iron Mountain shall request that its insurer use its best efforts to provide at least thirty (30) days' advance written notification of such cancellation.

10. **Confidential Information.**

Iron Mountain shall have the obligation to implement and maintain safeguards designed to protect the confidentiality of the Deposit Material. Except as provided in this Agreement Iron Mountain shall not use or disclose the Deposit Material. Iron Mountain shall not disclose the terms of this Agreement to any third party other than its financial, technical or legal advisors, or its administrative support service providers. Any such third party shall be bound by the same confidentiality obligations as Iron Mountain. If Iron Mountain receives a subpoena or any other order from a court or other judicial tribunal pertaining to the disclosure or release of the Deposit Material, Iron Mountain will promptly notify the Parties to this Agreement unless prohibited by law. After notifying the Parties, Iron Mountain may comply in good faith with such order. It shall be the responsibility of Depositor or Beneficiary to challenge any such order; provided, however, that Iron Mountain does not waive its rights to present its position with respect to any such order. Iron Mountain will cooperate with the Depositor or Beneficiary, as applicable, to support efforts to quash or limit any subpoena, at such Party's expense. Any Party requesting additional assistance shall pay Iron Mountain's standard charges or as quoted upon submission of a detailed request.

11. **Limitation of Liability.**

EXCEPT FOR: (I) LIABILITY FOR DEATH OR BODILY INJURY; (II) PROVEN GROSS NEGLIGENCE OR WILLFUL MISCONDUCT; OR (III) THE INFRINGEMENT INDEMNIFICATION OBLIGATIONS OF SECTION 7, ALL OTHER LIABILITY RELATED TO THIS AGREEMENT, IF ANY, WHETHER ARISING IN CONTRACT, TORT (INCLUDING NEGLIGENCE) OR OTHERWISE, OF IRON MOUNTAIN SHALL BE LIMITED TO THE AMOUNT EQUAL TO ONE YEAR OF FEES PAID TO IRON MOUNTAIN UNDER THIS AGREEMENT. IF CLAIM OR LOSS IS MADE IN RELATION TO A SPECIFIC DEPOSIT OR DEPOSITS, SUCH LIABILITY SHALL BE LIMITED TO THE FEES RELATED SPECIFICALLY TO SUCH DEPOSITS. FOR THE AVOIDANCE OF DOUBT, AS BETWEEN DEPOSITOR AND BENEFICIARY, THE LIMITATION OF LIABILITY TERMS OF THE PURCHASE AGREEMENT SHALL GOVERN.

12. **Consequential Damages Waiver.**

IN NO EVENT SHALL IRON MOUNTAIN BE LIABLE TO DEPOSITOR OR BENEFICIARY FOR ANY INCIDENTAL, SPECIAL, PUNITIVE OR CONSEQUENTIAL DAMAGES RESULTING FROM THIS AGREEMENT, WHETHER ARISING FROM LOST PROFITS OR LOST DATA OR INFORMATION, ANY COSTS OR EXPENSES FOR THE PROCUREMENT OF SUBSTITUTE SERVICES, OR ANY OTHER INDIRECT DAMAGES, AND REGARDLESS OF THE FORM OF ACTION, WHETHER ARISING IN CONTRACT, TORT (INCLUDING NEGLIGENCE) OR OTHERWISE EVEN IF THE POSSIBILITY THEREOF MAY BE KNOWN BY IRON MOUNTAIN IN ADVANCE.
IN NO EVENT SHALL DEPOSITOR OR BENEFICIARY BE LIABLE TO IRON MOUNTAIN FOR ANY INCIDENTAL, SPECIAL, PUNITIVE OR CONSEQUENTIAL DAMAGES RESULTING FROM THIS AGREEMENT, WHETHER ARISING FROM LOST PROFITS OR LOST DATA OR INFORMATION, ANY COSTS OR EXPENSES FOR THE PROCUREMENT OF SUBSTITUTE SERVICES, OR ANY OTHER INDIRECT DAMAGES, AND REGARDLESS OF THE FORM OF ACTION, WHETHER ARISING IN CONTRACT, TORT (INCLUDING NEGLIGENCE) OR OTHERWISE EVEN IF THE POSSIBILITY THEREOF MAY BE KNOWN BY DEPOSITOR OR BENEFICIARY IN ADVANCE.
FOR THE AVOIDANCE OF DOUBT, AS BETWEEN DEPOSITOR AND BENEFICIARY, THE LIMITATION OF LIABILITY TERMS OF THE PURCHASE AGREEMENT SHALL GOVERN.

**13. General.**

(a) Incorporation of Work Requests. All Depositor and/or Beneficiary Work Requests are incorporated into this Agreement.

(b) Purchase Orders. The terms and conditions of this Agreement prevail regardless of any conflicting or additional terms on any Purchase Order or other correspondence. Any contingencies or additional terms contained on any Purchase Order are not binding upon Iron Mountain. All Purchase Orders are subject to approval and acceptance by Iron Mountain.

(c) Right to Make Copies. Iron Mountain shall have the right to make copies of all Deposit Material as reasonably necessary to perform this Agreement. Iron Mountain shall copy all copyright, nondisclosure, and other proprietary notices and titles contained on Deposit Material onto any copies made by Iron Mountain. Any copying expenses incurred by Iron Mountain as a result of a Work Request to copy will be borne by the Party requesting the copies. Iron Mountain may request Depositor's reasonable cooperation in promptly copying Deposit Material in order for Iron Mountain to perform this Agreement.

(d) Choice of Law. The validity, interpretation, and performance of this Agreement shall be controlled by and construed under the laws of the State of New York, United States of America, as if performed wholly within the state and without giving effect to the principles of conflicts of laws.

(e) Right to Rely on Instructions. Iron Mountain may act in reliance upon any instruction, instrument, or signature reasonably believed by Iron Mountain to be genuine. Iron Mountain may assume that any employee of a Party to this Agreement who gives any written notice, request, or instruction has the authority to do so. Iron Mountain will not be required to inquire into the truth or evaluate the merit of any statement or representation contained in any notice or document. Iron Mountain shall not be responsible for failure to act as a result of causes beyond the reasonable control of Iron Mountain.

(f) Force Majeure. Except for the obligation to pay monies due and owing, no Party shall be liable for any delay or failure in performance due to events outside the defaulting Party's reasonable control, including without limitation acts of God, earthquake, labor disputes, shortages of supplies, riots, war, acts of terrorism, fire, epidemics, or delays of common carriers or other circumstances beyond its reasonable control. The obligations and rights of the excused Party shall be extended on a day-to-day basis for the time period equal to the period of the excusable delay.

(g) Notices. All notices regarding Exhibit C shall be sent by commercial express mail carrier (i.e., FedEx, UPS, DHL, or other nationally recognized carrier). All other correspondence, including invoices, payments, and other documents and communications, shall be sent by (i) electronic mail or (ii) via regular mail to the Parties at the addresses specified in the Authorized Persons/Notices Table which shall include the title(s) of the individual(s) authorized to receive notices. It shall be the responsibility of the Parties to notify each other as provided in this Section in the event of a change of physical or e-mail addresses. The Parties shall have the right to rely on the last known address of the other Parties. Any correctly addressed notice or last known address of the other Parties that is relied on herein that is refused, unclaimed, or undeliverable because of an act or omission of the Party to be notified as provided herein shall be deemed effective as of the first date that said notice was refused, unclaimed, or deemed undeliverable by electronic mail, the postal authorities by mail, through messenger or commercial express delivery services.

(h) No Waiver. No waiver of rights under this Agreement by any Party shall constitute a subsequent waiver of this or any other right under this Agreement.

(i) Assignment. No assignment of this Agreement by Depositor and/or Beneficiary or any rights or obligations of Depositor and/or Beneficiary under this Agreement is permitted without the written consent of all Parties, which shall not be unreasonably withheld or delayed. However, Iron Mountain shall have no obligation in performing this Agreement to recognize any successor or assign of Depositor or Beneficiary unless Iron Mountain receives clear, authoritative and conclusive written evidence of the change of Parties.

(j) Severability. In the event any of the terms of this Agreement become or are declared to be illegal or otherwise unenforceable by any court of competent jurisdiction, such term(s) shall be null and void and shall be deemed deleted from this Agreement. All remaining terms of this Agreement shall remain in full force and effect. Notwithstanding the foregoing, if this paragraph becomes applicable and, as a result, the value of this Agreement is materially impaired for either Party, as determined by such Party in its sole discretion, then the affected Party may terminate this Agreement by notice to the others.

(k) Independent Contractor Relationship. Depositor and Beneficiary understand, acknowledge, and agree that Iron Mountain's relationship with Depositor and Beneficiary will be that of an independent contractor and that nothing in this Agreement is intended to or should be construed to create a partnership, joint venture, or employment relationship.

(l) Attorneys' Fees. Any costs and fees incurred by Iron Mountain in the performance of obligations imposed upon Iron Mountain solely by virtue of its role as escrow service provider including, without limitation, compliance with subpoenas, court orders, and discovery requests shall, unless adjudged otherwise, be divided equally and paid by Depositor and Beneficiary. In any suit or proceeding between the Parties relating to this Agreement, the prevailing Party will have the right to recover from the other(s) its costs and reasonable fees and expenses of attorneys, accountants, and other professionals incurred in connection with the suit or proceeding, including costs, fees and expenses upon appeal, separately from and in addition to any other amount included in such judgment. This provision is intended to be severable from the other provisions of this Agreement, and shall survive and not be merged into any such judgment.

(m) <u>No Agency</u>. No Party has the right or authority to, and shall not, assume or create any obligation of any nature whatsoever on behalf of the other Parties or bind the other Parties in any respect whatsoever.

(n) <u>Disputes</u>. Any dispute, difference or question relating to or arising among any of the Parties concerning the construction, meaning, effect or implementation of this Agreement or the rights or obligations of any Party hereof will be submitted first to, and settled by the United States Bankruptcy Court for the Southern District of California (San Diego) (the "Bankruptcy Court"), and if the Bankruptcy Court has not retained or does not have jurisdiction over the matter, then by arbitration by a single arbitrator chosen by the New York Regional Office of the American Arbitration Association in accordance with the Commercial Rules of the American Arbitration Association. The arbitrator shall apply New York law. Unless otherwise agreed by the Parties, arbitration will take place in New York City, New York, U.S.A. Any court having jurisdiction over the matter, including, without limitation the Bankruptcy Court may enter judgment on the award of the arbitrator. Service of a petition to confirm the arbitration award may be made by regular mail or by commercial express mail, to the attorney for the Party or, if unrepresented, to the Party at the last known business address. If however, Depositor and/or Beneficiary refuse to submit to arbitration, the matter shall not be submitted to arbitration and Iron Mountain may submit the matter to any court of competent jurisdiction for an interpleader or similar action, including to the Bankruptcy Court. Unless adjudged otherwise, any costs of arbitration incurred by Iron Mountain, including reasonable attorney's fees and costs, shall be divided equally and paid by Depositor and Beneficiary.

(o) <u>Regulations</u>. Depositor and Beneficiary are responsible for and warrant, to the extent of their individual actions or omissions, compliance with all applicable laws, rules and regulations, including but not limited to: customs laws; import; export and re-export laws; and government regulations of any country from or to which the Deposit Material may be delivered in accordance with the provisions of this Agreement. With respect to Deposit Material containing personal information and data, Depositor agrees to (i) procure all necessary consents in relation to personal information and data; and (ii) otherwise comply with all applicable privacy and data protection laws as they relate to the subject matter of this Agreement. Notwithstanding anything in this Agreement to the contrary, if an applicable law or regulation exists or should be enacted which is contrary to the obligations imposed upon Iron Mountain hereunder, and results in the activities contemplated hereunder unlawful, Iron Mountain will be relieved of its obligations hereunder unless and until such time as such activity is permitted.

(p) <u>Counterparts</u>. This Agreement may be executed in any number of counterparts, each of which shall be an original, but all of which together shall constitute one instrument.

(q) <u>Survival</u>. Sections 6 (Term and Termination), 7 (Infringement Indemnification), 8 (Warranties), 10 (Confidential Information), 11 (Limitation of Liability), 12 (Consequential Damages Waiver), and 13 (General) of this Agreement shall survive termination of this Agreement or any Exhibit attached hereto.

(r) <u>Entire Agreement</u>. The Parties agree that this Agreement, which includes all the Exhibits attached hereto is the complete agreement between the Parties hereto concerning the subject matter of this Agreement and replaces any prior or contemporaneous oral or written communications between the Parties. There are no conditions, understandings, agreements, representations, or warranties, expressed or implied, which are not specified herein. Notwithstanding any other provision of this Agreement expressed or implied to the contrary, this Agreement does not amend, modify, supersede or replace any provision contained in the Purchase Agreement other than Schedule O of the Purchase Agreement and Section 34.2.3 (i.e., for the purposes of removing the concept of an "escrow termination date" in this Agreement) of the Purchase Agreement. Each of the Parties herein represents and warrants that the execution, delivery, and performance of this Agreement has been duly authorized and signed by a person who meets statutory or other binding approval to sign on behalf of its business organization as named in this Agreement. This Agreement may only be modified by mutual written agreement of the Parties.

(balance of this page intentionally left blank – signature page follows)

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the Effective Date.

**DEPOSITOR**

| | |
|---|---|
| **COMPANY NAME:** | **ISE CORPORATION** |
| **SIGNATURE:** | |
| **PRINT NAME:** | **Richard J. Sander** |
| **TITLE:** | **President & CEO** |
| **DATE:** | |
| **EMAIL ADDRESS** | rsander@isecorp.com |

**BENEFICIARY**

| | |
|---|---|
| **Company Name:** | **NEW FLYER INDUSTRIES CANADA ULC** |
| **Signature:** | |
| **PRINT NAME:** | **Colin Pewarchuk** |
| **TITLE:** | **Executive Vice President, General Counsel** |
| **DATE:** | |
| **EMAIL ADDRESS:** | Colin_Pewarchuk@newflyer.com |

IRON MOUNTAIN INTELLCTUAL PROPERTY MANAGEMENT, INC.

| | |
|---|---|
| SIGNATURE: | |
| PRINT NAME: | |
| TITLE: | |
| DATE: | |
| EMAIL ADDRESS: | ipmclientservices@ironmountain.com |

**NOTE:  AUTHORIZED PERSONS/NOTICES TABLE AND EXHIBITS FOLLOW ON THE NEXT PAGES**

**AUTHORIZED PERSONS/NOTICES TABLE**

Please provide the name and contact information of the Authorized Persons under this Agreement. All Notices will be sent to these individuals at the addresses set forth below.

**DEPOSITOR**

**AUTHORIZED PERSON(S)/NOTICES TABLE**

Please provide the name(s) and contact information of the Authorized Person(s) under this Agreement. All Notices will be sent electronically and/or through regular mail to the appropriate address set forth below.

| PRINT NAME: | RICHARD SANDER | PRINT NAME: | JUSTIN SPRAGG |
|---|---|---|---|
| TITLE: | PRESIDENT & CEO | TITLE: | VP & GENERAL COUNSEL |
| EMAIL ADDRESS | RSANDER@ISECORP.COM | EMAIL ADDRESS | JSPRAGG@ISECORP.COM |
| ADDRESS 1 | 12302 KERRAN STREET | ADDRESS 1 | 12302 KERRAN STREET |
| ADDRESS 2 | POWAY, CALIFORNIA 92064 USA | ADDRESS 2 | POWAY, CALIFORNIA 92064 USA |
| CITY/STATE/PROVINCE | 92064 | CITY/STATE/PROVINCE | 92064 |
| POSTAL/ZIP CODE | 92064 | POSTAL/ZIP CODE | 92064 |
| PHONE NUMBER | 858-413-1751 | PHONE NUMBER | 858-413-1754 |
| FAX NUMBER | 858-413-1733 | FAX NUMBER | 858-413-1731 |

**BENEFICIARY**

**AUTHORIZED PERSON(S)/NOTICES TABLE**

Please provide the name(s) and contact information of the Authorized Person(s) under this Agreement. All Notices will be sent electronically and/or through regular mail to the appropriate address set forth below.

With a copy of release notices to:

| COMPANY NAME: | New Flyer Industries Canada ULC | COMPANY NAME: | New Flyer of America Inc. | |
|---|---|---|---|---|
| PRINT NAME: | Colin Pewarchuk | PRINT NAME: | Glenn Ashman | |
| TITLE: | Executive Vice President, General Counsel | TITLE: | Chief Financial Officer | |
| EMAIL ADDRESS | Colin_Pewarchuk@newflyer.com | EMAIL ADDRESS | Glenn_Asham@newflyer.com | |
| ADDRESS 1 | 711 Kernaghan Avenue | ADDRESS 1 | 711 Kernaghan Avenue | |
| ADDRESS 2 | | ADDRESS 2 | | |
| CITY/STATE/PROVINCE | Winnipeg, Manitoba, Canada | CITY/STATE/PROVINCE | Winnipeg, Manitoba, Canada | |
| POSTAL/ZIP CODE | R2C 3T4 | POSTAL/ZIP CODE | R2C 3T4 | |
| PHONE NUMBER | 204-224-6674 | PHONE NUMBER | (204) 224-6357 | |
| FAX NUMBER | 204-224-6652 | FAX NUMBER | 204-224-6652 | |

**DEPOSITOR BILLING CONTACT INFORMATION TABLE**

Please provide the name and contact information of the Billing Contact under this Agreement. Invoices for services checked on Exhibit A attached hereto will be sent to this individual at the address set forth below.

| | |
|---|---|
| PRINT NAME: | DAVID MORASH |
| TITLE: | CFO |
| EMAIL ADDRESS | dmorash@isecorp.com |
| STREET ADDRESS | 12302 Kerran Street |
| PROVINCE/CITY/STATE | Poway, California 92064, USA |
| PHONE NUMBER | 858-413-1724 |
| FAX NUMBER | 858-413-1733 |

**IRON MOUNTAIN INTELLECTUAL PROPERTY MANAGEMENT, INC.**

All notices should be sent to ipmclientservices@ironmountain.com OR Iron Mountain, Attn: Client Services, 2100 Norcross Parkway, Suite 150, Norcross, Georgia, 30071, USA

MUST BE COMPLETED       EXHIBIT A - Escrow Service Work Request - Deposit Account Number: _____

| SERVICE<br>Check box(es) to order service | SERVICE DESCRIPTION – THREE PARTY ESCROW AGREEMENT<br>All services are listed below. Services in shaded tables are required for every new escrow account set up. Some services may not be available under the Agreement. | ONE-TIME FEES | ANNUAL FEES | PAYING PARTY<br>Check box to identify the Paying Party for each service below. |
|---|---|---|---|---|
| ☒ Setup Fee | Iron Mountain will setup a new escrow deposit account using a standard escrow agreement. Custom contracts are subject to the Custom Contract Fee noted below. | $1,500 | | ☒ Depositor -<br>OR -<br>☐ Beneficiary |
| ☒ Deposit Account Fee- including Escrow Management Center Access | Iron Mountain will set up one deposit account to manage and administrate access to Deposit Material that will be securely stored in controlled media vaults.  Furthermore, Iron Mountain will provide account services that include unlimited deposits, electronic vaulting, access to Iron Mountain Connect™ Escrow Management Center for secure online account management, submission of electronic Work Requests, and communication of status.  A Client Manager will be assigned to each deposit account and provide training upon request to facilitate secure Internet access to the account and ensure fulfillment of Work Requests. An oversize fee of $200 USD per 1.2 cubic foot will be charged for deposits that exceed 2.4 cubic feet. | | $1,000 | ☒ Depositor -<br>OR -<br>☐ Beneficiary |
| ☒ Beneficiary Fee including Escrow Management Center Access | Iron Mountain will fulfill a Work Request to add a Beneficiary to an escrow deposit account and manage access rights associated with the account. Beneficiary will have access to Iron Mountain Connect™ Escrow Management Center for secure online account management, submission of electronic Work Requests, and communication of status. A Client Manager will be assigned to each deposit account and provide training upon request to facilitate secure Internet access to the account and ensure fulfillment of Work Requests. | | $700 | ☒ Depositor -<br>OR -<br>☐ Beneficiary |
| ☐ Add Deposit Tracking Notification | At least semi-annually, Iron Mountain will send an update reminder to Depositor.  Thereafter, Beneficiary will be notified of last deposit. | N/A | $375 | ☐ Depositor -<br>OR -<br>☐ Beneficiary |
| ☐ Add File List (Verification Report) | Iron Mountain will fulfill a Work Request to perform a File Listing Report, which includes a deposit media readability analysis, a file listing, a file classification table, virus scan outputs, and assurance of completed deposit questionnaire.  A final report will be sent to the Paying Party regarding the Deposit Material to ensure consistency between Depositor's representations (i.e., Exhibit B and Deposit Questionnaire) and stored Deposit Material.   Deposit must be provided on CD, DVD-R, or deposited  sFTP. | $2,500 | N/A | ☐ Depositor -<br>OR -<br>☐ Beneficiary |
| ☒ Add Level 1 - Inventory and Analysis Test | Iron Mountain will perform an Inventory Test on the initial deposit, which includes Analyzing deposit media readability, virus scanning, developing file classification tables, identifying the presence/absence of build instructions, and identifying materials required to recreate the Depositor's software development environment. Output includes a report which will include build instructions, file classification tables and listings.  In addition, the report will list required software development materials, including, without limitation, required source code languages and compilers, third-party software, libraries, operating systems, and hardware, as well as Iron Mountain's analysis of the deposit. | $5,000 or based on SOW if custom work required | N/A | ☐ Depositor -<br>OR -<br>☒ Beneficiary |

| | | | | |
|---|---|---|---|---|
| ☐ Add Level 2 Deposit Compile Test | Iron Mountain will fulfill a Work Request to perform a Deposit Compile Test, which includes the outputs of the File Listing Report and the Level 1 - Inventory Test as described above plus recreating the Depositor's software development environment, compiling source files and modules, linking libraries and recreating executable code, pass/fail determination, creation of comprehensive build instructions with a final report sent to the Paying Party regarding the Deposit Material. The Paying Party and Iron Mountain will agree on a custom Statement of Work ("SOW") prior to the start of fulfillment. | Based on SOW | N/A | ☐ Depositor - OR - ☐ Beneficiary |
| ☐ Add Level 3 -Binary Comparison | Iron Mountain will fulfill a Work Request to perform one Deposit Usability Test - Binary Comparison which includes a comparison of the files built from the Deposit Compile Test to the actual licensed technology on the Beneficiary's site to ensure a full match in file size, with a final report sent to the Requesting Party regarding the Deposit Material. The Paying Party and Iron Mountain will agree on a custom Statement of Work ("SOW") prior to the start of fulfillment. | Based on SOW | N/A | ☐ Depositor - OR - ☐ Beneficiary |
| ☐ Add Level 4 - Full Usability | Iron Mountain will fulfill a Work Request to perform one Deposit Usability Test - Full Usability which includes a confirmation that the built applications work properly when installed, based on pre-determined test scripts provided by the Parties. A final report will be sent to the Paying Party regarding the Deposit Material. The Paying Party and Iron Mountain will agree on a custom Statement of Work ("SOW") prior to the start of fulfillment. | Based on SOW | N/A | ☐ Depositor - OR - ☐ Beneficiary |
| ☐ Add Dual/Remote Vaulting | Iron Mountain will fulfill a Work Request to store deposit materials in one additional location as defined within the Service Agreement. Duplicate storage request may be in the form of either physical media or electronic storage. | N/A | $500 | ☐ Depositor - OR - ☐ Beneficiary |
| ☐ Release Deposit Material | Iron Mountain will process a Work Request to release Deposit Material by following the specific procedures defined in Exhibit C "Release of Deposit Material" the Escrow Service Agreement. | $500 | N/A | ☐ Depositor - OR - ☐ Beneficiary |
| ☐ Add Custom Services | Iron Mountain will provide its Escrow Expert consulting based on a custom SOW mutually agreed to by all Parties. | $175/hour | N/A | ☐ Depositor - OR - ☐ Beneficiary |
| ☐ Custom Contract Fee | Custom contracts are subject to the Custom Contract Fee, which covers the review and processing of custom or modified contracts. | $750 | N/A | ☐ Depositor - OR - ☐ Beneficiary |

## EXHIBIT B
## DEPOSIT MATERIAL DESCRIPTION

COMPANY NAME: _____ DEPOSIT ACCOUNT NUMBER: _____

DEPOSIT NAME _____ AND DEPOSIT VERSION _____
(Deposit Name will appear in account history reports)
DEPOSIT MEDIA (PLEASE LABEL ALL MEDIA WITH THE DEPOSIT NAME PROVIDED ABOVE)

| MEDIA TYPE | QUANTITY | MEDIA TYPE | QUANTITY |
|---|---|---|---|
| ☐ CD-ROM / DVD | | ☐ 3.5" Floppy Disk | |
| ☐ DLT Tape | | ☐ Documentation | |
| ☐ DAT Tape | | ☐ Hard Drive / CPU | |
| | | ☐ Circuit Board | |

| | TOTAL SIZE OF TRANSMISSION (SPECIFY IN BYTES) | # OF FILES | # OF FOLDERS |
|---|---|---|---|
| ☐ Electronic Deposit | | | |
| ☐ Other (please describe below): | | | |
| | | | |

DEPOSIT ENCRYPTION (Please check either "Yes" or "No" below and complete as appropriate)

Is the media or are any of the files encrypted? ☐ Yes or ☐ No

If yes, please include any passwords and decryption tools description below. Please also deposit all necessary encryption software with this deposit.
Encryption tool name_____ Version_____
Hardware required _____
Software required _____
Other required information_____

DEPOSIT CERTIFICATION (Please check the box below to Certify and Provide your Contact Information)

| ☐ I certify for Depositor that the above described Deposit Material has been transmitted electronically or sent via commercial express mail carrier to Iron Mountain at the address below. | ☐ Iron Mountain has inspected and accepted the above described Deposit Material either electronically or physically. Iron Mountain will notify Depositor of any discrepancies. |
|---|---|
| NAME: | NAME: |
| PRINT NAME: | PRINT NAME: |
| DATE: | DATE: |
| EMAIL ADDRESS: | |
| TELEPHONE NUMBER: | |
| FAX NUMBER: | |

Note: If Depositor is physically sending Deposit Material to Iron Mountain, please label all media and mail all Deposit Material with the appropriate Exhibit B via commercial express carrier to the following address:
Iron Mountain Intellectual Property Management, Inc.          Telephone: 800-875-5669
Attn: Vault Administration          Facsimile: 770- 239-9201
2100 Norcross Parkway, Suite 150
Norcross, GA 30071

**THREE-PARTY ESCROW SERVICE AGREEMENT**

**EXHIBIT C**

**RELEASE OF DEPOSIT MATERIALS**

Iron Mountain will use the following procedures to process any Beneficiary Work Request to release Deposit Material.

1. <u>Release Conditions</u>. The Depositor and Beneficiary agree that a Work Request for the release of the Deposit Material shall be based solely on one or more of the following conditions (defined as **"Release Conditions"**):

    (i)    joint instructions from Depositor and Beneficiary with instructions to release the Deposit Material; or

    (ii)   receipt of an order from the United States Bankruptcy Court for the Southern District of California (San Diego) or other court of competent jurisdiction for the release of the Deposit Material.

2. <u>Release Work Request</u>. A Beneficiary may submit a Work Request to Iron Mountain to release the Deposit Material covered under this Agreement. Iron Mountain will send a written notice of this Beneficiary Work Request within five (5) business days to the authorized Depositor representative(s) via commercial express mail carrier.

3. <u>Contrary Instructions</u>. From the date Iron Mountain sends, via commercial express mail carrier, written notice of the Beneficiary Work Request to release Deposit Material covered under this Agreement, Depositor representative(s) shall have ten (10) business days to deliver to Iron Mountain contrary instructions ("Contrary Instructions"). Contrary Instructions shall mean the written representation by Depositor that a Release Condition has not occurred or has been cured. Contrary Instructions shall be on company letterhead and signed by an authorized Depositor representative. Upon receipt of Contrary Instructions, Iron Mountain shall send a copy to an authorized Beneficiary representative by commercial express mail carrier. Additionally, Iron Mountain shall notify both Depositor representative(s) and Beneficiary representative(s) that there is a dispute to be resolved pursuant to the Disputes provisions of this Agreement. (Iron Mountain shall send copy of such notices to Beneficiary's affiliate as identified in the Authorized Person(s) Notice Table.) Iron Mountain will continue to store Deposit Material without release pending (i) joint instructions from Depositor and Beneficiary that accept release of Deposit Material; or (ii) dispute resolution pursuant to the Disputes provisions of this Agreement; or (iii) receipt of an order from a court of competent jurisdiction.

4. <u>Release of Deposit Material</u>. If Iron Mountain does not receive Contrary Instructions from an authorized Depositor representative as provided above, then Iron Mountain is authorized to release Deposit Material to the Beneficiary. Iron Mountain is entitled to receive any uncollected Service fees due Iron Mountain from the Parties before fulfilling the Work Request to release Deposit Material covered under this Agreement. Any Party may cure a default of payment of Service fees. This Agreement will terminate upon the release of Deposit Material held by Iron Mountain.

5. <u>Right to Use Following Release</u>. Beneficiary has the right under this Agreement to use the Deposit Material for the sole purpose of continuing the benefits afforded to Beneficiary by the Purchase Agreement. Notwithstanding, the Beneficiary shall not have access to the Deposit Material unless there is a release of the Deposit Material in accordance with this Agreement. Beneficiary shall be obligated to maintain the confidentiality of the released Deposit Material.

### EXHIBIT Q
#### Escrow Deposit Questionnaire

**Introduction**

From time to time, technology escrow beneficiaries may exercise their right to perform verification services. This is a service that Iron Mountain provides for the purpose of validating relevance, completeness, currency, accuracy and functionality of deposit materials.

**Purpose of Questionnaire**

In order for Iron Mountain to determine the deposit material requirements and to quote fees associated with verification services, a completed deposit questionnaire is requested. It is the responsibility of the escrow depositor to complete the questionnaire.

**Instructions**

Please complete the questionnaire in its entirety by answering every question with accurate data. Upon completion, please return the completed questionnaire to the beneficiary asking for its completion.

**Escrow Deposit Questionnaire**

General Description

1.  What is the general function of the software to be placed into escrow?
2.  On what media will the source code be delivered?
3.  If the deposit is on magnetic tape media, what tape format (e.g. DAT DDS4, DLT 8000, LTO-3, etc.) will be used for the deposit?
4.  Again if the deposit is on tape, what operating system and version was used to create the tape and what tools (either native OS or commercial (e.g. Backup Exec, NetBackup, etc.) were used to load the data; if a third party or commercial software tool was used, please specify the vendor and exact version of the tool used.
5.  Will the deposit be in the format of a database/repository of any type of Versioning or Configuration Management Tool (e.g. Visual Source Safe, Clearcase, Perforce, etc.) or will the software in the deposit be in a clear text/native file system format? If a Versioning or CM tool will be necessary to examine any part the deposit contents, please specify the Vendor and tool and exact version used.
6.  Is the software deposit encrypted, including password protected archives, in any way? If so, what tool and version will be used to perform the encryption and will all necessary userid's, passwords or encryption keys be provided to support extraction of the software?
7.  What is the total uncompressed size of the deposit in megabytes?

**Requirements for the Execution of the Software Protected by the Deposit**

1.  What are the system hardware requirements to successfully execute the software? (memory, disk space, etc.); please include any additional peripheral devices that may be necessary to support correct function of the software/system.
2.  What is the minimum number of machines required to completely set up the software sufficient to support functional testing? What Operating systems and version are required for each machine?
3.  Beyond the operating systems, what additional third party software and tools are required to execute the escrowed software and verify correct operation? Please provide vendor and versions of all third party tools or libraries required to completely configure a system suitable to support functional testing.
4.  If a database of any kind is required to support functional testing of the software, does the escrow deposit contain or can the depositor provide scripts and backups/imports necessary to create a database instance suitable to support functional testing. Note: a database containing test data is satisfactory to support functional testing so long as the data is realistic.
5.  Approximately how much time is required to setup and configure a system suitable to support functional testing?
6.  Approximately how much time would be required to perform a set of limited tests once a test system is configured?
7.  Does the escrow deposit contain or can the depositor provide test plans, scripts or procedures to facilitate testing?
8.  With the exception of any database identified above, are any connections to external data sources, feeds or sinks required in order to support the proper functioning of the software and to support testing of the software?

**Requirements for the Assembly of the Deposit**

1.  Describe the nature of the source code in the deposit. (Does the deposit include interpreted code, compiled source, or a mixture? How do the different parts of the deposit relate to each other?) What types of source code make up the escrow deposit (e.g. – C++, Java, etc.)
2.  How many build processes are there?
3.  How many unique build environments are required to assemble the material in the escrow deposit into the deliverables?
4.  What hardware is required for each build environment to compile the software? (including memory, disk space, etc.)
5.  What operating systems (including versions) are used during compilation? Is the software executed on any other operating systems/version?
6.  How many separate deliverable components (executables, share libraries, etc.) are built?
7.  What compilers/linkers/other tools (brand and version) are necessary to build the application?

8. What, if any, third-party libraries are used to build the software? Please specify vendor, tool name and exact or minimum required version.

9. If a database of any kind is necessary to support compilation, is a running instance of the database necessary or is a static instance consisting of the static and shared libraries and/or header files installed by the database sufficient to support compilation?

10. How long does a complete build of the software take? How much of that time requires some form of human interaction and how much is automated?

11. Does the escrow deposit contain formal build document(s) describing the necessary steps for build system configuration and compilation?

12. Do you have an internal QA process? If so, please give a brief description of the testing process.

13. Please list the appropriate technical person(s) Iron Mountain may contact regarding this set of escrow deposit materials.

*Please provide your technical verification contact information below:*

| | |
|---|---|
| **COMPANY:** | |
| **SIGNATURE:** | |
| **PRINT NAME:** | |
| **ADDRESS 1:** | |
| **ADDRESS 2:** | |
| **CITY, STATE, ZIP** | |
| **TELEPHONE:** | |
| **EMAIL ADDRESS:** | |

For additional information about Iron Mountain Technical Verification Services, please contact Iron Mountain at 800-875-5669.

# EXHIBIT 2

## ESCROW AGREEMENT

This Escrow Agreement (this "**Escrow Agreement**") is made the _____ day of October, 2010 (the "**Effective Date**").

**BETWEEN**:

    **NEW FLYER INDUSTRIES CANADA ULC**, a corporation incorporated under the laws of Alberta with an address at 711 Kernaghan Avenue, Winnipeg, Manitoba, Canada R2C 3T4 along with

    **NEW FLYER OF AMERICA INC.**, a corporation incorporated under the laws of North Dakota with an address at 6200 Glenn Carlson Drive, St. Cloud, Minnesota, USA, 56301

    **(For purposes of this Escrow Agreement, New Flyer Industries Canada ULC ("NFI") and New Flyer of America Inc. ("NFA") are collectively referred to as "New Flyer")**

**AND:**

    **ISE CORPORATION**, a corporation incorporated under the laws of California, USA with an address at 12302 Kerran Street, Poway, California, USA, 92064

    **(For purposes of this Escrow Agreement, ISE Corporation is referred to as "ISE")**

**AND**:

    MARSHALL & ILSLEY TRUST COMPANY N.A., a corporation incorporated under the laws of Minnesota, USA with an address at 651 Nicollet Mall, Suite 301, Minneapolis, Minnesota, USA, 55402

    **(For purposes of this Escrow Agreement, MARSHALL & ILSLEY TRUST COMPANY N.A. is referred to as "Escrow Agent")**

    **(For purposes of this Escrow Agreement, New Flyer and ISE are each a "Party" and collectively the "Parties").**

**WHEREAS:**

A. New Flyer has agreed to manufacture and sell certain forty foot hydrogen hybrid fuel cell buses (the "**Buses**") to BC Transit in accordance with the terms and conditions contained in that certain agreement for the design, production and supply of hybrid fuel cell buses made August 2, 2007, as amended (the "**BC Transit Agreement**");

B. ISE has sold certain hydrogen hybrid propulsion systems (the "**FC Propulsion Systems**") to New Flyer for installation in the Buses in accordance with the terms and conditions contained in that certain agreement for the design, production and

Error! Unknown document property name.

supply of the propulsion equipment for hybrid fuel cell buses made August 2, 2007, as amended (the "**NF-ISE Agreement**");

C.  Pursuant to the terms of the NF-ISE Agreement, and as provided for in Section 4.4 thereof, certain amounts shall be held back by New Flyer (each, an "**ISE Warranty Holdback**") as security for ISE's product warranty obligations under the NF-ISE Agreement from certain payments to be made by New Flyer to ISE under the NF-ISE Agreement;

D.  Each such ISE Warranty Holdback shall be paid by New Flyer to the Escrow Agent to be held and paid by the Escrow Agent on the terms and conditions contained in this Escrow Agreement;

E.  ISE filed a petition for bankruptcy relief on August 10, 2010 in case No. 10-14198 in the United States Bankruptcy Court for the Southern District of California (the "Bankruptcy Court") and is a debtor and debtor-in-possession; and

F.  On September 22, 2010, the Bankruptcy Court ordered ISE and NF to execute an escrow agreement and establish an escrow for the ISE Warranty Holdback.

**NOW, THEREFORE, THIS ESCROW AGREEMENT WITNESSES THAT** in consideration of the covenants, representations and warranties contained in this Escrow Agreement, the Parties and Escrow Agent agree as follows:

1.  **DEFINITIONS AND INTERPRETATION**

All monetary amounts referred to in this Escrow Agreement are in U.S. dollars (USD). In addition to the documentation and time requirements for payment of the ISE Warranty Escrow Fund (as defined in Section 3(b) hereof) set out in this Escrow Agreement, the Escrow Agent will release and pay out the ISE Warranty Escrow Fund, or any portion thereof, in accordance with the joint instructions of ISE and New Flyer from time to time. Any and all payments made or required to be made to any Party by the Escrow Agent pursuant to this Escrow Agreement will be made directly to such Party or as otherwise directed by such Party to the Escrow Agent in writing from time to time.

2.  **ESCROW AGREEMENT TERM**

This Escrow Agreement shall terminate as provided in Section 5.6.

3.  **WARRANTY HOLDBACK & ISE WARRANTY ESCROW FUND**

(a)  New Flyer shall pay each ISE Warranty Holdback to the Escrow Agent and the Escrow Agent shall hold such ISE Warranty Holdback in accordance with the terms of this Escrow Agreement.  New Flyer shall pay each ISE Warranty Holdback to the Escrow Agent for deposit into the ISE Warranty Escrow Fund (defined below) within three (3) business days of receipt of such funds from BC Transit.

(b)  The Escrow Agent shall deposit and record each payment of an ISE Warranty Holdback in an interest-bearing account of U.S. Dollars (the aggregate of all such Warranty Holdbacks together with all income or gain, including interest on

**Error! Unknown document property name.**

interest, earned thereon from time to time is referred to herein as the "**ISE Warranty Escrow Fund**").

(c)     The Escrow Agent shall hold and deal with the ISE Warranty Escrow Fund in accordance with the provisions of this Escrow Agreement.

## 4.     RELEASE OF ISE WARRANTY ESCROW FUND

### 4.1.     Release of ISE Warranty Escrow Fund

(a)     Subject always to Section 5.5 of this Escrow Agreement, upon the receipt of an Entitlement Notice (as defined in Section 4.2 hereof) from either New Flyer or ISE, and provided that the Escrow Agent has not received a Dispute Notice (as defined in Section 4.2) from the other Party, the Escrow Agent will release and disburse to the Party that delivered the Entitlement Notice an amount of the ISE Warranty Escrow Fund equal to the amount set out in the Entitlement Notice on the date set out therein.  If the Escrow Agent has received a Dispute Notice from the other Party within the time period provided in Section 4.2, the Escrow Agent shall withhold any payment in dispute and pay any monies not in dispute, being an amount equal to the amount set out in the Entitlement Notice less the amount in dispute.

(b)     Except in the event New Flyer files a Dispute Notice pursuant to Section 4.2, ISE shall be entitled to draw down amounts from the ISE Warranty Escrow Fund as follows:

(i) an amount equal to fifty (50%) percent of the portion of the ISE Warranty Holdback allocated to each FC Propulsion System (being $35,000 per FC Propulsion System) will be released to ISE on the first annual anniversary date of the commencement of the warranty for such FC Propulsion System; and

(ii) an amount equal to the remaining balance of the ISE Warranty Holdback (together with any interest thereon) that remains in the ISE Warranty Escrow Fund that relates to that FC Propulsion System will be released to ISE on the second annual anniversary date of the commencement of the warranty for such FC Propulsion System.

(c)     New Flyer shall be entitled to draw down amounts from the ISE Warranty Escrow Fund only in the event that ISE defaults on any of its warranty obligations and ISE fails to either (as applicable): (i) remedy such default within 30 days after written notice of such default from New Flyer to ISE if the default can reasonably be remedied within 30 days or (ii) in the event that the default can not reasonably be remedied within 30 days, provide New Flyer with a plan to remedy such default within 30 days after written notice of such default from New Flyer to ISE.  The amount that may be drawn down by New Flyer pursuant to this Section 4.1(c) shall be limited to the amount equal to New Flyer's reasonable costs of procuring or providing warranty service in substitution for ISE's warranty service. Receipts or other applicable documentation evidencing the amounts paid by New Flyer for procuring or providing warranty service must be provided with an Entitlement Notice issued by New Flyer pursuant to Section 4.2.

### 4.2.     Dispute and Entitlement Notices - Generally

Either New Flyer or ISE may, not less than seven (7) business days prior to any proposed payment from the ISE Warranty Escrow Fund, provide to the Escrow Agent

Error! Unknown document property name.

and the other Party a written notice of entitlement to be paid from the ISE Warranty Escrow Fund (an "**Entitlement Notice**") on the dates and for the amounts set out in Entitlement Notice. Any Entitlement Notice shall set out the amount and particulars of the monies to be paid thereunder and the proposed date for such payment. Upon receipt of an Entitlement Notice, the other Party may at any time prior to the proposed payment date dispute any part or all of the amount which is the subject of such Entitlement Notice by delivering to the Escrow Agent and the Party issuing the Entitlement Notice a notice of dispute (a "**Dispute Notice**"), setting out the reasons for the dispute and the amount of monies and/or the time period for the payment being disputed.

### 4.3.   Failure to File Dispute Notice

Notwithstanding anything to the contrary in this Escrow Agreement, the failure by either New Flyer or ISE to file a Dispute Notice at any time shall not restrict, reduce, constrain, or limit in any manner or to any extent whatsoever any claim that either Party may have nor shall such failure to file a Dispute Notice form the basis of an estoppel or any similar legal argument or position by either Party. (This is intended to define the rights of the Parties and is not a duty of the Escrow Agent.)

## 5.   INVESTMENT AND ADMINISTRATION OF ISE WARRANTY ESCROW FUND

### 5.1.   Investment of ISE Warranty Escrow Fund

The Escrow Agent will from time to time, in accordance with written directions signed by ISE, invest and reinvest the ISE Warranty Escrow Fund at the risk of ISE. In the absence of such written directions, the ISE Warranty Escrow Fund will be invested and reinvested by Escrow Agent in the Marshall Money Market Fund at the risk of ISE. Investments in the Marshall Money Market Fund and investments directed in writing by ISE are referred to herein as the "**Permitted Investments**".

### 5.2.   Income

New Flyer and ISE hereby acknowledge, confirm and agree that any income or gain (including interest on interest) earned on any portion of the ISE Warranty Escrow Fund will be allocated to and deemed to be earned by ISE.

### 5.3.   Withholding and Filings

The Escrow Agent will be entitled to deduct or withhold from any payment to be made by the Escrow Agent hereunder any amount which the Escrow Agent may reasonably determine the Escrow Agent should deduct or withhold on account of taxes in connection with such payment pursuant to any applicable law or regulation, and the Escrow Agent will remit any amount so deducted or withheld to the appropriate taxing authority prior to the date on which penalties attach thereto and forthwith confirm such remittance to the Party on whose behalf such remittance has been made. The Escrow Agent may at any time and from time to time request, and New Flyer and ISE will promptly upon such request provide to the Escrow Agent, such certificates, declarations or other documents as the Escrow Agent may reasonably require for purposes of determining whether any such deduction or withholding and remittance should be made.

Error! Unknown document property name.

5.4. **Security Interest**

(a) Except pursuant to Section 5.4(b), ISE will not assign, mortgage, pledge, convey or hypothecate, or grant any security interest in or to, all or any part of the ISE Warranty Escrow Fund and no creditor of ISE may have or hold the ISE Warranty Escrow Fund as collateral for any obligation or obtain a security interest therein;

(b) As security for any and all amounts payable to New Flyer pursuant to Section 4.1(c), ISE hereby assigns, mortgages, pledges and hypothecates to and in favour of New Flyer, and grants to New Flyer a security interest in and to, ISE's right, title and interest in and to the ISE Warranty Escrow Fund;

(c) New Flyer hereby appoints the Escrow Agent as its custodian to take possession on its behalf of the ISE Warranty Escrow Fund for the purpose of perfecting New Flyer's security interest therein. ISE hereby authorizes New Flyer to file, or cause to be filed, such UCC financing statements and such other documents as may be necessary in order to perfect and preserve the security interest granted hereby; and

(d) Upon termination of this Escrow Agreement, New Flyer will discharge all financing statements and other documents as may have been filed, registered or given in respect of the security interest in and to the ISE Warranty Escrow Fund granted to New Flyer pursuant to this Section 5.4.

5.5. **Dispute as to Entitlement to ISE Warranty Escrow Fund**

If any dispute arises with respect to any payment of or right of possession to the ISE Warranty Escrow Fund, or any portion thereof, pursuant to a Dispute Notice or otherwise (and such dispute remains unresolved fifteen (15) business days after the delivery of such Dispute Notice), or if at any time the Escrow Agent is not able to determine its proper course of action with respect to its obligations hereunder, the Escrow Agent may, at the discretion of the Escrow Agent, submit the dispute to binding arbitration as provided in Section 7, and retain in its possession, without liability to anyone, all or any part of the ISE Warranty Escrow Fund until the dispute has been settled by binding arbitration; and neither the Escrow Agent nor any of its directors, officers, employees or agents will incur any liability for taking or refraining from taking any action described above.

5.6. **Termination**

Upon release and disbursement by the Escrow Agent of all amounts in the ISE Warranty Escrow Fund, this Escrow Agreement will be terminated and the Escrow Agent will be released and discharged from all further obligations hereunder.

6. **ESCROW AGENT**

6.1. **Acceptance**

The Escrow Agent accepts the obligations imposed by this Escrow Agreement and agrees to perform its duties and responsibilities, exercise its rights, powers and

Error! Unknown document property name.

privileges and hold and deal with the ISE Warranty Escrow Fund in accordance with the terms of this Escrow Agreement.

### 6.2.  **Scope of Duties**

The duties and responsibilities of the Escrow Agent under this Escrow Agreement are strictly limited to those specifically set forth in this Escrow Agreement and no unstated duties, responsibilities, functions, obligations or liabilities are to be read into this Escrow Agreement or otherwise exist in respect of the Escrow Agent. If in one or more instances the Escrow Agent takes any action or assumes any responsibility which it is not specifically empowered to take or assume pursuant to the provisions hereof, neither the taking of such action nor the assumption of such responsibility will be deemed to be an express or implied undertaking on the part of the Escrow Agent that it will take the same or similar action or assume the same or similar responsibility in any other instance.

### 6.3.  **Conflict**

The Escrow Agent may comply with any laws, regulations, orders, rules, directions or guidelines (whether or not having the force of law) of competent authorities which conflict, or might conflict, with any duty or responsibility of the Escrow Agent hereunder, and the Escrow Agent will not be liable if it fails to perform or comply with its duties and responsibilities hereunder by reason of any such conflict or potential conflict, whether such conflict or potential conflict is actual or deemed reasonably likely by the Escrow Agent.

### 6.4.  **Assistance**

The Escrow Agent may employ or engage, by contract or otherwise, professional and other consultants and agents, including solicitors and accountants, in order to perform or assist it in the performance of its duties and responsibilities hereunder.

### 6.5.  **Limit on Liability**

None of the Escrow Agent nor any of its directors, officers, employees or agents will incur any liability for any action taken, or omitted to be taken, by it or them in the performance of the duties and responsibilities of the Escrow Agent under this Escrow Agreement or otherwise in connection with this Escrow Agreement unless as a result of its or their wilful default, negligence or fraud. Without limiting the generality of this Section 6.5, the Escrow Agent and its directors, officers, employees and agents, so long as it or they act in good faith:

(a)     Will be fully protected in relying on the opinion, advice, recommendation or statement of any professional or other consultant or agent employed or engaged by the Escrow Agent pursuant to Section 6.4 and will not be responsible for, or in respect of, the negligence or misconduct of any such consultant or agent;

(b)     Will not be bound to act in accordance with any direction, notice, order or request other than a written direction, written notice, written order or written request and the Escrow Agent will be fully empowered to act and will be fully protected from all liability in acting upon any written direction, written notice, written order,

**Error! Unknown document property name.**

written request or other instrument or document believed by the Escrow Agent to be genuine;

(c)     Will not be required to verify the facts or statements set out in any written notice, written order, written request or other instrument or document delivered to it but may assume such facts and statements are correct and accurate; and

(d)     Will not be required to incur any expenditure pursuant to the provisions of this Escrow Agreement unless and until an amount in cleared funds sufficient to meet such expenditure has been provided to the Escrow Agent for that purpose.

## 6.6.   **Standard of Care**

In the performance of its duties and responsibilities hereunder and the exercise of its rights, powers and privileges hereunder, the Escrow Agent will exercise that degree of care, diligence and skill that a prudent escrow agent would exercise in comparable circumstances.

## 6.7.   **Transactions with Parties**

The Escrow Agent may, to the extent permitted by law, generally contract and enter into financial transactions with ISE, New Flyer or any other person without being liable to disclose to any other of them the existence thereof or to account for any profits made thereby.

## 6.8.   **Successor Provisions**

(a)     The Escrow Agent may resign and be discharged from all of its duties and responsibilities hereunder at any time by giving at least 90 days' prior notice in writing thereof to ISE and New Flyer.

(b)     ISE and New Flyer will appoint a successor escrow agent promptly after notice of resignation is given. In the event that a successor escrow agent is not appointed within 90 days after such notice of resignation is given, the Escrow Agent may apply to the Court for appointment of a successor escrow agent. Unless otherwise agreed to in writing by ISE and New Flyer, any successor escrow agent appointed under this Section 6.8 will be a corporation authorized to carry on the business of a trust company in the State of Minnesota.

(c)     Any successor escrow agent appointed hereunder will execute an instrument accepting such appointment and thereupon such successor escrow agent, without further act, deed or conveyance, will become vested with all the estates, properties, rights, powers, privileges and trust of the resigning escrow agent, with like effect as if originally named as the Escrow Agent herein, but nevertheless the resigning escrow agent will execute and deliver an instrument or instruments assigning and transferring to such successor escrow agent all the rights, powers, privileges and trust of the resigning escrow agent hereunder and duly assign, transfer and deliver to such successor escrow agent the ISE Warranty Escrow Fund (if not released and disbursed in full prior to such time) and all deposits, instruments and money comprised therein. Should any agreement be required by any successor escrow agent for more fully and certainly vesting in and confirming

Error! Unknown document property name.

to it such estates, properties, rights, powers, privileges and trust in writing, such agreement will on request of such successor escrow agent be made, executed and delivered by ISE and New Flyer.

(d) Any corporation into which the Escrow Agent may be merged or with which it may be consolidated or amalgamated, or any corporation resulting from any merger, consolidation or amalgamation of which the Escrow Agent is a party, will be the successor escrow agent under this Escrow Agreement without the execution of any instrument or any further act.

(e) ISE and New Flyer may by giving not less than 30 days' prior written notice to the Escrow Agent, which written notice will state the effective date of such removal, remove the Escrow Agent and appoint in substitution therefore a successor escrow agent, in which event the provisions of Section 6.8(c) hereof will apply, *mutatis mutandis.*

(f) Any resignation pursuant to Section 6.8(a) or removal pursuant to Section 6.8(e) will become effective upon acceptance of its appointment hereunder by a successor escrow agent in accordance with Section 6.8(c).

(g) In the event of any resignation or replacement of the Escrow Agent hereunder, the Parties will make such arrangements and do such things as are reasonably necessary to preserve the integrity of the ISE Warranty Escrow Fund.

### 6.9. **Remuneration and Indemnity of Escrow Agent**

(a) Except as provided in Section 6.9(b), all fees and expenses of the Escrow Agent in connection with the performance of its duties under this Escrow Agreement (including, without limitation, reasonable remuneration to persons employed or engaged by the Escrow Agent pursuant to Section 6.4) will be borne and promptly paid out by ISE, pursuant to schedule A, attached.

(b) In the event the Escrow Agent submits any dispute to binding arbitration as provided in Section 5.5, ISE and New Flyer will each promptly pay 50% of the Escrow Agent's reasonable arbitration expenses (including, without limitation, reasonable attorney fees).

(c) New Flyer and ISE will hold the Escrow Agent harmless and indemnify the Escrow Agent against any losses, liabilities, reasonable expenses (including legal fees and expenses), claims, damages or demands (collectively, "**Losses**") arising out of or in connection with the performance of its obligations in accordance with the provisions of this Escrow Agreement, except for Losses arising out of Escrow Agent's wilful default, negligence or fraud. The indemnities in this Section will survive for a period of six years following the resignation of the Escrow Agent or the termination of this Escrow Agreement, which ever is the earlier to occur.

## 7. **ARBITRATION**

The Parties will attempt, in good faith, to resolve any controversy, claim, or dispute arising out of this Escrow Agreement through negotiations. In the event that negotiations

Error! Unknown document property name.

are not successful, the controversy, claim, or dispute will be submitted first to, and settled by the United States Bankruptcy Court for the Southern District of California (San Diego) (the "Bankruptcy Court"), and if the Bankruptcy Court has not retained or does not have jurisdiction over the matter, then upon written demand by any Party, by binding arbitration in Los Angeles, California. The arbitration shall be pursuant to the Commercial Arbitration Rules then in effect of the American Arbitration Association. The merits of the dispute shall, in each and all cases, be resolved in accordance with the laws of the State of Minnesota. The Parties expressly intend that the United Nations Convention on Contracts for the International Sale of Goods shall not apply to this Agreement or their rights or obligations thereunder. The arbitration shall be conducted by an arbitration panel consisting of three (3) arbitrators, each of whom shall be knowledgeable in the subject matter hereof. Each Party shall select one of the arbitrators, and the two selected arbitrators shall select the third arbitrator. The arbitrators will provide a written explanation to the Parties of any arbitration award. Any decision rendered by the arbitration panel shall be binding, final and conclusive upon the Parties, and a judgement thereon may be entered in, and enforced by, any court having jurisdiction over the Party against which an award is entered or the location of such Party's assets, and the Parties hereby irrevocably waive any objection to the jurisdiction of such courts based on any ground, including improper venue or forum non-conveniens. The Parties submit to the jurisdiction of the United States Bankruptcy Court for the Southern District of California (San Diego). Except where clearly prevented by the subject matter of the dispute, both Parties shall continue performing their respective obligations under this Escrow Agreement while this dispute is being resolved. The Parties and the arbitration panel shall be bound to maintain the confidentiality of this Escrow Agreement, the dispute, and any award, except to the extent necessary to enforce any such award or as required by applicable law. The prevailing Party, if a Party is so designated in the arbitration award, shall be entitled to recover from the other Party it's costs and fees, including attorneys' fees, associated with such arbitration.

8.    **GENERAL**

8.1.   **Notice**

Any notice, demand, request or communication required or permitted to be given under this Escrow Agreement will be in writing and delivered to the party hereto to which it is to be given as follows:

(a)    If to ISE:

    12302 Kerran Street
    Poway, California, USA
    92064
    Attention: Richard Sander, President & Chief Executive Officer

    Fax No. (858) 413-1733

(b)    With a copy to:

    12302 Kerran Street
    Poway, California, USA
    92064
    Attention: Justin Spragg, Vice President & General Counsel

    Fax No. (858) 413-1731

(c)    If to New Flyer:

    c/o 711 Kernaghan Avenue
    Winnipeg, Manitoba, Canada
    R2C 3T4

    Attention: Glenn Asham, Chief Financial Officer

    Email: Glenn_Asham@newflyer.com
    Fax No.: (204) 224-6652

(d)    With a copy to:

    c/o 711 Kernaghan Avenue
    Winnipeg, Manitoba, Canada
    R2C 3T4

    Attention: Colin Pewarchuk, Executive Vice President, General Counsel

    Email: Colin_Pewarchuk@newflyer.com
    Fax No.: (204) 224-6652

(e)    If to the Escrow Agent:

    Marshall & Ilsley Trust Company N.A.
    651 Nicollet Mall, Suite 301
    Minneapolis, Minnesota
    55402

    Attention: David B. Preiner
    Fax: 612-904-8008

Error! Unknown document property name.

Or to such other address as a party hereto may specify by notice given in accordance with this Section 8.1. Any notice required or permitted by this Escrow Agreement must be in writing, in the English language, and shall be delivered as follows, with notice deemed given as indicated: (i) by Federal Express or other overnight courier, upon written verification of receipt as evidenced by the courier's delivery record; (ii) by hand deliver, upon delivery; or (iii) by certified or registered mail, return receipt requested, upon verification of receipt.

8.2.   **Governing Law**

This Escrow Agreement will be governed by and construed according to the laws of the State of Minnesota.

8.3.   **Counterparts**

This Escrow Agreement may be executed in any number of counterparts and all such counterparts taken together will be deemed to constitute one and the same instrument.

8.4.   **Jurisdiction**

Any action brought by any party hereto with respect to this Escrow Agreement will be submitted to binding arbitration as provided in Section 5.5 and Section 7.

8.5.   **Assignment**

This Escrow Agreement will not be assigned by any of the parties hereto without the prior consent of the other parties hereto and will be binding upon, and enure to the benefit of, the parties hereto and their respective successors and permitted assigns.

8.6.   **Amendment**

This Escrow Agreement will not be amended, modified, altered or revoked without the prior written consent of each of the Parties and Escrow Agent.

8.7.   **Headings**

Section headings used herein are for convenience of reference only and will not be deemed to constitute a part of this Escrow Agreement for any other purpose, or to limit, characterize or in any way affect any provision of this Escrow Agreement, and all provisions of this Escrow Agreement will be enforced as if such headings had not been included herein.

8.8.   **Facsimile Signatures**

This Escrow Agreement, and any amendments hereto, to the extent signed and delivered by means of electronic transmission, will be treated in all manner and respects as an original contract and will be considered to have the same binding legal effects as if it were the original signed version thereof delivered in person. At the request of any party hereto, each other party hereto will re-execute original forms hereof and deliver them to all other parties hereto. No party hereto will raise the fact that any signature was

Error! Unknown document property name.

transmitted or communicated by electronic transmission as a defence to the formation of a contract and each such party hereto forever waives any such defence.

8.9.    **Business Days**

To the extent any payment or other action or delivery is required to be made on a day which is not a business day, then the period required for such payment, action or delivery, will automatically be extended to the next business day immediately following; "**business day**" means Monday through Friday, except for U.S. federal holidays.

\*\*\*signature pages follow\*\*\*

Error! Unknown document property name.

**IN WITNESS WHEREOF**, ISE, New Flyer and Escrow Agent have executed this Escrow Agreement on the date first written above.

**NEW FLYER INDUSTRIES CANADA ULC**          **NEW FLYER OF AMERICA INC.**

Per: _____          Per: _____
Name: Glenn Asham                         Name: Glenn Asham
Title:   Chief Financial Officer          Title:   Chief Financial Officer
    I have the authority to bind the corporation.       I have the authority to bind the corporation.

**ISE CORPORATION**

Per: _____
Name: Richard Sander
Title:   President and Chief Executive Officer
    I have the authority to bind the corporation.

**MARSHALL & ILSLEY TRUST COMPANY N.A.**

Per: _____
Name: David B. Preiner
Title:   Vice President
    I have the authority to bind the corporation.

Error! Unknown document property name.

## SCHEDULE A

### ESCROW AGREEMENT
### FEE SCHEDULE

**Escrow agent account charge (per account):**          $1,500 annually / $375
per quarter*
**Transaction/wire/check fee:**                          Waived

\*    *Fees pro-rated per quarter and billed quarterly*
*NOTE:   Fee Schedule assumes all deposits held in the M&I Prime Money Market Fund*

## Services included in the above fees:

- Annual account maintenance charge
- Acceptance and Set-Up Fee
- Escrow agent charges
- Transactions / securities settlement charges
- Wire / Cash movement charges
- Portfolio Online – 24/7 online viewing access
- Statement / Reporting services
- Designated Service Team access
- Assistance in drafting escrow document / ongoing maintenance
- Extension revisions (if necessary)

Error! Unknown document property name.