1  MARC J. WINTHROP -- State Bar No. 63218
   mwithrop@winthropcouchot.com
2  GARRICK A. HOLLANDER -- State Bar No. 166316
   ghollander@winthropcouchot.com
3  PAYAM KHODADADI -- State Bar No. 239906
   pkhodadadi@winthropcouchot.com
4  **WINTHROP COUCHOT**
   **PROFESSIONAL CORPORATION**
5  660 Newport Center Drive, Ste 400
   Newport Beach, CA 92660
6
7  Telephone:  (949) 720-4100
   Facsimile:  (949) 720-4111
8
   [Proposed] General Insolvency Counsel for
9  Debtor and Debtor-in-Possession

10

11              **UNITED STATES BANKRUPTCY COURT**

12              **SOUTHERN DISTRICT OF CALIFORNIA**

13

14  In re:                                 Case No. 10-14198-11MM

15  ISE CORPORATION,                       Chapter 11 Proceeding

16                                         **APPLICATION OF DEBTOR AND DEBTOR-
                                            IN-POSSESSION FOR AUTHORITY TO**
17              Debtor and                 **EMPLOY SSG CAPITAL ADVISORS, LLC
                Debtor-in-Possession.       AND CABRILLO BROKER, LLC, AS THE**
18                                         **DEBTOR'S INVESTMENT BANKERS;
                                            MEMORANDUM OF POINTS AND**
19                                         **AUTHORITIES; AND DECLARATIONS OF
                                            DAVID L. MORASH, MICHAEL S.**
20                                         **GOODMAN AND WADE HANSEN IN
                                            SUPPORT THEREOF**
21
22                                         [11 U.S.C. §§ 327 and 328]

23                                         [No Hearing Requested]

24

25

26

27

28

MAINDOCS-#151800-v3-ISE_App_Emp_SSG.DOC

1    ISE Corporation, a California corporation ("Debtor"), hereby applies ("Application") to

2    this Court for an order authorizing it to employ SSG Capital Advisors, LLC ("SSG") and Cabrillo

3    Broker, LLC ("Cabrillo", and together with SSG, the "Firms") as its investment bankers to assist

4    the Debtor with the sale of substantially all of Debtor's assets.  This Application is made and

5    based upon the attached Memorandum of Points and Authorities, the Declarations of David L.

6    Morash (the "Morash Declaration"), Michael S. Goodman (the "Goodman Declaration") and

7    Wade Hansen (the "Hansen Declaration"), and upon any additional evidence, both oral and

8    documentary, that may be presented to the Court at or before the time of the hearing on this

9    Application, if any should be held on this Application.

10                                          **I.**

11                            **STATEMENT OF FACTS**

12       **A.       The Debtor**.

13       The Debtor is a California corporation with its corporate office located in Poway,

14   California.  The Debtor was incorporated in January 1995.  The Debtor is a developer,

15   manufacturer and distributor of heavy duty hybrid-electric drive systems based on the Debtor's

16   core proprietary technology, which is focused on three critical subsystems: energy storage,

17   controls software and power electronics.  These core technologies and subsystems are critical for

18   hybrid or all-electric vehicles to achieve the most efficient management of energy.

19       On August 10, 2010 ("Petition Date"), the Debtor filed its petition for relief under

20   Chapter 11 of the Bankruptcy Code.   Since the Petition Date, the Debtor has managed its affairs

21   as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

22       **B.       Need for the Firms' Employment**.

23       The Debtor requires the Firms to serve as its investment bankers to assist the Debtor with

24   identifying prospective buyers, effecting a sale of substantially all of the Debtor's assets, and

25   consummating a sale.  As a result, the Debtor seeks to employ the Firms, effective as of

26   September 9, 2010, in accordance with the terms of, the engagement agreement among the

27   Debtor, SSG and Cabrillo, dated September 9, 2010 (the "Engagement Agreement"), a true and

28   correct copy of which is attached as Exhibit "1" to the Morash Declaration.

MAINDOCS-#151800-v3-ISE_App_Emp_SSG.DOC

1  **C.    The Firms' Qualifications**.

2  The Debtor has selected the Firms based on the Firms' experience and expertise in

3  providing investment banking services in chapter 11 cases.

4  **1.    SSG.**

5  SSG's investment banking professionals have extensive experience in advising

6  debtors in chapter 11 cases and have served as investment bankers to numerous debtors,

7  Chapter 11 trustees, creditors' committees, and buyers in Chapter 11 proceedings,

8  including, but not limited to, Goldman Industrial Group, Langston, CanFibre, U.S.

9  Wireless, Network Access Solutions, Coram, AstroPower, Glass Group, Imperial Home

10  Décor Group, Summit Metals, Miix Insurance, American Business Financial Services,

11  Diamond Glass, Inc., Boscov's Inc., Zestra Laboratories, Inc., Nobex, Corp.,

12  Pharmaceutical Formulations, Inc., BT Tires Group Holding, LLC, Ritz Camera Centers,

13  Inc., Joann Fabrics Corporation, Congoleum, Country Home Bakers, AG Industries,

14  WorldClass Processing, Trade Secret, PCAA, Aerothrust, and others.  SSG's senior

15  professionals have worked together for over 10 years focusing exclusively on special

16  situations investment banking and have closed over 150 special situations transactions in

17  that time.   SSG has offices outside of Philadelphia and in New York.

18  **2.    Cabrillo.**

19  Cabrillo is a southern California based investment banking firm.  Cabrillo has a

20  strong local presence in San Diego and it has a strong track record working with both

21  small cap public and private companies in the middle-market to provide high-quality

22  mergers, acquisitions and capital raising expertise.  Cabrillo has worked with numerous

23  companies in the high-tech sector including HCL Cleantech, Reaction Design, Hydro

24  Point Data Systems, Sunrise Telecom, Bakbone Software, Naspers, Ancept Media Server,

25  and SoftBrands.  Cabrillo's leadership team has a diverse experience, including strategy

26  consulting, investment banking, and private equity investing.

27  **D.    Services to Be Rendered**.

28

MAINDOCS-#151800-v3-ISE_App_Emp_SSG.DOC

1    The Debtor requires the Firms to render to the Debtor the following types of professional
2    services:

3    • Prepare an information memorandum describing the Debtor, its historical
4    performance and prospects, including existing contracts, marketing and sales, labor
5    force, management and anticipated financial results of the Debtor;

6    • Assist the Debtor in developing a list of suitable potential buyers for the Debtor
7    who will be contacted on a discreet and confidential basis after approval by the
8    Debtor;

9    • Coordinate the execution of confidentiality agreements for potential buyers
10    wishing to review the information memorandum;

11    • Coordinate the data room and the due diligence investigations of potential buyers;

12    • Assist the Debtor in coordinating site visits for interested buyers of the Debtor and
13    work with the management team to develop appropriate compensation for such
14    visits;

15    • Solicit competitive offers from potential buyers;

16    • Evaluate proposals received from potential buyers;

17    • Advise and assist the Debtor in structuring the transaction and negotiating the
18    transaction agreements for the sale of the Debtor's assets;

19    • Provide testimony on behalf of the Debtor related to the sale process of the
20    Debtor's assets or any other matter related to the Firm's investment banking
21    assignment for the Debtor; and

22    • Otherwise assist the Debtor, its attorneys and accountants, as necessary through the
23    closing of the sale of the Debtor's assets on a best effort basis.

24    E.    **Terms of the Proposed Employment**.

25    The following is a summary of material terms of the Engagement Agreement:

26    1.    **Compensation.**

27

28

-4-

1                    a.      Initial Fee.  An initial fee (the "Initial Fee") equal to $25,000, due

2             upon Bankruptcy Court approval of this Application *nunc pro tunc* to the date of

3             the execution of the Engagement Agreement;

4                    b.      Monthly Fees.  Monthly fees (the "Monthly Fees") of $25,000

5             beginning October 1, 2010 and payable on the first (1st) of each month thereafter

6             during the term of the Engagement Agreement;

7                    c.      Sale Fee.  Upon the closing of a sale of substantially all of the

8             Debtor's assets, either through a plan of reorganization or pursuant to Section 363

9             of the Bankruptcy Code, the Debtor shall pay the Firm a fee payable in cash, an

10           amount equal to the greater of (a) $550,000 or (b) 5.0% of the sale amount.

11                  d.      Expenses.  The Debtor will reimburse the firms, on a monthly basis,

12           all of the Firms' reasonable out-of-pocket expenses with respect to its services for

13           the Debtor, up to an aggregate maximum amount (for all monthly periods

14           collectively) of $25,000.

15                 e.      Sharing of Compensation.  Pursuant to an agreement between SSG

16           and Cabrillo, the foregoing fees will be shared between the two Firms by SSG

17           receiving sixty percent (60%) of the fees and Cabrillo receiving forty percent (40%)

18           of the fees.

19                 f.      Termination.  The Engagement Agreement shall remain in effect for

20           four months from September 9, 2010, and may be terminated thereafter by either

21           party upon thirty (30) days prior notice to the other.

22     The Debtor has agreed to fund, on a monthly basis, subject to the Debtor's right to use

23  cash collateral, an amount equal to the monthly fees and expenses.  In connection therewith, the

24  Firms request that they be authorized to obtain monthly fees and expenses from the Debtor.

25     The Firms will hold any funds paid by the Debtor pursuant to this paragraph in trust

26  pending the Firms' compliance with the monthly Professional Fee Statement procedure set forth

27  below.  The Firms will file with the Court monthly Professional Fee Statements, attaching a copy

28  of each Firm's monthly invoice with respect to fees for professional services rendered to the

MAINDOCS-#151800-v3-ISE_App_Emp_SSG.DOC

1  Debtor, and for reimbursement of expenses incurred on behalf of the Debtor, and serve copies of

2  such invoice on the Debtor, the Office of the United States Trustee, and all creditors and parties in

3  interest entitled to notice. If no written objection is filed with respect to the amount of either

4  Firm's monthly invoice within ten (10) days after the service of such invoice on the various

5  parties-in-interest, the Debtor shall pay the monthly invoice. If a written objection to either

6  Firm's monthly invoice is filed by a party-in-interest, the Debtor will refrain from paying the

7  disputed portion, or if such portion cannot be determined, then the Debtor shall refrain from

8  paying the entire invoice until the Court has resolved the objection. The Firms may file an

9  application with the Court seeking allowance of its fees and costs incurred to date and paid

10  pursuant to such monthly payment procedure.

11      Each Firm intends to apply to this Court for compensation in conformity with the

12  requirements of Bankruptcy Code Sections 328, 330 and 331. Each Firm understands that any

13  compensation in this case to be paid from funds that are property of the Debtor's estate is subject

14  to approval of this Court. No funds paid to the Firms pursuant to the proposed monthly payment

15  procedure will be deemed to be allowed by the Court. All funds paid to the Firms pursuant to the

16  proposed monthly payment procedure will be subject to allowance by the Court, upon appropriate

17  application and noticed hearing.

18      At the conclusion of this case, each Firm will file an appropriate application seeking final

19  allowance of all fees and costs, regardless of whether interim compensation has been paid to such

20  Firm. Upon allowance of such fees and costs, the Debtor will pay to such Firm the difference

21  between the amounts allowed to such Firm and any interim compensation paid to such Firm.

22      The Debtor and each Firm understand and agree that the proposed compensation

23  arrangement is subject to the provisions of Section 328 of the Bankruptcy Code, which authorizes

24  this Court to allow compensation different from what is provided herein if the fee arrangement

25  provided for herein appears, in retrospect, to have been improvident in light of developments

26  unanticipated at the outset of this case. [11 U.S.C. §328(a)]. Each Firm understands and agrees

27  that, if aggregate interim payments made to such Firm exceed the amount that is ultimately

28

-6-

1   allowed to such Firm, such Firm will be required to, and will, promptly repay to the Debtor such

2   difference.

3   **F.    Disclosure of Relationship with the Firms**.

4       **1.    SSG**.

5       As set forth in the Goodman Declaration, SSG has conducted a conflicts check on

6   the Debtor's creditors. Based on the results of the conflicts search conducted to date, SSG

7   believes that SSG does not, insofar as SSG has been able to ascertain: (a) hold or represent

8   any interest adverse to the Debtor's estate that would impair SSG's ability to objectively

9   perform professional services for the Debtor, in accordance with Section 327 of the

10  Bankruptcy Code; or (b) have any connection with creditors and other parties-in-interest

11  relating to the Debtor or this Chapter 11 case.

12  To the best of SSG's knowledge, neither SSG nor any of its professionals:

13      a.    is a creditor, an equity security holder, or an insider of the Debtor as

14  of the Petition Date;

15      b.    is or was, within two years before the Petition Date, a director,

16  officer or employee of the Debtor; and

17      c.    has an interest materially adverse to the interest of the estate or of

18  any class of creditors or equity security holders, by reason of any direct or indirect

19  relationship to, connection with or interest in the Debtor or for any other reason.

20      None of the members comprising or employed by SSG is related to any judge of

21  the United States Bankruptcy Court for the Central District of California, the U.S. Trustee,

22  or to any person employed by the U.S. Trustee. SSG has agreed not to share with any

23  person or entity any compensation received by SSG in this case, except as among the

24  members of SSG and with Cabrillo, as described herein.

25      **2.    Cabrillo**.

26      As set forth in the Hansen Declaration, Cabrillo has conducted a conflicts check on

27  the Debtor's creditors. Based on the results of the conflicts search conducted to date,

28  Cabrillo believes that Cabrillo does not, insofar as Cabrillo has been able to ascertain:

MAINDOCS-#151800-v3-ISE_App_Emp_SSG.DOC

(a) hold or represent any interest adverse to the Debtor's estate that would impair Cabrillo's ability to objectively perform professional services for the Debtor, in accordance with Section 327 of the Bankruptcy Code; or (b) have any connection with creditors and other parties-in-interest relating to the Debtor or this Chapter 11 case.

To the best of Cabrillo's knowledge, neither Cabrillo nor any of its professionals:

        a.     is a creditor, an equity security holder, or an insider of the Debtor as of the Petition Date;

        b.     is or was, within two years before the Petition Date, a director, officer or employee of the Debtor; and

        c.     has an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with or interest in the Debtor or for any other reason.

None of the members comprising or employed by Cabrillo is related to any judge of the United States Bankruptcy Court for the Central District of California, the U.S. Trustee, or to any person employed by the U.S. Trustee.  Cabrillo has agreed not to share with any person or entity any compensation received by Cabrillo in this case, except as among the members of Cabrillo and with SSG, as described herein.

## II.

## THE BANKRUPTCY CODE AUTHORIZES THE

## DEBTOR TO EMPLOY PROFESSIONALS

Section 327 of the Bankruptcy Code, which governs employment of professional persons, provides, in pertinent part, as follows:

> . . . the trustee[1], with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a).

---

[1] Except for certain limitations not applicable here, a debtor has all of the rights and powers of, and performs all of the functions and duties of, a trustee in a Chapter 11 case.  11 U.S.C. § 1107(a).

MAINDOCS-#151800-v3-ISE_App_Emp_SSG.DOC

1   Fed. R. Bankr. P. 2014 mandates that a professional seeking approval of its employment

2   by the bankruptcy estate disclose "any proposed arrangement for compensation" and "all of the

3   person's connections with the Debtor, creditors, any other party in interest, their respective

4   attorneys and accountants, [and] the United States Trustee." All facts pertinent to a court's

5   determination of whether the professional is disinterested or holds an interest adverse to the estate

6   must be disclosed. The professional is required to make a full, candid and complete disclosure in

7   its application for employment. *See In re Lotus Properties LP*, 200 B.R. 388, 391 (Bankr. C.D.

8   Cal. 1996) (*citing In re Park Helena Corp.,* 63 F.3d 877, 880-82 (9th Cir. 1995)); *In re Gire*, 107

9   B.R. 739, 746 (Bankr. E.D. Cal. 1989); Fed.R.Bankr.P. 2014.

10   **A.    The Firms Do Not Hold an Interest Adverse to the Estate.**

11   The phrase "adverse interest" is not statutorily defined. However, courts have stated that a

12   party will be deemed to hold or represent an "adverse interest" to the estate when it: (1) possesses

13   or asserts any economic interest that would tend to lessen the value of the bankruptcy estate or that

14   would create an actual or potential dispute in which the estate is a rival claimant; or (2) possesses a

15   predisposition under circumstances that render such a bias against the estate. *Tevis v. Wilke,*

16   *Fleury, Hoffelt, Gould & Birney (In re Tevis)*, 347 B.R. 647, 688 (9th Cir. BAP 2006); *In re Lee*,

17   94 B.R. 172, 177 (Bankr. C.D. Cal. 1989). Here, neither the Firms nor any professionals who are

18   members of the Firms possess or assert an economic interest that would tend to lessen the value of

19   the estate or that would create an actual or potential dispute against the estate or has a

20   predisposition that will create a bias against the estate. Accordingly, the Firms do not hold an

21   interest adverse to the estate.

22   **B.    The Firm is Disinterested.**

23   "Disinterested persons" are defined in Section 101(14) as follows:

24   "disinterested person" means [a] person that -
        (A) is not a creditor, an equity security holder, or an insider;
25      (B) is not and was not, within 2 years before the date of the filing of the
26   petition, a director, officer, or employee of the debtor; and
        (C) does not have an interest materially adverse to the interest of the estate or
27   of any class of creditors or equity security holders, by reason of any direct or
28   indirect relationship to, connection with, or interest in, the Debtor . . . or for any
      other reason . . .

-9-

1  11 U.S.C. § 101(14).

2      Based on the disclosure made herein, the Firms are disinterested.

3      **C.     The Firm's Employment Should Be Approved.**

4      Based on the foregoing and the disclosure made herein, which satisfies the disclosure

5  requirements imposed by the Bankruptcy Code, Fed. R. Bankr. P. 2014 and Local Bankruptcy

6  Rule 2014-1, each Firm has met the required standards for employment in this case.  Accordingly,

7  this Court may authorize the proposed employment of the Firms as an investment bankers to the

8  Debtor pursuant to Bankruptcy Code Section 327(a).

9                                **III.**

10      **THE MONTHLY PAYMENT PROCEDURE PROPOSED BY THE**

11      **FIRM IS APPROPRIATE AND SHOULD BE APPROVED BY THIS COURT**

12      Professionals can be compensated in accordance with monthly payment procedures

13  without a bankruptcy court's prior allowance of the professional's fees and costs.  *In re Knudsen*,

14  84 B.R. 668 (Bankr. 9th Cir. 1988); *In re Lotus Properties LP*, 200 B.R. at 396-98.  In *Knudsen*,

15  the Ninth Circuit Bankruptcy Appellate Panel ("BAP") reasoned that, since Section 328(a) of the

16  Bankruptcy Code allows a bankruptcy court to authorize professionals to receive as compensation

17  a retainer, which contemplates payment of a lump sum at the beginning of a case or periodically

18  thereafter, "[i]t makes little sense that the court could allow payment of a lump sum or periodic

19  retainer before fees are earned, but not after."  *Id.* at 671.  The circumstances under which such

20  arrangements may be approved, as articulated by the BAP in Knudsen, are as follows: (1) the case

21  is unusually large; (2) an extended waiting period for payment would place an undue hardship on

22  counsel; (3) counsel can respond to any reassessment; and (4) the payment procedure itself is

23  subject to a noticed hearing.  *Id.* at 672-73.  The Firms believe that the proposed monthly payment

24  procedure in this case is appropriate under Sections 328(a), 330 and 331 of the Bankruptcy Code,

25  and is consistent with the BAP's decision in the *Knudsen* case.

26      The fact that the Debtor's case may not be as large as the *Knudsen* case should not

27  preclude the Firms from being able to obtain monthly payment of its fees and costs in the

28  Debtor's case.  *See Lotus Properties*, 200 B.R. 388 at 397-398 (the "message" behind *Knudsen*

-10-

1    and the intent of the U.S. Trustee Guidelines are satisfied by allowing counsel to obtain monthly

2    post-petition payments, notwithstanding the fact that the size of Chapter 11 case is smaller than

3    *Knudsen*). Similarly, in *In re Jefferson Business Center Associates*, the bankruptcy court stated

4    as follows:

5         "While it is often the case that post-petition Retainer and the ability to draw
         against such Retainer are granted in large bankruptcy case, and usually to large
6         law firms, this Court sees no reason to treat smaller law firms any differently
         where the facts and circumstances of the case warrant the payment of a post-
7         petition retainer. A smaller law firm can and often does face the same, or
         perhaps greater, burdens, costs, inconvenience, and financial strain, as does a
8         larger firm if it is unable to receive a retainer. A small firm should not be
         treated any differently, as long as it meets all of the criteria referenced above."
9
10   *Jefferson Business Center Associates*, 135 B.R. at 680.

11        **A.    Requiring The Firm To Wait An Extended Period Of Time For Payment Of**
               **Its Fees In The Debtor's Case May Cause Undue Hardship To The Firm.**
12
13        As described above, the Firms have requested an initial fee in the amount of $25,000, and

14   to receive $25,000 per month, starting on October 1, 2010. Without receiving the monthly

15   compensation, the Firms may suffer undue hardship. The Firms anticipate that the Firms will be

16   required to devote significant time to assisting the Debtor in this Chapter 11 with respect to the

17   services described above, and therefore, the Debtor's efforts to maximize value in this case will

18   require substantial involvement by the Firms.

19        In addition to the foregoing, the nature of the Debtor's financial affairs supports the

20   approval of monthly payment procedures in this case. The Debtor cannot afford to linger in

21   Chapter 11 for any period of time. The Firms will need to devote substantial time and resources to

22   the Debtor's case, without monthly payment procedures, the Firms' fees will be "at risk." The

23   Firms should not be required to effectively finance the administration of the Debtor's case.

24        Due to the nature of the required commitment of the Firms' resources to the Debtor's case,

25   requiring the Firms to wait for periods of at least 120 days to obtain payment of its fees pursuant to

26   Section 331 of the Bankruptcy Code may place undue hardship on the Firms. It would be

27   burdensome for the Firms if they were effectively required to "finance" the Debtor's

28   reorganization efforts in this case, at the Firms' financial risk. A monthly payment arrangement is

-11-

1  necessary to ameliorate the financial hardships that otherwise would be imposed upon the Firms in
2  this case.

3  **B.      The Firm Will Be Able To Respond To Any Reassessment Of Fees Ordered**
4  **By This Court.**

5  As set forth in the Goodman Declaration and the Hansen Declaration, each Firm will be
6  able to respond to any order entered by this Court reassessing fees paid to such Firm pursuant to
7  the requested monthly payment procedure.  Each Firm and the members of each Firm have the
8  ability to respond to any such reassessment of fees paid to such Firm.  Each Firm is familiar with
9  the Chapter 11 process, understands that its ultimate compensation in this case is subject to the
10  provisions of Sections 330 and 331 of the Bankruptcy Code, and is prepared to respond to any
11  such reassessment.  In short, each Firm's longevity and financial stability attest to the fact that
12  such Firm will be able to respond to any Court-ordered reassessment of fees in these case.

13  **C.      The Fee Procedures Will Be The Subject Of Notice to Creditors.**

14  As is evidenced by the proof of service submitted concurrently with the Notice to
15  Creditors of this Application, notice of the monthly payment procedures requested by this
16  Application was provided to Debtor's secured creditors, the committee of creditors holding
17  unsecured claims (the "Committee"), to all parties who requested special notice and to the U.S.
18  Trustee's Office.  Such parties have been provided with an opportunity to obtain a hearing on
19  this Application if they object to the relief requested hereby.

20  The monthly payment procedure provided for by this Application is very similar to the
21  monthly payment procedure approved by the BAP in the *Knudsen* case and meets the
22  requirements established by the BAP in the *Knudsen* case for authorizing monthly payment
23  procedures.  First, the monthly payment procedure provided for by this Application allows for
24  ample scrutiny of each Firm's fees and costs by creditors and by this Court.  The fees and costs
25  paid to the Firms on a monthly basis are not automatically deemed allowed by this Court.
26  Instead, each Firm is required to apply for allowance of its fees and costs in accordance with the
27  requirements of the Bankruptcy Code.  The scrutiny of each Firm's fees by creditors and this
28  Court, therefore, remains undiminished by the monthly payment procedure proposed herein.

MAINDOCS-#151800-v3-ISE_App_Emp_SSG.DOC

1    Second, in the event that any fees and costs paid on a monthly basis to either Firm are not

2    ultimately allowed by this Court, such Firm can and will repay to the Debtor the amount thereof.

3        By virtue of the foregoing, the Debtor believes that the monthly payment procedure

4    provided for by this Application satisfies the requirements articulated by the *Knudsen* decision.

5                              **IV.**

6        **NOTICE OF THE APPLICATION IS APPROPRIATE, AND NO**

7        **FURTHER HEARING IN RESPECT OF THE APPLICATION IS**

8        **REQUIRED, UNLESS SUCH HEARING IS ORDERED BY THIS**

9        **COURT OR SPECIFICALLY REQUESTED BY A PARTY-IN-INTEREST**

10        Notice of the relief requested by this Application has been provided to the secured

11    creditors, the Committee, U.S. Trustee's Office, and any other party in interest entitled to notice

12    under Fed. R. Bankr. P. 2002.  The Office of the United States Trustee and other above listed

13    parties have been afforded an opportunity to object to the Application and request a hearing on this

14    Application, should they object to the relief requested hereby.  Consequently, the Firm has

15    complied fully with the applicable federal and local rules.

16                              **V.**

17                    **CONCLUSION**

18        Based upon the foregoing, the Debtor respectfully submits that good cause exists for this

19    Court to enter an order:

20          1.       Authorizing the Debtor, based upon the foregoing and pursuant to

21    Sections 327(a) and 328(a) of the Bankruptcy Code and Rule 2014(a) of the Federal Rules

22    of Bankruptcy Procedure, to employ the Firms as its investment advisors, effective as of

23    September 9, 2010, with compensation of the Firms to be in accordance with the terms set

24    forth herein;

25          2.       Authorizing the Firms to obtain monthly compensation of its fees and costs

26    in the Debtor's case in accordance with the terms set forth herein;

27          3.       Authorizing the Firms' employment pursuant to the terms of the

28    Engagement Agreement; and

1         4.    Granting to the Firms such other and further relief as the Court deems just

2    and appropriate.

3    DATED:  September 29, 2010      **ISE CORPORATION**

4

5                                          By:_____

6                                           David L. Morash, its Chief Financial Officer

7    **PRESENTED BY**:

8    **WINTHROP COUCHOT**
     **PROFESSIONAL CORPORATION**

9

10   By:___/s/ Marc J. Winthrop_____
            Marc J. Winthrop

11          Garrick A. Hollander
            Payam Khodadadi

12   [Proposed] General Insolvency Counsel
     for Debtor and Debtor-in-Possession

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-14-

MAINDOCS-#151800-v3-ISE_App_Emp_SSG (2).DOC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## DECLARATION OF DAVID L. MORASH

I, David L. Morash, hereby declare and state as follows:

1.    I am the Chief Financial Officer of ISE Corporation, a California corporation, the debtor and debtor in possession herein (the "Debtor"). The facts stated herein are within my personal knowledge, whether acquired directly, or through my familiarity with the Debtor's books and records in my capacity as an officer. The opinions expressed herein represent the opinions of the Debtor entity, of which I am an authorized agent, unless otherwise indicated.

2.    The Debtor is a California corporation with its corporate office located in Poway, California. The Debtor was incorporated in January 1995. The Debtor is a developer, manufacturer and distributor of heavy duty hybrid-electric drive systems based on the Debtor's core proprietary technology, which is focused on three critical subsystems: energy storage, controls software and power electronics. These core technologies and subsystems are critical for hybrid or all-electric vehicles to achieve the most efficient management of energy.

3.    On August 10, 2010 ("Petition Date"), the Debtor filed its petition for relief under Chapter 11 of the Bankruptcy Code.   Since the Petition Date, the Debtor has managed its affairs as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

4.    The Debtor requires SSG Capital Advisors, LLC ("SSG") and Cabrillo Broker, LLC ("Cabrillo", and together with SSG, the "Firms") to serve as its investment bankers to assist the Debtor with identifying prospective buyers, effecting a sale of substantially all of the Debtor's assets, and consummating a sale. As a result, the Debtor seeks to employ the Firms, effective as of September 9, 2010, in accordance with the terms of, the engagement agreement among the Debtor, SSG and Cabrillo, dated September 9, 2010 (the "Engagement Agreement"), a true and correct copy of which is attached hereto as Exhibit "1."

5.    The Debtor has selected the Firms based on the Firms' experience and expertise in providing investment banking services in chapter 11 cases.

6.    The Debtor requires the Firms to render to the Debtor the following types of professional services:

MAINDOCS-#151800-v3-ISE_App_Emp_SSG.DOC

- Prepare an information memorandum describing the Debtor, its historical performance and prospects, including existing contracts, marketing and sales, labor force, management and anticipated financial results of the Debtor;

- Assist the Debtor in developing a list of suitable potential buyers for the Debtor who will be contacted on a discreet and confidential basis after approval by the Debtor;

- Coordinate the execution of confidentiality agreements for potential buyers wishing to review the information memorandum;

- Coordinate the data room and the due diligence investigations of potential buyers;

- Assist the Debtor in coordinating site visits for interested buyers of the Debtor and work with the management team to develop appropriate compensation for such visits;

- Solicit competitive offers from potential buyers;

- Evaluate proposals received from potential buyers;

- Advise and assist the Debtor in structuring the transaction and negotiating the transaction agreements for the sale of the Debtor's assets;

- Provide testimony on behalf of the Debtor related to the sale process of the Debtor's assets or any other matter related to the Firm's investment banking assignment for the Debtor; and

- Otherwise assist the Debtor, its attorneys and accountants, as necessary through the closing of the sale of the Debtor's assets on a best effort basis.

7.    The following is a summary of material terms of the Engagement Agreement:

- Initial Fee. An initial fee (the "Initial Fee") equal to $25,000, due upon Bankruptcy Court approval of this Application *nunc pro tunc* to the date of the execution of the Engagement Agreement;

- Monthly Fees. Monthly fees (the "Monthly Fees") of $25,000 beginning October 1, 2010 and payable on the first (1st) of each month thereafter during the term of the Engagement Agreement;

-16-

- **Sale Fee.** Upon the closing of a sale of substantially all of the Debtor's assets, either through a plan of reorganization or pursuant to Section 363 of the Bankruptcy Code, the Debtor shall pay the Firm a fee payable in cash, an amount equal to the greater of (a) \$550,000 or (b) 5.0% of the sale amount.

- **Expenses.** The Debtor will reimburse the firms, on a monthly basis, all of the Firms' reasonable out-of-pocket expenses with respect to its services for the Debtor, up to an aggregate maximum amount (for all monthly periods collectively) of \$25,000.

- **Sharing of Compensation.** Pursuant to an agreement between SSG and Cabrillo, the foregoing fees will be shared between the two Firms by SSG receiving sixty percent (60%) of the fees and Cabrillo receiving forty percent (40%) of the fees.

- **Termination.** The Engagement Agreement shall remain in effect for four months from September 9, 2010, and may be terminated thereafter by either party upon thirty (30) days prior notice to the other.

8.     The Debtor has agreed to fund, on a monthly basis, subject to the Debtor's right to use cash collateral, an amount equal to the monthly fees and expenses. In connection therewith, the Firms request that they be authorized to obtain monthly fees and expenses from the Debtor.

9.     The Debtor understands and agrees that the proposed compensation arrangement is subject to the provisions of Section 328 of the Bankruptcy Code, which authorizes this Court to allow compensation different from what is provided herein if the fee arrangement provided for herein appears, in retrospect, to have been improvident in light of developments unanticipated at the outset of this case.

10.     Notice of the relief requested by the application has been provided to the secured creditors, the Committee, U.S. Trustee's Office, and any other party in interest entitled to notice under Fed. R. Bankr. P. 2002. The Office of the United States Trustee and other above listed parties have been afforded an opportunity to object to the Application and request a hearing on this Application, should they object to the relief requested hereby.

I declare that the foregoing is true and correct under the penalty of perjury.

-17-

MAINDOCS-#151800-v3-ISE_App_Emp_SSG.DOC

1     Executed this 24 day of September 2010 at Poway, California.

2

3                                       David L. Morash

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-18-

# EXHIBIT "1"





September 9, 2010

Mr. Richard J. Sander
President and CEO
ISE Corporation
12302 Kerran Street
Poway, CA 92064

Dear Mr. Sander:

This agreement ("Engagement Agreement") will serve as the contract between ISE Corporation as debtor in their chapter 11 bankruptcy proceedings pending in the United States Bankruptcy Court for the Southern District of California, Bankruptcy No. 10-14198-MM11, and any and all of its affiliates, (collectively "ISE," or the "Company") and SSG Capital Advisors, LLC ("SSG") and Cabrillo Broker, LLC ("Cabrillo") (collectively "Advisors") regarding the retention of the Advisors as exclusive investment bankers to ISE. Advisors' responsibilities hereunder involve providing investment banking services, on an exclusive basis, focusing on the sale of all or substantially all of the assets of ISE (the "Sale") through a chapter 11 bankruptcy proceeding. This Engagement Agreement shall be subject to approval upon an application for retention of the Advisors as investment bankers to ISE by the United States Bankruptcy Court for the Southern District of California.

A.   **Advisors' Role**

    **Sale.**   Advisors' role and responsibilities in connection with a Sale shall include the following (collectively, the "Services"):

- Prepare an information memorandum describing ISE, its historical performance and prospects, including existing contracts, marketing and sales, labor force, management and anticipated financial results of ISE;

- Assist the Company in developing a list of suitable potential buyers for ISE who will be contacted on a discreet and confidential basis after approval by the Company;

Five Tower Bridge, Suite 420  •  300 Barr Harbor Drive  •  West Conshohocken, PA 19428
Phone: (610) 940-1094  •  Fax: (610) 940-3875

www.ssgca.com

Mr. Richard J. Sander

Page 2

- Coordinate the execution of confidentiality agreements for potential buyers wishing to review the information memorandum;

- Coordinate the data room and the due diligence investigations of potential buyers;

- Assist the Company in coordinating site visits for interested buyers of ISE and work with the management team to develop appropriate presentations for such visits;

- Solicit competitive offers from potential buyers;

- Evaluate proposals received from potential buyers;

- Advise and assist the Company in structuring the transaction and negotiating the transaction agreements for the Sale of ISE;

- Provide testimony on behalf of the Company related to the Sale process of ISE or any other matters related to Advisors' investment banking assignment for the Company; and

- Otherwise assist the Company, its attorneys and accountants, as necessary, through closing of the Sale of ISE on a best efforts basis.

In connection with the Advisors' performance of the services described above, ISE shall furnish or cause to be furnished to Advisors such information as Advisors reasonably believes appropriate to the execution of its engagement hereunder (all such information so furnished being the "Information"). ISE represents that all Information furnished by it or its agents will be complete and correct in all material respects, to the best of its knowledge, and that until the expiration of Advisors' engagement hereunder, it will advise Advisors immediately of the occurrence of any event or any other change known by it or its agents that results in the Information ceasing to be complete and correct in all material respects. ISE recognizes and confirms that Advisors: (a) will use and rely primarily on the Information and on information available from generally recognized public sources in performing the services contemplated hereby without having independently verified any of the same; and (b) does not assume responsibility for accurateness or completeness of the Information and such other information.

Advisors will consult with and advise the Company with respect to the financial aspects of any Sale, including price, terms and conditions of the Sale. Nothing contained herein shall require the Company to accept the terms of any proposal and the Company shall at all times have the right in its sole and absolute discretion to reject any Sale regardless of the terms proposed.

B.    **Advisors' Compensation**

As compensation for the foregoing services, ISE shall pay to the Advisors the following:

Mr. Richard J. Sander

Page 3

1.  Initial Fee. An initial fee (the "Initial Fee") equal to $25,000, due upon Bankruptcy Court approval of the Advisors' retention application nunc pro tunc to the date of execution of this Engagement Agreement.

2.  Monthly Fees. Monthly fees (the "Monthly Fees") of $25,000 beginning October 1, 2010 and payable on the first (1st) of each month thereafter during the Engagement Term (as such term is hereafter defined).

3.  Sale Fee. Upon the closing of a Sale, either through a plan of reorganization or §363 sale, with any party, ISE shall pay the Advisors a fee (the "Sale Fee"), payable in cash, in federal funds via wire transfer or certified check, at closing of such the Sale equal to the greater of: a) $550,000 or b) 5.0% of Total Consideration (as such term is hereafter defined).

    **Total Consideration** - shall mean the purchase price paid for the stock, assets, or securities (including senior secured debt in a transaction involving the sale of such debt by the Company's existing senior lenders to a third party purchaser), or any portion of either, plus the amount of any indebtedness assumed or paid off, which includes secured, administrative, priority and/or unsecured claims (trade or other) and the assumption of any other obligations on-balance sheet.

4.  In addition to the foregoing fees, whether or not a Sale is consummated, and in addition to the fees noted above which may be payable to the Advisors hereunder, ISE agrees to reimburse the Advisors on a monthly basis for all of the Advisors' reasonable out-of-pocket expenses incurred in connection with the subject matter of this engagement, up to an aggregate maximum amount (for all monthly periods collectively) of $25,000 (the "Expense Cap"). Any reasonable out-of-pocket expenses in excess of the Expense Cap for which the Advisors desire reimbursement must be pre-approved in writing by ISE (such approval not to be unreasonably withheld).

## C.   Term of Engagement

This Engagement Agreement shall remain in force (the "Engagement Term") for a period of four (4) months from the date of signing this Engagement Agreement and may be terminated thereafter by either party upon thirty (30) days prior written notice to the other. Upon the termination of this Engagement Agreement, neither party shall have any further obligations to the other except that: (a) termination of the Engagement Agreement shall not affect Advisors' right to indemnification under the Indemnification paragraph below; (b) ISE shall remain obligated to pay any Monthly Fee that became payable prior to the termination of the Engagement Agreement; (c) ISE shall remain obligated to reimburse Advisors for any expenses incurred through the date of the termination of the Engagement Agreement; and (d) in the event that (i) this Engagement Agreement is

Mr. Richard J. Sander

Page 4

terminated by ISE for any reason other than Advisors' breach of this Engagement Agreement or Advisors' willful failure to provide the Services in a commercially reasonable manner and (ii) if a Sale is consummated within six (6) months of the termination of this Engagement Agreement with any party outlined on the Trailer List (as such term is hereafter defined), ISE shall remain obligated to pay a Sale Fee, as calculated above. Sections B, C, D and F (entitled Compensation, Term of Engagement, Indemnification and Miscellaneous, respectively) of, and Attachment A to this Engagement Agreement shall survive the expiration or termination of this Engagement Agreement indefinitely. Within thirty (30) days of the termination of this Engagement Agreement, Advisors will provide ISE with a list of potential buyers/investors that were contacted by SSG and Cabrillo ("Trailer List").

## D.   Indemnification

The Company hereby acknowledges and agrees to the indemnification provisions between the parties hereto as described on Attachment A hereto, which Attachment is incorporated herein and forms an integral part hereof.

## E.   Confidentiality

Advisors will treat confidentially all non-public information that the Company discloses to it in connection with this engagement, except as instructed by the Company or unless required to do so in response to a lawful subpoena, notice or other disclosure request (a "Demand"); provided, however, that in the event that Advisors is served with a Demand, Advisors will promptly advise the Company of same and will fully cooperate with all reasonable and lawful requests by the Company to prevent the disclosure of confidential and/or proprietary information pursuant to such Demand.

## F.   Miscellaneous

It is acknowledged that ISE Limited (on behalf of ISE) has entered into a Professional Services Agreement with Seabiscuit Partners, LLC ("Seabiscuit") dated as of July 15, 2010, as such agreement may be amended, supplemented or otherwise modified from time to time, and pursuant to the Professional Services Agreement (i) Seabiscuit will be providing services to ISE related to securing debtor in possession financing and (ii) Seabiscuit may earn a fee in connection with the closing of a debtor in possession financing facility and/or the sale of ISE's assets to certain identified third parties. No fee payable to any other financial advisor or finder by ISE or any other company in connection with the subject matter of this engagement shall reduce or otherwise affect any fee payable to Advisors hereunder. This Engagement Agreement sets forth the entire understanding of the parties relating to the subject matter hereof. This Engagement Agreement cannot be amended, modified, supplemented or changed, nor can any of its provisions be waived, except by written agreement signed by both parties. The benefits of this Engagement Agreement shall inure to the respective successors and assigns of the parties hereto and of the Indemnified Parties and their respective successors, assigns and representatives, and the obligations and liabilities assumed in this Engagement

Mr. Richard J. Sander

Page 5

Agreement by the parties hereto shall be binding upon their respective successors and assigns. This Engagement Agreement may be executed in any number of counterparts, which counterparts, taken together, shall constitute one and the same Engagement Agreement.

This Engagement Agreement shall be subject to the approval, upon Application for Retention off Advisors pursuant to Sections 327 and 328 of the Bankruptcy Code, Title 11 U.S.C., and entry of an Order satisfactory to Advisors. Such Order shall provide, inter-alia, that Advisors shall not be required to maintain detailed time sheets, that Advisors shall not be required to submit monthly or quarterly fee applications, that Advisors' engagement be approved under Section 328 of the Bankruptcy Code, that Advisors shall file a final fee application upon closing of any Sale or confirmation of a plan of reorganization and that Advisors' Sale Fee shall be paid directly from the proceeds of the Sale as a carve-out of any security interest or lien of any party.

The Company agrees that Advisors shall be permitted, following the closing of a Sale, to place advertisements in financial and other newspapers and journals at its own expense describing its services to the Company hereunder.

Please indicate your acceptance of the foregoing by executing and returning the enclosed copy of this letter.

**SSG CAPITAL ADVISORS, LLC**

By: _____
Matthew P. Karlson
Managing Director

By: _____
Michael S. Goodman
Managing Director

**CABRILLO BROKER, LLC**

By: _____
Wade Hansen
Managing Director

ACCEPTED:
**ISE CORPORATION**

By: _____
Richard J. Sander
President and CEO

Mr. Richard J. Sander

Page 6

## ATTACHMENT A
## INDEMNIFICATION PROVISIONS

Subject to Bankruptcy Court approval, upon application and after notice and a hearing, ISE agrees to indemnify, defend and hold harmless SSG and Cabrillo and its partners, members, managing directors, officers, agents and employees of SSG and Cabrillo (the foregoing being referred to herein individually as an "Indemnified Party" and collectively as the "Indemnified Parties") from and against any and all losses, claims, damages, liabilities or costs, as and when incurred, to which such Indemnified Party may become subject to or which are asserted against any Indemnified Party, directly or indirectly, in any way related to SSG and Cabrillo's investment banking services to the Company under the Engagement Agreement of which this Attachment A forms a part, including, without limitation, in connection with: (a) any act or omission by SSG and Cabrillo related to its engagement as investment banker under the Engagement Agreement; or (b) SSG and Cabrillo's acceptance, or its performance or non-performance, of its obligations under said Engagement Agreement. ISE will reimburse the Indemnified Parties for any legal or other expenses incurred by them, as and when incurred, in connection with investigating, preparing or defending any such losses, claims, damages or liabilities or any action in respect thereof, whether or not in connection with pending or threatened litigation, and whether or not any Indemnified Party is a party thereto. Notwithstanding anything to the contrary contained herein, ISE shall not be liable under any of the indemnity agreements contained in this Attachment A in respect of any liability to the extent that such liability is found in a final judgment by a court of competent jurisdiction, not subject to further appeal, to have resulted from SSG and Cabrillo's gross negligence or willful misconduct in the performance of its duties under said Engagement Agreement. The Company and ISE agrees that reliance by SSG and Cabrillo on any publicly-available information, the information supplied by ISE to SSG and Cabrillo in connection with said Engagement Agreement or any directions furnished by ISE shall not constitute gross negligence, bad faith or willful misconduct by SSG and Cabrillo.

The provisions of this Attachment A shall survive any termination of said Engagement Agreement.

## DECLARATION OF MICHAEL S. GOODMAN

I, Michael S. Goodman, hereby declare and state as follows:

1.     I am a managing director of SSG Capital Advisors, LLC ("SSG" or "Firm"). The facts stated herein are within my personal knowledge, whether acquired directly, or through my familiarity with the Firm's books and records in my capacity as a managing director. The opinions expressed herein represent the opinions of the Firm, of which I am an authorized agent, unless otherwise indicated.

**The Firm's Qualifications**.

2.     SSG's investment banking professionals have extensive experience in advising debtors in chapter 11 cases and have served as investment bankers to numerous debtors, Chapter 11 trustees, creditors' committees, and buyers in Chapter 11 proceedings, including, but not limited to, Goldman Industrial Group, Langston, CanFibre, U.S. Wireless, Network Access Solutions, Coram, AstroPower, Glass Group, Imperial Home Décor Group, Summit Metals, Miix Insurance, American Business Financial Services, Diamond Glass, Inc., Boscov's Inc., Zestra Laboratories, Inc., Nobex, Corp., Pharmaceutical Formulations, Inc., BT Tires Group Holding, LLC, Ritz Camera Centers, Inc., Joann Fabrics Corporation, Congoleum, Country Home Bakers, AG Industries, WorldClass Processing, Trade Secret, PCAA, Aerothrust, and others. SSG's senior professionals  have worked together for over 10 years focusing exclusively on special situations investment banking and have closed over 150 special situations transactions in that time.   SSG has offices outside of Philadelphia and in New York.

**Services to Be Rendered**.

3.     The Firm will render to the Debtor the following types of professional services:

- Prepare an information memorandum describing the Debtor, its historical performance and prospects, including existing contracts, marketing and sales, labor force, management and anticipated financial results of the Debtor;

- Assist the Debtor in developing a list of suitable potential buyers for the Debtor who will be contacted on a discreet and confidential basis after approval by the Debtor;

-19-

- Coordinate the execution of confidentiality agreements for potential buyers wishing to review the information memorandum;
- Coordinate the data room and the due diligence investigations of potential buyers;
- Assist the Debtor in coordinating site visits for interested buyers of the Debtor and work with the management team to develop appropriate compensation for such visits;
- Solicit competitive offers from potential buyers;
- Evaluate proposals received from potential buyers;
- Advise and assist the Debtor in structuring the transaction and negotiating the transaction agreements for the sale of the Debtor's assets;
- Provide testimony on behalf of the Debtor related to the sale process of the Debtor's assets or any other matter related to the Firm's investment banking assignment for the Debtor; and
- Otherwise assist the Debtor, its attorneys and accountants, as necessary through the closing of the sale of the Debtor's assets on a best effort basis.

**Terms of the Proposed Employment**.

4.    The Firm will render to the Debtor the following types of professional services:

- Initial Fee.  An initial fee (the "Initial Fee") equal to $25,000, due upon Bankruptcy Court approval of this Application *nunc pro tunc* to the date of the execution of the Engagement Agreement;
- Monthly Fees.  Monthly fees (the "Monthly Fees") of $25,000 beginning October 1, 2010 and payable on the first (1st) of each month thereafter during the term of the Engagement Agreement;
- Sale Fee.  Upon the closing of a sale of substantially all of the Debtor's assets, either through a plan of reorganization or pursuant to Section 363 of the Bankruptcy Code, the Debtor shall pay the Firm a fee payable in cash, an amount equal to the greater of (a) $550,000 or (b) 5.0% of the sale amount.

-20-

- Expenses. The Debtor will reimburse the Firm, on a monthly basis, all of the SSG's reasonable out-of-pocket expenses with respect to its services for the Debtor, up to an aggregate maximum amount (for all monthly periods collectively) of $25,000.

- Sharing of Compensation. Pursuant to an agreement between SSG and Cabrillo Broker, LLC ("Cabrillo"), the foregoing fees will be shared between the two firms by SSG receiving sixty percent (60%) of the fees and Cabrillo receiving forty percent (40%) of the fees.

- Termination. The Engagement Agreement shall remain in effect for four months from September 9, 2010, and may be terminated thereafter by either party upon thirty (30) days prior notice to the other.

5.    The Firm will hold any funds paid by the Debtor pursuant to this paragraph in trust pending the Firm's compliance with the monthly Professional Fee Statement procedure set forth below.  The Firm will file with the Court monthly Professional Fee Statements, attaching a copy of the Firm's monthly invoice with respect to fees for professional services rendered to the Debtor, and for reimbursement of expenses incurred on behalf of the Debtor, and serve copies of such invoice on the Debtor, the Office of the United States Trustee, and all creditors and parties in interest entitled to notice.  If no written objection is filed with respect to the amount of the Firm's or Cabrillo's monthly invoice within ten (10) days after the service of such invoice on the various parties-in-interest, the Debtor shall pay the monthly invoice.  If a written objection to SSG's or Cabrillo's monthly invoice is filed by a party-in-interest, the Debtor will refrain from paying the disputed portion, or if such portion cannot be determined, then the Debtor shall refrain from paying the entire invoice until the Court has resolved the objection.  The Firm may file an application with the Court seeking allowance of its fees and costs incurred to date and paid pursuant to such monthly payment procedure.

6.    The Firm intends to apply to this Court for compensation in conformity with the requirements of Bankruptcy Code Sections 328, 330 and 331. The Firm understands that any compensation in this case to be paid from funds that are property of the Debtor's estate is subject

to approval of this Court.  No funds paid to the Firm pursuant to the proposed monthly payment procedure will be deemed to be allowed by the Court.  All funds paid to the Firm pursuant to the proposed monthly payment procedure will be subject to allowance by the Court, upon appropriate application and noticed hearing.

7.     At the conclusion of this case, the Firm will file an appropriate application seeking final allowance of all fees and costs, regardless of whether interim compensation has been paid to the Firm.  Upon allowance of such fees and costs, the Debtor will pay to the Firm the difference between the amounts allowed to the Firm and any interim compensation paid to the Firm.

8.     The Firm understands and agrees that the proposed compensation arrangement is subject to the provisions of Section 328 of the Bankruptcy Code, which authorizes this Court to allow compensation different from what is provided herein if the fee arrangement provided for herein appears, in retrospect, to have been improvident in light of developments unanticipated at the outset of this case.  The Firm understands and agrees that, if aggregate interim payments made to the Firm exceed the amount that is ultimately allowed to the Firm, such the will be required to, and will, promptly repay to the Debtor such difference.

**Disclosure of Relationship with the Firm**.

9.     SSG has conducted a conflicts check on the Debtor's creditors.  Based on the results of the conflicts search conducted to date, SSG believes that SSG does not, insofar as SSG has been able to ascertain:  (a) hold or represent any interest adverse to the Debtor's estate that would impair SSG's ability to objectively perform professional services for the Debtor, in accordance with Section 327 of the Bankruptcy Code; or (b) have any connection with creditors and other parties-in-interest relating to the Debtor or this Chapter 11 case.

10.     To the best of SSG's knowledge, neither SSG nor any of its professionals:

    a.     is a creditor, an equity security holder, or an insider of the Debtor as of the Petition Date;

    b.     is or was, within two years before the Petition Date, a director, officer or employee of the Debtor; and

-22-

MAINDOCS-#151800-v3-JSE_App_Emp_SSG.DOC

c.   has an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with or interest in the Debtor or for any other reason.

11.   None of the members comprising or employed by SSG is related to any judge of the United States Bankruptcy Court for the Central District of California, the U.S. Trustee, or to any person employed by the U.S. Trustee. SSG has agreed not to share with any person or entity any compensation received by SSG in this case, except as among the members of SSG and with Cabrillo, as described herein.

12.   Neither the Firm nor any professionals who are members of the Firm possess or assert an economic interest that would tend to lessen the value of the estate or that would create an actual or potential dispute against the estate or has a predisposition that will create a bias against the estate.

**Requiring The Firm To Wait An Extended Period Of Time For Payment Of Its Fees In The Debtor's Case May Cause Undue Hardship To The Firm.**

13.   As described above, the Firm and Cabrillo have requested an initial fee in the amount of $25,000, and to receive $25,000 per month, starting on October 1, 2010. Without receiving the monthly compensation, the Firm may suffer undue hardship. The Firm anticipates that the Firm will be required to devote significant time to assisting the Debtor in this Chapter 11 with respect to the services described above, and therefore, the Debtor's efforts to maximize value in this case will require substantial involvement by the Firm.

14.   In addition to the foregoing, the nature of the Debtor's financial affairs supports the approval of monthly payment procedures in this case. The Debtor cannot afford to linger in Chapter 11 for any period of time. The Firm will need to devote substantial time and resources to the Debtor's case, without monthly payment procedures, the Firm's fees will be "at risk." The Firm should not be required to effectively finance the administration of the Debtor's case.

15.   Due to the nature of the required commitment of the Firm's resources to the Debtor's case, requiring the Firm to wait for periods of at least 120 days to obtain payment of its

-23-

MAINDOCS-#151800-v3-ISL_App_Emp_SSG.DOC

1  fees pursuant to Section 331 of the Bankruptcy Code may place undue hardship on the Firm.  It

2  would be burdensome for the Firm if they were effectively required to "finance" the Debtor's

3  reorganization efforts in this case, at the Firm's financial risk.  A monthly payment arrangement is

4  necessary to ameliorate the financial hardships that otherwise would be imposed upon the Firm in

5  this case.

6  **The Firm Will Be Able To Respond To Any Reassessment Of Fees Ordered By This Court.**

7         16.       The Firm will be able to respond to any order entered by this Court reassessing fees

8  paid to the Firm pursuant to the requested monthly payment procedure.  The Firm and the members

9  of the Firm have the ability to respond to any such reassessment of fees paid to the Firm.  The Firm

10  is familiar with the Chapter 11 process, understands that its ultimate compensation in this case is

11  subject to the provisions of Sections 330 and 331 of the Bankruptcy Code, and is prepared to

12  respond to any such reassessment.  In short, the Firm's longevity and financial stability attest to the

13  fact that the Firm will be able to respond to any Court-ordered reassessment of fees in these case.

14         I declare that the foregoing is true and correct under the penalty of perjury.

15         Executed this 23rd day of September 2010 at West Conshohocken, Pennsylvania.

16

17                              Michael S. Goodman

18

19

20

21

22

23

24

25

26

27

28

-24-

MAINDOCS-#151800-v3-ISE_App_Emp_SSG.DOC

1

2

## DECLARATION OF WADE HANSEN

I, Wade Hansen, hereby declare and state as follows:

3

4

5

6

7

1.      I am a managing director of Cabrillo Broker, LLC ("Cabrillo" or "Firm").  The facts stated herein are within my personal knowledge, whether acquired directly, or through my familiarity with the Firm's books and records in my capacity as a managing director.  The opinions expressed herein represent the opinions of the Firm, of which I am an authorized agent, unless otherwise indicated.

8

**The Firm's Qualifications**.

9

10

11

12

13

14

15

16

2.      Cabrillo is a southern California based investment banking firm.  Cabrillo has a strong local presence in San Diego and it has a strong track record working with both small cap public and private companies in the middle-market to provide high-quality mergers, acquisitions and capital raising expertise.  Cabrillo has worked with numerous companies in the high-tech sector including HCL Cleantech, Reaction Design, Hydro Point Data Systems, Sunrise Telecom, Bakbone Software, Naspers, Ancept Media Server, and SoftBrands.  Cabrillo's leadership team has a diverse experience, including strategy consulting, investment banking, and private equity investing.

17

**Services to Be Rendered**.

18

19

20

21

22

23

24

25

26

27

28

3.      The Firm will render to the Debtor the following types of professional services:

- Prepare an information memorandum describing the Debtor, its historical performance and prospects, including existing contracts, marketing and sales, labor force, management and anticipated financial results of the Debtor;

- Assist the Debtor in developing a list of suitable potential buyers for the Debtor who will be contacted on a discreet and confidential basis after approval by the Debtor;

- Coordinate the execution of confidentiality agreements for potential buyers wishing to review the information memorandum;

- Coordinate the data room and the due diligence investigations of potential buyers;

-25-

1        • Assist the Debtor in coordinating site visits for interested buyers of the Debtor and

2           work with the management team to develop appropriate compensation for such

3           visits;

4        • Solicit competitive offers from potential buyers;

5        • Evaluate proposals received from potential buyers;

6        • Advise and assist the Debtor in structuring the transaction and negotiating the

7           transaction agreements for the sale of the Debtor's assets;

8        • Provide testimony on behalf of the Debtor related to the sale process of the

9           Debtor's assets or any other matter related to the Firm's investment banking

10          assignment for the Debtor; and

11       • Otherwise assist the Debtor, its attorneys and accountants, as necessary through the

12          closing of the sale of the Debtor's assets on a best effort basis.

13  **Terms of the Proposed Employment**.

14       4.   The Firm will render to the Debtor the following types of professional services:

15        • <u>Initial Fee</u>. An initial fee (the "Initial Fee") equal to $25,000, due upon

16          Bankruptcy Court approval of this Application *nunc pro tunc* to the date of the

17          execution of the Engagement Agreement;

18        • <u>Monthly Fees</u>. Monthly fees (the "Monthly Fees") of $25,000 beginning

19          October 1, 2010 and payable on the first (1st) of each month thereafter during the

20          term of the Engagement Agreement;

21        • <u>Sale Fee</u>. Upon the closing of a sale of substantially all of the Debtor's assets,

22          either through a plan of reorganization or pursuant to Section 363 of the

23          Bankruptcy Code, the Debtor shall pay the Firm a fee payable in cash, an amount

24          equal to the greater of (a) $550,000 or (b) 5.0% of the sale amount.

25        • <u>Expenses</u>. The Debtor will reimburse the Cabrillo, on a monthly basis, all of the

26          Cabrillo's reasonable out-of-pocket expenses with respect to its services for the

27          Debtor, up to an aggregate maximum amount (for all monthly periods collectively)

28          of $25,000.

MAINDOCS-#151800-v3-ISE_App_Emp_SSG.DOC

- Sharing of Compensation. Pursuant to an agreement between SSG Capital Advisors, LLC ("SSG") and Cabrillo, the foregoing fees will be shared between the two firms by SSG receiving sixty percent (60%) of the fees and Cabrillo receiving forty percent (40%) of the fees.

- Termination. The Engagement Agreement shall remain in effect for four months from September 9, 2010, and may be terminated thereafter by either party upon thirty (30) days prior notice to the other.

5.    The Firm will hold any funds paid by the Debtor pursuant to this paragraph in trust pending the Firm's compliance with the monthly Professional Fee Statement procedure set forth below.   The Firm will file with the Court monthly Professional Fee Statements, attaching a copy of the Firm's monthly invoice with respect to fees for professional services rendered to the Debtor, and for reimbursement of expenses incurred on behalf of the Debtor, and serve copies of such invoice on the Debtor, the Office of the United States Trustee, and all creditors and parties in interest entitled to notice. If no written objection is filed with respect to the amount of the Firm's or SSG's monthly invoice within ten (10) days after the service of such invoice on the various parties-in-interest, the Debtor shall pay the monthly invoice.  If a written objection to SSG's or Cabrillo's monthly invoice is filed by a party-in-interest, the Debtor will refrain from paying the disputed portion, or if such portion cannot be determined, then the Debtor shall refrain from paying the entire invoice until the Court has resolved the objection. The Firm may file an application with the Court seeking allowance of its fees and costs incurred to date and paid pursuant to such monthly payment procedure.

6.    The Firm intends to apply to this Court for compensation in conformity with the requirements of Bankruptcy Code Sections 328, 330 and 331. The Firm understands that any compensation in this case to be paid from funds that are property of the Debtor's estate is subject to approval of this Court.  No funds paid to the Firm pursuant to the proposed monthly payment procedure will be deemed to be allowed by the Court.  All funds paid to the Firm pursuant to the proposed monthly payment procedure will be subject to allowance by the Court, upon appropriate application and noticed hearing.

-27-

1      7.    At the conclusion of this case, the Firm will file an appropriate application seeking

2  final allowance of all fees and costs, regardless of whether interim compensation has been paid to

3  the Firm.  Upon allowance of such fees and costs, the Debtor will pay to the Firm the difference

4  between the amounts allowed to the Firm and any interim compensation paid to the Firm.

5      8.    The Firm understands and agrees that the proposed compensation arrangement is

6  subject to the provisions of Section 328 of the Bankruptcy Code, which authorizes this Court to

7  allow compensation different from what is provided herein if the fee arrangement provided for

8  herein appears, in retrospect, to have been improvident in light of developments unanticipated at

9  the outset of this case.  The Firm understands and agrees that, if aggregate interim payments made

10  to the Firm exceed the amount that is ultimately allowed to the Firm, such the will be required to,

11  and will, promptly repay to the Debtor such difference.

12  **Disclosure of Relationship with the Firm**.

13      9.    Cabrillo has conducted a conflicts check on the Debtor's creditors.  Based on the

14  results of the conflicts search conducted to date, Cabrillo believes that Cabrillo does not, insofar

15  as Cabrillo has been able to ascertain:  (a) hold or represent any interest adverse to the Debtor's

16  estate that would impair Cabrillo's ability to objectively perform professional services for the

17  Debtor, in accordance with Section 327 of the Bankruptcy Code; or (b) have any connection with

18  creditors and other parties-in-interest relating to the Debtor or this Chapter 11 case.

19      10.    To the best of Cabrillo knowledge, neither Cabrillo nor any of its professionals:

20          a.    is a creditor, an equity security holder, or an insider of the Debtor as of the

21                Petition Date;

22          b.    is or was, within two years before the Petition Date, a director, officer or

23                employee of the Debtor; and

24          c.    has an interest materially adverse to the interest of the estate or of any class

25                of creditors or equity security holders, by reason of any direct or indirect

26                relationship to, connection with or interest in the Debtor or for any other

27                reason.

28

-28-

MAINDOCS-#151800-v3-ISE_App_Emp_SSG.DOC

1        11.     None of the members comprising or employed by Cabrillo is related to any judge of

2 the United States Bankruptcy Court for the Central District of California, the U.S. Trustee, or to

3 any person employed by the U.S. Trustee. Cabrillo has agreed not to share with any person or

4 entity any compensation received by Cabrillo in this case, except as among the members of

5 Cabrillo and with SSC, as described herein.

6        12.     Neither the Firm nor any professionals who are members of the Firm possess or

7 assert an economic interest that would tend to lessen the value of the estate or that would create an

8 actual or potential dispute against the estate or has a predisposition that will create a bias against

9 the estate.

10 **Requiring The Firm To Wait An Extended Period Of Time For Payment Of Its Fees In The**

11 **Debtor's Case May Cause Undue Hardship To The Firm.**

12        13.     As described above, the Firm and SSG have requested an initial fee in the amount

13 of $25,000, and to receive $25,000 per month, starting on October 1, 2010. Without receiving the

14 monthly compensation, the Firm may suffer undue hardship. The Firm anticipates that the Firm

15 will be required to devote significant time to assisting the Debtor in this Chapter 11 with respect to

16 the services described above, and therefore, the Debtor's efforts to maximize value in this case will

17 require substantial involvement by the Firm.

18        14.     In addition to the foregoing, the nature of the Debtor's financial affairs supports the

19 approval of monthly payment procedures in this case. The Debtor cannot afford to linger in

20 Chapter 11 for any period of time. The Firm will need to devote substantial time and resources to

21 the Debtor's case, without monthly payment procedures, the Firm's fees will be "at risk." The

22 Firm should not be required to effectively finance the administration of the Debtor's case.

23        15.     Due to the nature of the required commitment of the Firm's resources to the

24 Debtor's case, requiring the Firm to wait for periods of at least 120 days to obtain payment of its

25 fees pursuant to Section 331 of the Bankruptcy Code may place undue hardship on the Firm. It

26 would be burdensome for the Firm if they were effectively required to "finance" the Debtor's

27 reorganization efforts in this case, at the Firm's financial risk. A monthly payment arrangement is

28

-29-

1   necessary to ameliorate the financial hardships that otherwise would be imposed upon the Firm in
2   this case.

3   **The Firm Will Be Able To Respond To Any Reassessment Of Fees Ordered By This Court.**

4       16.    The Firm will be able to respond to any order entered by this Court reassessing fees
5   paid to the Firm pursuant to the requested monthly payment procedure. The Firm and the members
6   of the Firm have the ability to respond to any such reassessment of fees paid to the Firm. The Firm
7   is familiar with the Chapter 11 process, understands that its ultimate compensation in this case is
8   subject to the provisions of Sections 330 and 331 of the Bankruptcy Code, and is prepared to
9   respond to any such reassessment. In short, the Firm's longevity and financial stability attest to the
10  fact that the Firm will be able to respond to any Court-ordered reassessment of fees in these case.

11      I declare that the foregoing is true and correct under the penalty of perjury.

12      Executed this 23 day of September 2010 at Montgomery County, PA

13
14                                      _____
                                         Wade Hansen
15
16
17
18
19
20
21
22
23
24
25
26
27
28

-30-

SSG Employment Application.DOC

1  NOTE: When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

2  # PROOF OF SERVICE OF DOCUMENT

3  I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 660 Newport Center Drive, 4th Fl., Newport Beach, CA 92660.

4

5  A true and correct copy of the foregoing document described as:  **APPLICATION OF DEBTOR AND DEBTOR-IN-POSSESSION FOR AUTHORITY TO EMPLOY SSG CAPITAL ADVISORS, LLC AND CABRILLO BROKER, LLC, AS THE DEBTOR'S INVESTMENT BANKERS; MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATIONS OF DAVID L. MORASH, MICHAEL S. GOODMAN AND WADE HANSEN IN SUPPORT THEREOF** will be served or was served in the manner indicated below:

6

7

8  **I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On October 21, 2010, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

9

10

11  ☒ Service information continued on attached page

12  **II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served): On September ____, 2010 I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows.

13

14

15

16  ☐ Service information continued on attached page

17  **III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on October 21, 2010 I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.

18

19  ISE – Justin Spragg - jspragg@isecorp.com

20  SSG Capital Advisors, LLC - Michael Goodman -  mgoodman@ssgca.com

21  Cabrillo Broker, LLC – Wade Hansen - whansen@cabrilloadvisors.com

22  ☐ Service information continued on attached page

23

24  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

25  October 21, 2010     Viann Corbin

26  *Date*          *Type Name*          *Signature*

27

28

-31-

MAINDOCS-#151800-v3-ISE_App_Emp_SSG.DOC

**NEF LIST**

- Michael D. Breslauer    mbreslauer@swsslaw.com, wyones@swsslaw.com

- Shirley Cho    scho@pszjlaw.com

- Jeffry A. Davis    jadavis@mintz.com,
  dsjohnson@mintz.com;jrdunn@mintz.com;aobrient@mintz.com

- Mary Testerman Duvoisin    mary.m.testerman@usdoj.gov,
  USTP.region15@usdoj.gov;shannon.m.vencill@usdoj.gov;tiffany.l.carroll@usdoj.gov

- Paul R. Glassman    glassmanp@gtlaw.com

- Sue J. Hodges    sue.hodges@klgates.com

- Garrick A. Hollander    ghollander@winthropcouchot.com,
  pj@winthropcouchot.com;sconnor@winthropcouchot.com

- Karen Morao    morao.karen@dorsey.com,
  foohey.pamela@dorsey.com;mikhailevich.jessica@dorsey.com

- Abigail Obrient    aobrient@mintz.com, dsjohnson@mintz.com

- Jeffrey N. Pomerantz    jpomerantz@pszjlaw.com, scho@pszjlaw.com

- Richard A. Solomon    Richard@sgsslaw.com, Denise@sgsslaw.com

- Lisa Torres    lisa.torres@fennelllaw.com,
  luralene.schultz@fennelllaw.com;tracy.schimelfenig@fennelllaw.com;william.fennell@fennelllaw.com;stefanie.becerra@fennelllaw.com

- United States Trustee    ustp.region15@usdoj.gov

- Victor A. Vilaplana    vavilaplana@foley.com

- Marc J. Winthrop    mwinthrop@winthropcouchot.com, pj@winthropcouchot.com

MAINDOCS-#151800-v3-ISE_App_Emp_SSG.DOC